**Fill in this information to identify the case:**

Debtor 1    LORRAINE  R.  SANTOLI

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:  Southern District of New York (White Plains)

Case number   16-23516

# Official Form 410

# Proof of Claim

04/16

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

## Part 1:  Identify the Claim

| | |
|---|---|
| 1. **Who is the current creditor?** | Real Time Resolutions, Inc. as agent for  THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWHEQ REVOLVING HOME EQUITY LOAN TRUST, SERIES 2007-D |
| | Name of the current creditor (the person or entity to be paid for this claim) |
| | Other names the creditor used with the debtor |

2. **Has this claim been acquired from someone else?**   ☑ No
☐ Yes.  From whom?

3. **Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

**Where should notices to the creditor be sent?**

Real Time Resolutions, Inc. as agent for THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWHEQ REVOLVING HOME EQUITY LOAN TRUST, SERIES 2007-D
Name

1349 Empire Central Dr., Suite 150
Number        Street

Dallas              TX         75247
City                  State         ZIP Code

Contact phone  (888) 741-1124

Contact email  bankruptcy@rtresolutions.com

**Where should payments to the creditor be sent?** (if different)

Real Time Resolutions, Inc.
Name

PO Box 35888
Number        Street

Dallas              TX         75235
City                  State         ZIP Code

Contact phone  (888) 741-1124

Contact email  bankruptcy@rtresolutions.com

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

__ __ __ __ — __ __ __ __ — __ __ __ __ — __ __ __ __

4. **Does this claim amend one already filed?**   ☑ No
☐ Yes.  Claim number on court claims registry (if known) _____    Filed on _____
MM / DD / YYYY

5. **Do you know if anyone else has filed a proof of claim for this claim?**   ☑ No
☐ Yes.  Who made the earlier filing? _____

**Part 2:**  Give Information About the Claim as of the Date the Case Was Filed

6. **Do you have any number you use to identify the debtor?**
☐ No
☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor:  4  5  6  5

7. **How much is the claim?**  $ _____ $203,567.01 _____ . Does this amount include interest or other charges?
☐ No
☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

8. **What is the basis of the claim?**
Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.
Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).
Limit disclosing information that is entitled to privacy, such as health care information.

Money Loaned

9. **Is all or part of the claim secured?**
☐ No
☑ Yes.  The claim is secured by a lien on property.

**Nature of property:**
☑ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*
☐ Motor vehicle
☐ Other. Describe:    28 HYNARD PLACE  BALDWIN PLACE, NY 10505

**Basis for perfection:**    2ND MORTGAGE
Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property:    $ _____
Amount of the claim that is secured:   $  $203,567.01
Amount of the claim that is unsecured:  $ _____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition:   $  $77,941.34

Annual Interest Rate (when case was filed) 10.875 %
☐ Fixed
☑ Variable

10. **Is this claim based on a lease?**
☑ No
☐ Yes. Amount necessary to cure any default as of the date of the petition.   $ _____

11. **Is this claim subject to a right of setoff?**
☑ No
☐ Yes. Identify the property: _____

12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check all that apply:*

Amount entitled to priority

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).    $_____

☐ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).    $_____

☐ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).    $_____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).    $_____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).    $_____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies.    $_____

\* Amounts are subject to adjustment on 4/01/16 and every 3 years after that for cases begun on or after the date of adjustment.

---

## Part 3:    Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Check the appropriate box:

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    4-3-17
                    MM / DD / YYYY

Signature

Print the name of the person who is completing and signing this claim:

| Name | Rose | | Velasquez |
|------|------|--|-----------|
| | First name | Middle name | Last name |

Title    Senior Analyst

Company    Real Time Resolutions, Inc.
           Identify the corporate servicer as the company if the authorized agent is a servicer.

Address    1349 Empire Central Drive, Suite #150
           Number    Street

           Dallas                          TX        75247
           City                            State     ZIP Code

Contact phone    888-741-1124    Email    bankruptcy@rtresolutions.com

---

Official Form 410    **Proof of Claim**    page 3

## Exhibit 'A-1'

Case No.: 16-23516

Date:      03/31/2017

Debtors:   LORRAINE R. SANTOLI -- SS No. XXX-XX-1778

Loan No.: 4565

On filing petition 11/04/16 debtor(s) owed claimant total debt of  $203,567.01.

The Total Debt owed at petition:

| | |
|---|---:|
| Principal Balance | 125,000.00 |
| Interest | 77,607.79 |
| Late Charge | 959.22 |
| **Total Debt:** | **203,567.01** |

The above figures represent the amount owed at the time of filing and do not reflect payments received after the date of the filing of the Bankruptcy.

**Mortgage Proof of Claim Attachment (12/15)**   Debtor(s)' Name   LORRAINE R. SANTOLI          Case No.   16-23516          Page 1 of 4

If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim.  See separate instructions

| PART I   Mortgage and Case Information | | PART II Total Debt Calculation | | PART III   Arrearage as of Date of the Petition | | PART IV  Monthly Mortgage Payment | |
|---|---|---|---|---|---|---|---|
| Case Number | 16-23516 | Principal Due | 125000.00 | Principal & Interest Due | 76982.12 | Principal & Interest | Varies |
| Debtor 1 | LORRAINE R. SANTOLI | Interest Due | 37607.73 | Prepetition Fees Due | 959.22 | Monthly Escrow | N/A |
| Debtor 2 | | Fees, Costs Due | 959.22 | Escrow Deficiency for funds advanced | | PMI | N/A |
| Last 4 digits used to identify | 4565 | Escrow Deficiency for funds advanced | 0.00 | Prepetition Escrow Shortage | | Other | |
| Creditor: | THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWHEQ REVOLVING HOME EQUITY LOAN TRUST, SERIES 2007-D | Less total funds on hand | | Less funds on hand | | Total Monthly Payment | Varies |
| Servicer: | Real Time Resolutions, Inc | Total Debt | $203,567.01 | Total Prepetition Arrearage | $77,941.34 | | |
| Fixed accrual/daily | Daily | | | Post-Petition Amounts | | | |
| Simple interest/other | Other | | | Total Prepetition | $77,941.34 | | |
| | | | | Total Arrearage | $77,941.34 | | |

PART V  Loan Payment History from First Date of Default

| (A) Date | (B) Contractual Payment Amount | (C) Funds received | (D) Amount Incurred | (E) Comment/Description | (F) Contractual Due Date | (G) Prin, Int & Esc Past Due Balance | (H) Amount to Principal | (I) Amount to Interest | (J) Amount to Escrow | (K) Amount to Fees or Charges | (L) Unapplied funds | (M) Principal Balance | (N) Accrued interest balance | (O) Escrow Balance | (P) Fees / Charges Balance | (Q) Unapplied Funds Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/25/2007 | 1158.48 | 0.00 | 0.00 | non-payment | Oct-07 | 1158.48 | | | | 0.00 | | 125000.00 | | | | |
| 11/25/2007 | 1154.44 | 0.00 | 0.00 | non-payment | Nov-07 | 1154.44 | | | | 0.00 | | 125000.00 | | | | |
| 12/25/2007 | 1112.10 | 0.00 | 0.00 | non-payment | Dec-07 | 1112.10 | | | | 0.00 | | 125000.00 | | | | |
| 1/25/2008 | 1122.07 | 0.00 | 0.00 | non-payment | Jan-08 | 1122.07 | | | | 0.00 | | 125000.00 | | | | |
| 2/25/2008 | 1080.41 | 0.00 | 0.00 | non-payment | Feb-08 | 1080.41 | | | | 0.00 | | 125000.00 | | | | |
| 3/25/2008 | 944.68 | 0.00 | 0.00 | non-payment | Mar-08 | 944.68 | | | | 0.00 | | 125000.00 | | | | |
| 4/25/2008 | 943.04 | 0.00 | 0.00 | non-payment | Apr-08 | 943.04 | | | | 0.00 | | 125000.00 | | | | |
| 5/25/2008 | 858.00 | 0.00 | 0.00 | non-payment | May-08 | 858.00 | | | | 0.00 | | 125000.00 | | | | |
| 6/25/2008 | 880.65 | 0.00 | 0.00 | non-payment | Jun-08 | 880.65 | | | | 0.00 | | 125000.00 | | | | |
| 7/25/2008 | 832.50 | 0.00 | 0.00 | non-payment | Jul-08 | 832.50 | | | | 0.00 | | 125000.00 | | | | |
| 8/25/2008 | 860.25 | 0.00 | 0.00 | non-payment | Aug-08 | 860.25 | | | | 0.00 | | 125000.00 | | | | |
| 9/25/2008 | 860.25 | 0.00 | 0.00 | non-payment | Sep-08 | 860.25 | | | | 0.00 | | 125000.00 | | | | |
| 10/25/2008 | 832.50 | 0.00 | 0.00 | non-payment | Oct-08 | 832.50 | | | | 0.00 | | 125000.00 | | | | |
| 11/25/2008 | 848.28 | 0.00 | 0.00 | non-payment | Nov-08 | 848.28 | | | | 0.00 | | 125000.00 | | | | |
| 12/25/2008 | 770.94 | 0.00 | 0.00 | non-payment | Dec-08 | 770.94 | | | | 0.00 | | 125000.00 | | | | |
| 1/25/2009 | 736.31 | 0.00 | 0.00 | non-payment | Jan-09 | 736.31 | | | | 0.00 | | 125000.00 | | | | |
| 2/25/2009 | 676.73 | 0.00 | 0.00 | non-payment | Feb-09 | 676.73 | | | | 0.00 | | 125000.00 | | | | |
| 3/25/2009 | 611.24 | 0.00 | 0.00 | non-payment | Mar-09 | 611.24 | | | | 0.00 | | 125000.00 | | | | |
| 4/25/2009 | 676.73 | 0.00 | 0.00 | non-payment | Apr-09 | 676.73 | | | | 0.00 | | 125000.00 | | | | |
| 5/25/2009 | 654.90 | 0.00 | 0.00 | non-payment | May-09 | 654.90 | | | | 0.00 | | 125000.00 | | | | |
| 6/25/2009 | 676.73 | 0.00 | 0.00 | non-payment | Jun-09 | 676.73 | | | | 0.00 | | 125000.00 | | | | |
| 7/25/2009 | 654.90 | 0.00 | 0.00 | non-payment | Jul-09 | 654.90 | | | | 0.00 | | 125000.00 | | | | |
| 8/25/2009 | 676.73 | 0.00 | 0.00 | non-payment | Aug-09 | 676.73 | | | | 0.00 | | 125000.00 | | | | |
| 9/25/2009 | 676.73 | 0.00 | 0.00 | non-payment | Sep-09 | 676.73 | | | | 0.00 | | 125000.00 | | | | |
| 10/25/2009 | 654.90 | 0.00 | 0.00 | non-payment | Oct-09 | 654.90 | | | | 0.00 | | 125000.00 | | | | |
| 11/25/2009 | 676.73 | 0.00 | 0.00 | non-payment | Nov-09 | 676.73 | | | | 0.00 | | 125000.00 | | | | |
| 12/25/2009 | 654.90 | 0.00 | 0.00 | non-payment | Dec-09 | 654.90 | | | | 0.00 | | 125000.00 | | | | |
| 1/25/2010 | 676.73 | 0.00 | 0.00 | non-payment | Jan-10 | 676.73 | | | | 0.00 | | 125000.00 | | | | |
| 2/25/2010 | 676.73 | 0.00 | 0.00 | non-payment | Feb-10 | 676.73 | | | | 0.00 | | 125000.00 | | | | |
| 3/25/2010 | 611.24 | 0.00 | 0.00 | non-payment | Mar-10 | 611.24 | | | | 0.00 | | 125000.00 | | | | |
| 4/25/2010 | 676.73 | 0.00 | 0.00 | non-payment | Apr-10 | 676.73 | | | | 0.00 | | 125000.00 | | | | |
| 5/25/2010 | 654.90 | 0.00 | 0.00 | non-payment | May-10 | 654.90 | | | | 0.00 | | 125000.00 | | | | |
| 6/25/2010 | 676.73 | 0.00 | 0.00 | non-payment | Jun-10 | 676.73 | | | | 0.00 | | 125000.00 | | | | |
| 7/25/2010 | 654.90 | 0.00 | 0.00 | non-payment | Jul-10 | 654.90 | | | | 0.00 | | 125000.00 | | | | |
| 8/25/2010 | 676.73 | 0.00 | 0.00 | non-payment | Aug-10 | 676.73 | | | | 0.00 | | 125000.00 | | | | |
| 9/25/2010 | 654.90 | 0.00 | 0.00 | non-payment | Sep-10 | 654.90 | | | | 0.00 | | 125000.00 | | | | |
| 10/25/2010 | 654.90 | 0.00 | 0.00 | non-payment | Oct-10 | 654.90 | | | | 0.00 | | 125000.00 | | | | |
| 11/21/2010 | 0.00 | 0.00 | 13.10 | Late Charge Assess | Oct-10 | 0.00 | | | | 13.10 | | 125000.00 | | | | 13.10 |
| 11/25/2010 | 676.73 | 0.00 | 0.00 | non-payment | Nov-10 | 676.73 | | | | 0.00 | | 125000.00 | | | | 13.10 |
| 12/11/2010 | 0.00 | 0.00 | 13.53 | Late Charge Assess | Nov-10 | 0.00 | | | | 13.53 | | 125000.00 | | | | 26.63 |
| 12/25/2010 | 654.90 | 0.00 | 0.00 | non-payment | Dec-10 | 654.90 | | | | 0.00 | | 125000.00 | | | | 26.63 |
| 1/10/2011 | 0.00 | 0.00 | 13.10 | Late Charge Assess | Dec-10 | 0.00 | | | | 13.10 | | 125000.00 | | | | 39.73 |
| 1/25/2011 | 676.73 | 0.00 | 0.00 | non-payment | Jan-11 | 676.73 | | | | 0.00 | | 125000.00 | | | | 39.73 |
| 2/10/2011 | 0.00 | 0.00 | 13.53 | Late Charge Assess | Jan-11 | 0.00 | | | | 13.53 | | 125000.00 | | | | 53.26 |
| 2/25/2011 | 676.73 | 0.00 | 0.00 | non-payment | Feb-11 | 676.73 | | | | 0.00 | | 125000.00 | | | | 53.26 |

| (A) Date | (B) Contractual Payment amount | Account Activity | | (E) Comment/Description | (F) Contractual Due Date | (G) Prin, Int & Est Past Due Balance | How funds were applied/Amount Incurred | | | | | Balance after amount received or incurred | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | (C) Funds received | (D) Amount Incurred | | | | (H) Amount to Principal | (I) Amount to Interest | (J) Amount to Escrow | (K) Amount to Fees or Charges | (L) Unapplied funds | (V) Principal Balance | (N) Accrued Interest Balance | (O) Escrow Balance | (P) Fees / Charges Balance | (Q) Unapplied Funds Balance |
| 3/13/2011 | 0.00 | 0.00 | 13.53 | Late Charge Assess | Feb-11 | 0.00 | | | | 13.53 | | 125000.00 | | | | 66.79 |
| 3/25/2011 | 611.24 | 0.00 | 0.00 | non-payment | Mar-11 | 611.24 | | | | 0.00 | | 125000.00 | | | | 66.79 |
| 4/10/2011 | 0.00 | 0.00 | 12.22 | Late Charge Assess | Mar-11 | 0.00 | | | | 12.22 | | 125000.00 | | | | 79.01 |
| 4/25/2011 | 676.73 | 0.00 | 0.00 | non-payment | Apr-11 | 676.73 | | | | 0.00 | | 125000.00 | | | | 79.01 |
| 5/11/2011 | 0.00 | 0.00 | 13.53 | Late Charge Assess | Apr-11 | 0.00 | | | | 13.53 | | 125000.00 | | | | 92.54 |
| 5/25/2011 | 654.90 | 0.00 | 0.00 | non-payment | May-11 | 654.90 | | | | 0.00 | | 125000.00 | | | | 92.54 |
| 6/10/2011 | 0.00 | 0.00 | 13.10 | Late Charge Assess | May-11 | 0.00 | | | | 13.10 | | 125000.00 | | | | 105.64 |
| 6/25/2011 | 676.73 | 0.00 | 0.00 | non-payment | Jun-11 | 676.73 | | | | 0.00 | | 125000.00 | | | | 105.64 |
| 7/11/2011 | 0.00 | 0.00 | 13.53 | Late Charge Assess | Jun-11 | 0.00 | | | | 13.53 | | 125000.00 | | | | 119.17 |
| 7/25/2011 | 654.90 | 0.00 | 0.00 | non-payment | Jul-11 | 654.90 | | | | 0.00 | | 125000.00 | | | | 119.17 |
| 8/10/2011 | 0.00 | 0.00 | 13.10 | Late Charge Assess | Jul-11 | 0.00 | | | | 13.10 | | 125000.00 | | | | 132.27 |
| 8/25/2011 | 676.73 | 0.00 | 0.00 | non-payment | Aug-11 | 676.73 | | | | 0.00 | | 125000.00 | | | | 132.27 |
| 9/10/2011 | 0.00 | 0.00 | 13.53 | Late Charge Assess | Aug-11 | 0.00 | | | | 13.53 | | 125000.00 | | | | 145.80 |
| 9/25/2011 | 676.73 | 0.00 | 0.00 | non-payment | Sep-11 | 676.73 | | | | 0.00 | | 125000.00 | | | | 145.80 |
| 10/11/2011 | 0.00 | 0.00 | 13.53 | Late Charge Assess | Sep-11 | 0.00 | | | | 13.53 | | 125000.00 | | | | 159.33 |
| 10/25/2011 | 654.90 | 0.00 | 0.00 | non-payment | Oct-11 | 654.90 | | | | 0.00 | | 125000.00 | | | | 159.33 |
| 11/10/2011 | 0.00 | 0.00 | 13.10 | Late Charge Assess | Oct-11 | 0.00 | | | | 13.10 | | 125000.00 | | | | 172.43 |
| 11/25/2011 | 676.73 | 0.00 | 0.00 | non-payment | Nov-11 | 676.73 | | | | 0.00 | | 125000.00 | | | | 172.43 |
| 12/11/2011 | 0.00 | 0.00 | 13.53 | Late Charge Assess | Nov-11 | 0.00 | | | | 13.53 | | 125000.00 | | | | 185.96 |
| 12/25/2011 | 654.90 | 0.00 | 0.00 | non-payment | Dec-11 | 654.90 | | | | 0.00 | | 125000.00 | | | | 185.96 |
| 1/10/2012 | 0.00 | 0.00 | 13.10 | Late Charge Assess | Dec-11 | 0.00 | | | | 13.10 | | 125000.00 | | | | 199.06 |
| 1/25/2012 | 676.73 | 0.00 | 0.00 | non-payment | Jan-12 | 676.73 | | | | 0.00 | | 125000.00 | | | | 199.06 |
| 2/10/2012 | 0.00 | 0.00 | 13.53 | Late Charge Assess | Jan-12 | 0.00 | | | | 13.53 | | 125000.00 | | | | 212.59 |
| 2/25/2012 | 674.87 | 0.00 | 0.00 | non-payment | Feb-12 | 674.87 | | | | 0.00 | | 125000.00 | | | | 212.59 |
| 3/12/2012 | 0.00 | 0.00 | 13.06 | Late Charge Assess | Feb-12 | 0.00 | | | | 13.06 | | 125000.00 | | | | 225.65 |
| 3/25/2012 | 631.33 | 0.00 | 0.00 | non-payment | Mar-12 | 631.33 | | | | 0.00 | | 125000.00 | | | | 225.65 |
| 4/10/2012 | 0.00 | 0.00 | 12.63 | Late Charge Assess | Mar-12 | 0.00 | | | | 12.63 | | 125000.00 | | | | 238.28 |
| 4/25/2012 | 674.87 | 0.00 | 0.00 | non-payment | Apr-12 | 674.87 | | | | 0.00 | | 125000.00 | | | | 238.28 |
| 5/11/2012 | 0.00 | 0.00 | 13.50 | Late Charge Assess | Apr-12 | 0.00 | | | | 13.50 | | 125000.00 | | | | 251.78 |
| 5/25/2012 | 653.10 | 0.00 | 0.00 | non-payment | May-12 | 653.10 | | | | 0.00 | | 125000.00 | | | | 251.78 |
| 6/10/2012 | 0.00 | 0.00 | 12.63 | Late Charge Assess | May-12 | 0.00 | | | | 12.63 | | 125000.00 | | | | 264.41 |
| 6/25/2012 | 674.87 | 0.00 | 0.00 | non-payment | Jun-12 | 674.87 | | | | 0.00 | | 125000.00 | | | | 264.41 |
| 7/11/2012 | 0.00 | 0.00 | 13.50 | Late Charge Assess | Jun-12 | 0.00 | | | | 13.50 | | 125000.00 | | | | 277.91 |
| 7/25/2012 | 653.10 | 0.00 | 0.00 | non-payment | Jul-12 | 653.10 | | | | 0.00 | | 125000.00 | | | | 277.91 |
| 8/10/2012 | 0.00 | 0.00 | 12.63 | Late Charge Assess | Jul-12 | 0.00 | | | | 12.63 | | 125000.00 | | | | 290.54 |
| 8/25/2012 | 674.87 | 0.00 | 0.00 | non-payment | Aug-12 | 674.87 | | | | 0.00 | | 125000.00 | | | | 290.54 |
| 9/10/2012 | 0.00 | 0.00 | 13.50 | Late Charge Assess | Aug-12 | 0.00 | | | | 13.50 | | 125000.00 | | | | 304.04 |
| 9/25/2012 | 674.87 | 0.00 | 0.00 | non-payment | Sep-12 | 674.87 | | | | 0.00 | | 125000.00 | | | | 304.04 |
| 10/11/2012 | 0.00 | 0.00 | 13.50 | Late Charge Assess | Sep-12 | 0.00 | | | | 13.50 | | 125000.00 | | | | 317.54 |
| 10/25/2012 | 653.10 | 0.00 | 0.00 | non-payment | Oct-12 | 653.10 | | | | 0.00 | | 125000.00 | | | | 317.54 |
| 11/10/2012 | 0.00 | 0.00 | 13.06 | Late Charge Assess | Oct-12 | 0.00 | | | | 13.06 | | 125000.00 | | | | 330.60 |
| 11/25/2012 | 674.87 | 0.00 | 0.00 | non-payment | Nov-12 | 674.87 | | | | 0.00 | | 125000.00 | | | | 330.60 |
| 12/11/2012 | 0.00 | 0.00 | 13.50 | Late Charge Assess | Nov-12 | 0.00 | | | | 13.50 | | 125000.00 | | | | 344.10 |
| 12/25/2012 | 653.10 | 0.00 | 0.00 | non-payment | Dec-12 | 653.10 | | | | 0.00 | | 125000.00 | | | | 344.10 |
| 1/10/2013 | 0.00 | 0.00 | 13.06 | Late Charge Assess | Dec-12 | 0.00 | | | | 13.06 | | 125000.00 | | | | 357.16 |
| 1/25/2013 | 674.87 | 0.00 | 0.00 | non-payment | Jan-13 | 674.87 | | | | 0.00 | | 125000.00 | | | | 357.16 |
| 2/10/2013 | 0.00 | 0.00 | 13.50 | Late Charge Assess | Jan-13 | 0.00 | | | | 13.50 | | 125000.00 | | | | 370.66 |
| 2/25/2013 | 676.73 | 0.00 | 0.00 | non-payment | Feb-13 | 676.73 | | | | 0.00 | | 125000.00 | | | | 370.66 |
| 3/13/2013 | 0.00 | 0.00 | 13.53 | Late Charge Assess | Feb-13 | 0.00 | | | | 13.53 | | 125000.00 | | | | 384.19 |
| 3/25/2013 | 611.24 | 0.00 | 0.00 | non-payment | Mar-13 | 611.24 | | | | 0.00 | | 125000.00 | | | | 384.19 |
| 4/10/2013 | 0.00 | 0.00 | 12.22 | Late Charge Assess | Mar-13 | 0.00 | | | | 12.22 | | 125000.00 | | | | 396.41 |
| 4/25/2013 | 676.73 | 0.00 | 0.00 | non-payment | Apr-13 | 676.73 | | | | 0.00 | | 125000.00 | | | | 396.41 |
| 5/11/2013 | 0.00 | 0.00 | 13.53 | Late Charge Assess | Apr-13 | 0.00 | | | | 13.53 | | 125000.00 | | | | 409.94 |
| 5/25/2013 | 654.90 | 0.00 | 0.00 | non-payment | May-13 | 654.90 | | | | 0.00 | | 125000.00 | | | | 409.94 |
| 6/10/2013 | 0.00 | 0.00 | 13.10 | Late Charge Assess | May-13 | 0.00 | | | | 13.10 | | 125000.00 | | | | 423.04 |
| 6/25/2013 | 676.73 | 0.00 | 0.00 | non-payment | Jun-13 | 676.73 | | | | 0.00 | | 125000.00 | | | | 423.04 |
| 7/11/2013 | 0.00 | 0.00 | 13.53 | Late Charge Assess | Jun-13 | 0.00 | | | | 13.53 | | 125000.00 | | | | 436.57 |
| 7/25/2013 | 654.90 | 0.00 | 0.00 | non-payment | Jul-13 | 654.90 | | | | 0.00 | | 125000.00 | | | | 436.57 |
| 8/10/2013 | 0.00 | 0.00 | 13.10 | Late Charge Assess | Jul-13 | 0.00 | | | | 13.10 | | 125000.00 | | | | 449.67 |
| 8/25/2013 | 676.73 | 0.00 | 0.00 | non-payment | Aug-13 | 676.73 | | | | 0.00 | | 125000.00 | | | | 449.67 |
| 9/10/2013 | 0.00 | 0.00 | 13.53 | Late Charge Assess | Aug-13 | 0.00 | | | | 13.53 | | 125000.00 | | | | 463.20 |
| 9/25/2013 | 676.73 | 0.00 | 0.00 | non-payment | Sep-13 | 676.73 | | | | 0.00 | | 125000.00 | | | | 463.20 |

| (A) Date | (B) Contractual Payment amount | (C) Funds received | (D) Amount Incurred | (E) Comment/Description | (F) Contractual Due Date | (G) Prin, Int & Est Paid Due Balance | (H) Amount to Principal | (I) Amount to Interest | (J) Amount to Escrow | (K) Amount to Fees or Charges | (L) Unapplied funds | (M) Principal Balance | (N) Accrued Interest balance | (O) Escrow Balance | (P) Fees / Charges Balance | (Q) Unapplied funds Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/11/2013 | 0.00 | 0.00 | 13.53 | Late Charge Assess | Sep-13 | 0.00 | | | | 13.53 | | 125000.00 | | | 476.73 | |
| 10/25/2013 | 654.90 | 0.00 | 0.00 | non-payment | Oct-13 | 654.90 | | | | 0.00 | | 125000.00 | | | 476.73 | |
| 11/10/2013 | 0.00 | 0.00 | 13.10 | Late Charge Assess | Oct-13 | 0.00 | | | | 13.10 | | 125000.00 | | | 489.83 | |
| 11/25/2013 | 676.73 | 0.00 | 0.00 | non-payment | Nov-13 | 676.73 | | | | 0.00 | | 125000.00 | | | 489.83 | |
| 12/11/2013 | 0.00 | 0.00 | 13.53 | Late Charge Assess | Nov-13 | 0.00 | | | | 13.53 | | 125000.00 | | | 503.36 | |
| 12/25/2013 | 654.90 | 0.00 | 0.00 | non-payment | Dec-13 | 654.90 | | | | 0.00 | | 125000.00 | | | 503.36 | |
| 1/10/2014 | 0.00 | 0.00 | 13.10 | Late Charge Assess | Dec-13 | 0.00 | | | | 13.10 | | 125000.00 | | | 516.46 | |
| 1/25/2014 | 676.73 | 0.00 | 0.00 | non-payment | Jan-14 | 676.73 | | | | 0.00 | | 125000.00 | | | 516.46 | |
| 2/10/2014 | 0.00 | 0.00 | 13.53 | Late Charge Assess | Jan-14 | 0.00 | | | | 13.53 | | 125000.00 | | | 529.99 | |
| 2/25/2014 | 676.73 | 0.00 | 0.00 | non-payment | Feb-14 | 676.73 | | | | 0.00 | | 125000.00 | | | 529.99 | |
| 3/13/2014 | 0.00 | 0.00 | 13.53 | Late Charge Assess | Feb-14 | 0.00 | | | | 13.53 | | 125000.00 | | | 543.52 | |
| 3/25/2014 | 611.24 | 0.00 | 0.00 | non-payment | Mar-14 | 611.24 | | | | 0.00 | | 125000.00 | | | 543.52 | |
| 4/10/2014 | 0.00 | 0.00 | 12.22 | Late Charge Assess | Mar-14 | 0.00 | | | | 12.22 | | 125000.00 | | | 555.74 | |
| 4/25/2014 | 676.73 | 0.00 | 0.00 | non-payment | Apr-14 | 676.73 | | | | 0.00 | | 125000.00 | | | 555.74 | |
| 5/11/2014 | 0.00 | 0.00 | 13.53 | Late Charge Assess | Apr-14 | 0.00 | | | | 13.53 | | 125000.00 | | | 569.27 | |
| 5/25/2014 | 654.90 | 0.00 | 0.00 | non-payment | May-14 | 654.90 | | | | 0.00 | | 125000.00 | | | 569.27 | |
| 6/10/2014 | 0.00 | 0.00 | 13.10 | Late Charge Assess | May-14 | 0.00 | | | | 13.10 | | 125000.00 | | | 582.37 | |
| 6/25/2014 | 676.73 | 0.00 | 0.00 | non-payment | Jun-14 | 676.73 | | | | 0.00 | | 125000.00 | | | 582.37 | |
| 7/11/2014 | 0.00 | 0.00 | 13.53 | Late Charge Assess | Jun-14 | 0.00 | | | | 13.53 | | 125000.00 | | | 595.90 | |
| 7/25/2014 | 654.90 | 0.00 | 0.00 | non-payment | Jul-14 | 654.90 | | | | 0.00 | | 125000.00 | | | 595.90 | |
| 8/10/2014 | 0.00 | 0.00 | 13.10 | Late Charge Assess | Jul-14 | 0.00 | | | | 13.10 | | 125000.00 | | | 609.00 | |
| 8/25/2014 | 676.73 | 0.00 | 0.00 | non-payment | Aug-14 | 676.73 | | | | 0.00 | | 125000.00 | | | 609.00 | |
| 9/10/2014 | 0.00 | 0.00 | 13.53 | Late Charge Assess | Aug-14 | 0.00 | | | | 13.53 | | 125000.00 | | | 622.53 | |
| 9/25/2014 | 654.90 | 0.00 | 0.00 | non-payment | Sep-14 | 676.73 | | | | 0.00 | | 125000.00 | | | 622.53 | |
| 10/11/2014 | 0.00 | 0.00 | 13.53 | Late Charge Assess | Sep-14 | 0.00 | | | | 13.53 | | 125000.00 | | | 636.06 | |
| 10/25/2014 | 654.90 | 0.00 | 0.00 | non-payment | Oct-14 | 654.90 | | | | 0.00 | | 125000.00 | | | 636.06 | |
| 11/10/2014 | 0.00 | 0.00 | 13.10 | Late Charge Assess | Oct-14 | 0.00 | | | | 13.10 | | 125000.00 | | | 649.16 | |
| 11/25/2014 | 676.73 | 0.00 | 0.00 | non-payment | Nov-14 | 676.73 | | | | 0.00 | | 125000.00 | | | 649.16 | |
| 12/11/2014 | 0.00 | 0.00 | 13.53 | Late Charge Assess | Nov-14 | 0.00 | | | | 13.53 | | 125000.00 | | | 662.69 | |
| 12/25/2014 | 654.90 | 0.00 | 0.00 | non-payment | Dec-14 | 654.90 | | | | 0.00 | | 125000.00 | | | 662.69 | |
| 1/10/2015 | 0.00 | 0.00 | 13.10 | Late Charge Assess | Dec-14 | 0.00 | | | | 13.10 | | 125000.00 | | | 675.79 | |
| 1/25/2015 | 676.73 | 0.00 | 0.00 | non-payment | Jan-15 | 676.73 | | | | 0.00 | | 125000.00 | | | 675.79 | |
| 2/10/2015 | 0.00 | 0.00 | 13.53 | Late Charge Assess | Jan-15 | 0.00 | | | | 13.53 | | 125000.00 | | | 689.32 | |
| 2/25/2015 | 676.73 | 0.00 | 0.00 | non-payment | Feb-15 | 676.73 | | | | 0.00 | | 125000.00 | | | 689.32 | |
| 3/13/2015 | 0.00 | 0.00 | 13.53 | Late Charge Assess | Feb-15 | 0.00 | | | | 13.53 | | 125000.00 | | | 702.85 | |
| 3/25/2015 | 611.24 | 0.00 | 0.00 | non-payment | Mar-15 | 611.24 | | | | 0.00 | | 125000.00 | | | 702.85 | |
| 4/10/2015 | 0.00 | 0.00 | 12.22 | Late Charge Assess | Mar-15 | 0.00 | | | | 12.22 | | 125000.00 | | | 715.07 | |
| 4/25/2015 | 676.73 | 0.00 | 0.00 | non-payment | Apr-15 | 676.73 | | | | 0.00 | | 125000.00 | | | 715.07 | |
| 5/11/2015 | 0.00 | 0.00 | 13.53 | Late Charge Assess | Apr-15 | 0.00 | | | | 13.53 | | 125000.00 | | | 728.60 | |
| 5/25/2015 | 654.90 | 0.00 | 0.00 | non-payment | May-15 | 654.90 | | | | 0.00 | | 125000.00 | | | 728.60 | |
| 6/10/2015 | 0.00 | 0.00 | 13.10 | Late Charge Assess | May-15 | 0.00 | | | | 13.10 | | 125000.00 | | | 741.70 | |
| 6/25/2015 | 676.73 | 0.00 | 0.00 | non-payment | Jun-15 | 676.73 | | | | 0.00 | | 125000.00 | | | 741.70 | |
| 7/11/2015 | 0.00 | 0.00 | 13.53 | Late Charge Assess | Jun-15 | 0.00 | | | | 13.53 | | 125000.00 | | | 755.23 | |
| 7/25/2015 | 654.90 | 0.00 | 0.00 | non-payment | Jul-15 | 654.90 | | | | 0.00 | | 125000.00 | | | 755.23 | |
| 8/10/2015 | 0.00 | 0.00 | 13.10 | Late Charge Assess | Jul-15 | 0.00 | | | | 13.10 | | 125000.00 | | | 768.33 | |
| 8/25/2015 | 676.73 | 0.00 | 0.00 | non-payment | Aug-15 | 676.73 | | | | 0.00 | | 125000.00 | | | 768.33 | |
| 9/10/2015 | 0.00 | 0.00 | 13.53 | Late Charge Assess | Aug-15 | 0.00 | | | | 13.53 | | 125000.00 | | | 781.86 | |
| 9/25/2015 | 676.73 | 0.00 | 0.00 | non-payment | Sep-15 | 676.73 | | | | 0.00 | | 125000.00 | | | 781.86 | |
| 10/11/2015 | 0.00 | 0.00 | 13.53 | Late Charge Assess | Sep-15 | 0.00 | | | | 13.53 | | 125000.00 | | | 795.39 | |
| 10/25/2015 | 654.90 | 0.00 | 0.00 | non-payment | Oct-15 | 654.90 | | | | 0.00 | | 125000.00 | | | 795.39 | |
| 11/10/2015 | 0.00 | 0.00 | 13.10 | Late Charge Assess | Oct-15 | 0.00 | | | | 13.10 | | 125000.00 | | | 808.49 | |
| 11/25/2015 | 676.73 | 0.00 | 0.00 | non-payment | Nov-15 | 676.73 | | | | 0.00 | | 125000.00 | | | 808.49 | |
| 12/11/2015 | 0.00 | 0.00 | 13.53 | Late Charge Assess | Nov-15 | 0.00 | | | | 13.53 | | 125000.00 | | | 822.02 | |
| 12/25/2015 | 654.90 | 0.00 | 0.00 | non-payment | Dec-15 | 654.90 | | | | 0.00 | | 125000.00 | | | 822.02 | |
| 1/10/2016 | 0.00 | 0.00 | 13.10 | Late Charge Assess | Dec-15 | 0.00 | | | | 13.10 | | 125000.00 | | | 835.12 | |
| 1/25/2016 | 632.75 | 0.00 | 0.00 | non-payment | Jan-16 | 632.75 | | | | 0.00 | | 125000.00 | | | 835.12 | |
| 2/10/2016 | 0.00 | 0.00 | 13.66 | Late Charge Assess | Jan-16 | 0.00 | | | | 13.66 | | 125000.00 | | | 848.78 | |
| 2/25/2016 | 701.59 | 0.00 | 0.00 | non-payment | Feb-16 | 701.59 | | | | 0.00 | | 125000.00 | | | 848.78 | |
| 3/12/2016 | 0.00 | 0.00 | 14.03 | Late Charge Assess | Feb-16 | 0.00 | | | | 14.03 | | 125000.00 | | | 862.81 | |
| 3/25/2016 | 656.27 | 0.00 | 0.00 | non-payment | Mar-16 | 656.27 | | | | 0.00 | | 125000.00 | | | 862.81 | |
| 4/10/2016 | 0.00 | 0.00 | 13.13 | Late Charge Assess | Mar-16 | 0.00 | | | | 13.13 | | 125000.00 | | | 875.94 | |
| 4/25/2016 | 701.53 | 0.00 | 0.00 | non-payment | Apr-16 | 701.53 | | | | 0.00 | | 125000.00 | | | 875.94 | |

| (A) Date | (B) Contractual Payment amount | Account Activity | | (E) Comment/Description | (F) Contractual Due Date | (G) Prin, Int & Esc Past Due Balance | How funds were applied/Amount Incurred | | | | | Balance after amount received or incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | (C) Funds received | (D) Amount Incurred | | | | (H) Amount to Principal | (I) Amount to Interest | (J) Amount to Escrow | (K) Amount to Fees or Charges | (L) Unapplied funds | (M) Principal Balance | (N) Accrued Interest balance | (O) Escrow Balance | (P) Fees / Charges Balance | (Q) Unapplied Funds Balance |
| 5/11/2016 | 0.00 | 0.00 | 14.03 | Late Charge Assess | Apr-16 | 0.00 | | | | 14.03 | | 125000.00 | | | 889.97 | |
| 5/25/2016 | 678.90 | 0.00 | 0.00 | non-payment | May-16 | 678.90 | | | | 0.00 | | 125000.00 | | | 889.97 | |
| 6/10/2016 | 0.00 | 0.00 | 13.58 | Late Charge Assess | May-16 | 0.00 | | | | 13.58 | | 125000.00 | | | 903.55 | |
| 6/25/2016 | 701.53 | 0.00 | 0.00 | non-payment | Jun-16 | 701.53 | | | | 0.00 | | 125000.00 | | | 903.55 | |
| 7/11/2016 | 0.00 | 0.00 | 14.03 | Late Charge Assess | Jun-16 | 0.00 | | | | 14.03 | | 125000.00 | | | 917.58 | |
| 7/25/2016 | 678.90 | 0.00 | 0.00 | non-payment | Jul-16 | 678.90 | | | | 0.00 | | 125000.00 | | | 917.58 | |
| 8/10/2016 | 0.00 | 0.00 | 13.58 | Late Charge Assess | Jul-16 | 0.00 | | | | 13.58 | | 125000.00 | | | 931.16 | |
| 8/25/2016 | 701.53 | 0.00 | 0.00 | non-payment | Aug-16 | 701.53 | | | | 0.00 | | 125000.00 | | | 931.16 | |
| 9/10/2016 | 0.00 | 0.00 | 14.03 | Late Charge Assess | Aug-16 | 0.00 | | | | 14.03 | | 125000.00 | | | 945.19 | |
| 9/25/2016 | 701.53 | 0.00 | 0.00 | non-payment | Sep-16 | 701.53 | | | | 0.00 | | 125000.00 | | | 945.19 | |
| 10/11/2016 | 0.00 | 0.00 | 14.03 | Late Charge Assess | Sep-16 | 0.00 | | | | 14.03 | | 125000.00 | | | 959.22 | |
| 10/25/2016 | 678.90 | 0.00 | 0.00 | non-payment | Oct-16 | 678.90 | | | | 0.00 | | 125000.00 | | | 959.22 | |
| Totals/Balances | | 0.00 | 959.22 | | | 76982.12 | 0.00 | 0.00 | 0.00 | 959.22 | 0.00 | 125000.00 | 0.00 | 0.00 | 959.22 | 0.00 |

Prepared by: SUSAN T. AADAL                                                    Countrywide Bank, FSB.

DATE:        04/18/2007
BORROWER: LORRAINE R. SANTOLI
CASE #:
LOAN #:
PROPERTY ADDRESS: 28 HYNARD PLACE
              BALDWIN PLACE, NY 10505

Branch #: 0000214
96 TRIANGLE CENTER
YORKTOWN HEIGHTS, NY 10598
Phone: (914)962-5004
Br Fax No.: (914)455-2718

## HOME EQUITY CREDIT LINE AGREEMENT AND
## DISCLOSURE STATEMENT

Date: 04/19/2007

This Home Equity Credit Line Agreement and Disclosure Statement ("Agreement") governs my Home Equity Credit Line Account ("Account") with you,
Countrywide Bank, FSB.
The words "I," "me" and "my" refer to the Borrower signing this Agreement. If more than one Borrower signs this Agreement, the words "I," "me" and "my" refer to all who sign, separately and together. The words "you" and "your" refer to
Countrywide Bank, FSB.

**1. LOANS: DRAW AND REPAYMENT PERIOD.** Subject to the limitations explained in this Agreement, upon my request for loans, you agree to lend money to me from time to time until the last day of the sixtieth (60th) consecutive calendar month following the date set forth above ("Initial Draw Period,") or until the last day of any renewed Draw Period, up to my Credit Limit indicated in paragraph 4 below. (You will not make any loans if my Account is sooner terminated or suspended under paragraphs 11.B, 11.D, 12.B or 15.A below.) You will not make any loan before the fourth business day following the signing of this Agreement.

I agree that prior to the end of the Initial Draw Period, you have the right to review my Account to decide whether such Initial Draw Period will be renewed. Unless you have sent me written notice not later than the sixtieth (60th) day before the Initial Draw Period ends that you have decided not to renew such Initial Draw Period, such Initial Draw Period will automatically renew for one additional sixty (60) month period, and the Draw Period on my Account shall thereafter be considered to be 120 months for purposes of this Agreement. If the Initial Draw Period is not renewed, then the Draw Period on my Account shall thereafter be considered to be 60 months for purposes of this Agreement.

After the Draw Period ends, I will no longer be able to obtain loans and then must pay the outstanding balance over the specified Repayment Period unless my Account is sooner terminated under paragraph 12.B below, in which case my Account is due and payable in full at the time of such termination. The Repayment Period shall be 180 months.

**2. MAKING LOANS.** You will make loans under this Agreement by (i) honoring Equity Credit Line Checks you provide to me requesting advances of at least $250; (ii) paying closing costs and finance charges in accordance with paragraph 7.C below; (iii) paying certain other amounts on my behalf in accordance with my disbursement authorization provided to you at or before the time I sign this Agreement; (iv) paying any unpaid taxes, assessments, property insurance or other sums as provided under this Agreement or the Mortgage; or (v) any other method or procedure you establish.

**3. PROMISE TO PAY; MINIMUM PAYMENT; METHOD OF PAYMENT.**

A. I promise to pay to your order, when and as due, all loans made under this Agreement, plus all unpaid finance charges, insurance premiums, collection costs and other charges I owe to you now or in the future. I agree to make my payments in the manner specified in my periodic statement, and if I do so such payments will be credited as of the day of receipt.

B. At a minimum, you will send me a periodic statement monthly. The periodic statement will show all Account activity during the billing cycle and contain other important information, including my "New Balance," my Annual Percentage Rate, the amount of my "Minimum Payment Due," my "Payment Due Date" and the place and manner of making payments.

C. I may pay all or any part of my "New Balance" at any time, without penalty. If I pay my entire "New Balance" shown on my periodic statement for any billing cycle by the "Payment Due Date," any periodic finance charge incurred from the first day of the next billing cycle until the posting of my payment will appear on my periodic statement for the next billing cycle.

• HELOC Agreement & Disclosure Statement-NY
2C503-NY (11/06)(d/i)                        Page 1 of 8                    Initials: _____





LOAN #: _____

D. Unless you terminate my Account and require immediate payment of the entire outstanding balance as provided in paragraph 12.B below, I must pay you at least the "Minimum Payment Due" for each billing cycle by the "Payment Due Date" shown on my periodic statement.

E. During the Draw Period, my "Minimum Payment Due" equals all unpaid finance charges, credit life insurance premiums and other charges imposed during the billing cycle together with any "Amount Past Due." My "Minimum Payment Due" during the Draw Period will not reduce the principal balance that is outstanding on my account.

F. During the Repayment Period, if the Draw Period on my Account is 60 months or 120 months, my "Minimum Payment Due" equals 1/180th of the outstanding principal balance of my Account as of the last day of the Draw Period plus all unpaid finance charges, credit life insurance premiums and other charges imposed during the billing cycle together with any "Amount Past Due." If the Draw Period on my Account is 36 months, my "Minimum Payment Due" during the Repayment Period equals 1/120th of the outstanding principal balance of my Account as of the last day of the Draw Period plus all unpaid finance charges, credit life insurance premiums and other charges imposed during the billing cycle together with any "Amount Past Due."

4. CREDIT LIMIT. My Credit Limit under this Agreement is $ 125,000.00          . I promise not to request a loan which will cause the unpaid principal balance of my Account to exceed my Credit Limit. You can increase the Credit Limit at any time without prior notice to me. You can refuse to make loans that cause my obligations under this Agreement to exceed my Credit Limit. You will make loans on my Account based on the "Available Credit Limit" shown on my most recent periodic statement. However, I agree that when I make payments on my Account by check or other non-cash method, you reserve the right to make loans based on the "Available Credit Limit" shown on the last periodic statement issued prior to the most recent periodic statement. In addition to each "Minimum Payment Due," I must pay immediately, without notice or demand from you, any part of the principal balance of my Account that exceeds my Credit Limit.

5. ANNUAL PERCENTAGE RATE.

☐ A. The initial Daily Periodic Rate is          N/A %.The initial **ANNUAL PERCENTAGE RATE** is          N/A %. These rates are "discounted" rates. This means that these rates are lower than the rates that would be in effect if the formula set forth in paragraph 5.C below had been used, in which event the initial Daily Periodic Rate would be          N/A % and the initial **ANNUAL PERCENTAGE RATE** would be          N/A %. These discounted rates will be in effect from the date of this Agreement until N/A                      . Thereafter, the Daily Periodic Rate and the Annual Percentage Rate will be determined using the formula set forth in paragraph 5.C below.

☒ B. The initial Daily Periodic Rate is  0.03116 %  and the  initial **ANNUAL PERCENTAGE RATE** is 11.375 %. These rates are not discounted.

C. My Annual Percentage Rate and Daily Periodic Rate may increase or decrease (the first day after my "discounted" rate has expired, if applicable) according to the following procedure: The **ANNUAL PERCENTAGE RATE** shall be the "Index" plus a "Margin," and may be rounded to the nearest fraction of a percent. The "Index" will be the highest Prime Rate as published in the "Money Rates" table of The Wall Street Journal as of the first business day of the calendar month. The "Margin" is equal to the number of percentage points disclosed in paragraph 5.D below. Each billing cycle will end on the last day of the calendar month. Any new Index value shall be effective as of the first day of the billing cycle in which such new Index value is established.

Upon a change in the Index, any resulting change in my Daily Periodic Rate and Annual Percentage Rate will take effect without prior notice to me, and will apply to new loans and to the outstanding principal balance in my Account. The new Annual Percentage Rate and Daily Periodic Rate will apply to my then existing unpaid principal balance and all new loans I obtain until my Annual Percentage Rate and Daily Periodic Rate change again. The Daily Periodic Rate at any time equals the **ANNUAL PERCENTAGE RATE** divided by 365.

D. The "Margin" to be used under paragraph 5.C above to determine my **ANNUAL PERCENTAGE RATE** is   3.125  percentage points.

E. The Annual Percentage Rate is a simple interest rate. The Annual Percentage Rate includes only interest and not other costs. The **ANNUAL PERCENTAGE RATE** will never increase above   18.000% or the maximum rate permitted by law, whichever is less.

F. If the Daily Periodic Rate (and the corresponding Annual Percentage Rate) increases, I will have to pay additional periodic finance charges and, as a result, I will have to pay larger "Minimum Payments."

LOAN #: _____

**6. FINANCE CHARGE.** I agree to pay a finance charge on my Account as explained below.

A. Periodic **FINANCE CHARGE.**

(1) A loan represented by an Equity Credit Line Check will be posted to my Account on the date that such a check is presented to you for payment. The periodic finance charge begins to accrue on my Account from the time a loan is posted to my Account. You compute the periodic finance charge on my Account by applying the Daily Periodic Rate to the "Average Daily Balance" in my Account (including current transactions). To determine the periodic finance charge for any billing cycle, the "Average Daily Balance" is multiplied by the Daily Periodic Rate, then this product is multiplied by the number of days in the billing cycle.

(2) To get the "Average Daily Balance," you take the beginning principal balance of my Account each day, add any new loans and subtract any principal payments or credits. This gives you the Daily Balance. Then you add up all the Daily Balances for the billing cycle and divide by the total number of days in the billing cycle. This gives you the "Average Daily Balance."

B. Other **FINANCE CHARGE.**

(1) Origination Fee **FINANCE CHARGE.**

I agree to pay an Origination Fee **FINANCE CHARGE** of $ 0.00        at the time I sign this Agreement.

                $ _____
                $ _____
                $ _____
                $ _____
                $ _____

(2) Broker Fee **FINANCE CHARGES.**

I agree to pay Broker Fee **FINANCE CHARGES** of $ N/A        at the time I sign this Agreement.

                $ _____
                $ _____
                $ _____
                $ _____
                $ _____

(3) Annual Maintenance Fee **FINANCE CHARGE.**

[X] I agree to pay an annual maintenance fee **FINANCE CHARGE** of $ 75.00      which you will charge to my Account on the first anniversary of this Agreement and every anniversary date thereafter, whether or not I have used or continue to use my Account; except that such fee shall be waived for the entire term of this Agreement if I meet both of the following conditions: (a) I maintain an average outstanding daily balance which does not fall below $20,000.00     from the date of this Agreement through the first anniversary of this Agreement; and (b) I make each monthly payment during that period on or before the due date for each such payment. You will not rebate any portion of the annual fee if my Account is terminated or suspended before the end of any annual period.

[ ] I will not be charged an annual maintenance fee **FINANCE CHARGE** on this loan.

**7. OTHER CHARGES.**

A. I agree to pay each of the charges listed below, which shall constitute additional indebtedness under this agreement. Any charges assessed will be shown on my periodic statement for the billing cycle in which such charge is assessed:

(1) If I fail to make my "Minimum Payment Due" within fifteen (15) days of the "Payment Due Date," I agree to pay a late fee of 2% of the late payment.

(2) I agree to pay a Return Item Fee of $15 for each check you receive in payment of my Account which is returned unpaid upon second presentment.

LOAN #: ▮▮▮▮▮▮

B. I agree to pay you or my broker the following closing costs at or before the time I sign this Agreement:

| | |
|---|---|
| Credit Report Fee | $ 35.00 |
| Title Insurance | $ 1,063.00 |
| Recording | $ 260.00 |
| State Tax Stamp | $ 1,282.50 |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| LESS Amounts Paid by Lender | $ 1,653.00 |
| Total Paid by Borrower | $ 1,282.50 |

\* The cost of title insurance and mortgage recording tax is based on the maximum Credit Limit available to me as a borrower, whether advanced or not.

C. I may elect to pay the closing costs described in paragraph 7.B above and the finance charges described in paragraph 6.B above in cash or by check at or before the time I sign this Agreement or I may elect to finance some or all of such costs and finance charges by allowing you to make a loan under my Account to pay some or all of such costs and finance charges.

**8. REAL PROPERTY SECURITY.** To secure the payment of all loans I obtain and the performance of all promises I make in this Agreement, I and all co-owners are giving you a Mortgage (the "Mortgage") covering my dwelling located at

28 HYNARD PLACE, BALDWIN PLACE, NY 10505
(the "Real Property"). The Mortgage is security for my current and future obligations under this Agreement. I will continue to be obligated to make payment to you under this Agreement even if the Real Property is damaged or destroyed and whether or not any insurance proceeds are available. DEFAULT IN THE PAYMENT OF ANY LOANS MAY RESULT IN THE LOSS OF THE PROPERTY SECURING THE LOANS. UNDER FEDERAL LAW, I MAY HAVE THE RIGHT TO CANCEL THIS AGREEMENT. IF I HAVE THIS RIGHT, YOU ARE REQUIRED TO PROVIDE ME WITH A SEPARATE WRITTEN NOTICE SPECIFYING THE CIRCUMSTANCES AND TIMES UNDER WHICH I CAN EXERCISE THIS RIGHT.

**9. SECTION INTENTIONALLY OMITTED.**

**10. PROPERTY INSURANCE.** I agree to obtain and maintain property insurance against loss or damage to the Real Property, in such amounts, against such risks (including, but not limited to, flood damage insurance required by law), and according to such terms as you may require in the Mortgage or otherwise. I may obtain property insurance from any company of my choice that is acceptable to you. If the amount of the premiums for property insurance increases at any time during the term of my Account, I agree to pay any such increase(s).

**11. YOUR RIGHTS TO TEMPORARILY SUSPEND MY LOANS OR REDUCE MY CREDIT LIMIT.**

A. You may take the actions listed in paragraph 11.B below during the period that any of the following events or conditions occur:

(1)   the value of the Real Property declines significantly below its appraised value for the purposes of my Account;

(2)   you reasonably believe that I will not be able to meet the repayment requirements under my Account due to a material change in my financial circumstances, such as the filing of a bankruptcy petition by or against me;

(3)   I am in default of any material obligation of this Agreement, such as my important obligations listed in paragraph 13 below;

(4)   government action (such as enactment of a state usury law) prevents you from imposing the Annual Percentage Rate provided for in this Agreement;

(5)   government action (such as imposition of a tax lien) impairs the priority of the lien of the Mortgage such that the value of the lien of the Mortgage is less than 120% of my Credit Limit;

LOAN #: ▮▮▮▮▮▮▮

(6)      the maximum Annual Percentage Rate set forth in paragraph 5.E above is reached.

(7)      the creditor is notified by its regulatory agency that continued advances constitute an unsafe and unsound practice.

B. During the period in which a condition described in paragraph 11.A above occurs, you may refuse to make any additional loans or reduce my Credit Limit or do both. You will mail or deliver written notice to me after you suspend my Account or reduce my Credit Limit and this notice will describe the specific reasons for your action. You are obligated to reinstate my credit privileges when the condition(s) which caused the suspension or reduction have been cured or have changed, provided I have notified you in writing, explaining in detail and documenting how the condition(s) have been cured or have changed and no new condition(s) under paragraph 11.A above or 12.A below have occurred.

C. Before reinstating my right to obtain loans, or restoring my Credit Limit, you may conduct such searches, verifications and evaluations (such as credit reports, appraisals and lien searches) as you deem appropriate, and you may require me to reimburse you on demand for any costs you actually incur for obtaining credit reports and appraisals. You may take these steps to verify that (i) the condition(s) that caused your suspension of my loans or reduction of my Credit Limit no longer exist, and (ii) the priority of the lien of the Mortgage is not impaired.

D. If more than one Borrower signs this Agreement and any such Borrower requests that you cease making loans, you may comply with such a request. All Borrowers who have signed this Agreement must join in any request to reinstate the loans for such request to be effective. If all such persons subsequently request reinstatement of the loans, you must honor such a request unless a condition listed in paragraph 11.A above or 12.A below has occurred.

E. If an event or condition described in paragraph 11.A above occurs which is also an event or condition described in paragraph 12.A below, your rights and remedies described under paragraph 12.B below apply and supersede your rights described in this paragraph 11.

## 12. YOUR RIGHTS TO TERMINATE AND ACCELERATE MY ACCOUNT AND TAKE OTHER ACTION.

A. You may take the actions listed in paragraph 12.B below if any of the following events or conditions occur:

(1)      I fail to meet the repayment terms of this Agreement, such as my failure to make any Minimum Payment Due to you on or before the Payment Due Date;

(2)      I engage at any time in fraud or material misrepresentation in connection with my Account, whether in any application, in this Agreement or in the Mortgage;

(3)      I sell or transfer title to the Real Property without first obtaining your written permission;

(4)      I fail to maintain insurance on the Real Property as required under this Agreement or the Mortgage;

(5)      I act or fail to act and as a result a lien senior to the lien of the Mortgage is filed against the Real Property;

(6)      I die and I am not survived by another person obligated as a Borrower under this Agreement;

(7)      All or part of the Real Property is taken through eminent domain, condemnation or similar government taking;

(8)      A prior lienholder on the Real Property begins foreclosure under its security document;

(9)      The Real Property is used for an illegal purpose which could subject the Real Property to seizure;

(10)     I fail to pay taxes on the Real Property; or

(11)     My action or inaction adversely affects the Real Property or your rights in the Real Property. Such action or inaction could include, for example, the following:

(a)      A judgment is filed against me;

(b)      I commit waste or otherwise destructively use or fail to maintain the Real Property;

LOAN #: ███████████

(c)     I die and I am survived by another person obligated as a Borrower under this Agreement; or

(d)     I move out of the Real Property.

B. If an event described in paragraph 12.A above occurs, subject to any notice or other limitation of applicable law, you may do any combination of the following things:

(1)     you may terminate any of my rights under my Account;

(2)     you may temporarily or permanently refuse to make any additional loans;

(3)     you may declare all sums owing under this Agreement and any other agreement I have made with you to be immediately due and payable;

(4)     you may foreclose the Mortgage;

(5)     you may reduce my Credit Limit; and

(6)     you may take any other action permitted by this Agreement, by law or in equity.

**13. MY IMPORTANT OBLIGATIONS.** I agree that:

A.     I will pay all of my existing and future debts to you under any existing or future agreement with you and I will pay all of my existing and future debts to my other creditors as they become due and will not allow a creditor to obtain a judgment against me.

B.     I will not permit any person or entity to levy upon, attach, garnish or otherwise take any money, account or other property in your possession that belongs to me.

C.     From time to time, if requested, I will supply you with current financial information about me.

D.     I have not made and will not make any misrepresentation in connection with my Account whether in my application, in this Agreement, or in the Mortgage.

E.     I will not permit a receiver, sequestrator, liquidator, trustee, guardian, conservator or other judicial representative to be appointed for me or any of my property or for the Real Property.

F.     I will not use or allow use of the Real Property for any illegal purpose.

G.     I will not move out of the Real Property.

H.     I will not permit a lien to be filed which takes priority over the Mortgage for future advances made under this Agreement.

I.     I will not break any promise made in this Agreement or in the Mortgage such as:

(1)     my promise not to exceed my Credit Limit; and

(2)     my "Important Obligations" listed in the Mortgage.

J.     Before you renew a Draw Period or increase my Credit Limit on my Account, I may need to execute additional documents in order to secure the payment of any loans advanced during any renewed Draw Period or under the increased Credit Limit.

**14. COSTS OF COLLECTION.** Subject to any limits of applicable law, I must pay for your reasonable and actual costs of collection, or foreclosure such as your court costs and reasonable attorney's or trustee's fees. Periodic finance charges will continue to accrue at the rates provided in this Agreement before and after I default and before and after you obtain a judgment against me.

**15. MY RIGHTS TO TERMINATE MY RIGHTS TO OBTAIN LOANS.**

A. Termination by Me. I may terminate my right to obtain loans by sending you a written notice which will become effective upon receipt by you. If more than one person signs this Agreement as Borrower, my right to obtain loans may be terminated by written notice pursuant to this paragraph 15.A signed by any one or more of such persons. I may also suspend my right to obtain loans pursuant to paragraph 11.D above.

LOAN #:

B. <u>Termination by You</u>. My right to future advances under my Account will terminate at the end of the Draw Period or any renewed Draw Period if not sooner upon your exercise of your termination or suspension rights under paragraphs 11.B or 12.B above or my exercise of my suspension or termination rights under paragraphs 11.D or 15.A above.

C. <u>Effect of Termination</u>. Upon termination or suspension of my Account, whether by you or by me, I must continue to pay the "Minimum Payment Due" on or before my "Payment Due Dates" until all amounts owed to you under this Agreement are paid in full. However, I may be required to repay all my obligations to you immediately if you exercise your rights under paragraph 12.B above. I must return unused Equity ·Credit Line Checks to you upon termination.

## 16. CHANGES TO AGREEMENT.

A. You may change this Agreement to the extent not prohibited by federal or state law, such as the changes listed as follows:

    (1)   if the original Index is no longer available, you may change the Index and Margin;

    (2)   you may make any change I agree to in writing;

    (3)   you may make a change which is unequivocally beneficial to me, such as offering me more minimum payment options, extensions or renewals of my Account, reductions in the rate or fees, and additional means to access loans; and

    (4)   you may make insignificant changes, such as changing the address to which payments must be sent, name changes, operational changes involving the billing cycle date, the date the Minimum Payment is due, the day of the month on which Index values are measured to determine my rate, your rounding rules and the balance computation method.

B. If required by applicable law, you will mail me notice of such a change before the effective date of the change. The change will be effective as to any existing unpaid balance and as to any future transactions under this Agreement.

## 17. OTHER PROVISIONS.

A. <u>Third Parties</u>. This Agreement obligates me and my estate, heirs and personal representatives. This Agreement benefits you and your successors and assigns. You may add or release parties, or permit the addition or substitution of real property collateral that secures this Agreement, or modify, extend or amend this Agreement without in any way affecting my or any non-borrower co-owner's obligations under this Agreement. My rights under this Agreement belong only to me, I cannot transfer or assign them to anyone else. You may transfer and assign your rights and obligations under this Agreement and the Mortgage at any time without my consent.

B. <u>Additional Credit Reports and Appraisals</u>. I authorize you to conduct such searches, verifications and evaluations (such as credit reports, appraisals and lien searches) concerning me, the Real Property and the Mortgage as you may deem necessary from time to time. I will cooperate in having the Real Property reappraised.

C. <u>Tax Deductibility</u>. I know that I should consult a tax adviser regarding the deductibility of interest and charges.

D. <u>Applicable Law</u>. I agree that this Agreement is to be governed by federal law and, to the extent not preempted by federal law, by the laws of the state where the Real Property is located.

E. <u>Application of Payments</u>. You may apply payments and proceeds of the Real Property in such order as you shall deem advisable or as otherwise required by applicable law.

F. <u>Failure to Perform</u>. If I violate or fail to perform any term or condition of this Agreement (or the Mortgage), you may (but are under no obligation to) perform on my behalf. All costs you incur will be added to the unpaid principal of my Account and finance charges will be figured at the rates described above. I agree to pay these costs and finance charges on demand. Your performance of any of my obligations will not be a waiver of any of your rights or remedies under this Agreement.

G. <u>Waiver of Jury Trial</u>. I waive my right to a jury trial.

LOAN #: [redacted]

H. <u>Complete Understanding of the Parties</u>. There are no oral agreements concerning this Agreement. This Agreement will not be amended or modified orally. If any provision of this Agreement is held to be void or unenforceable, the rest of this Agreement shall remain in effect.

I. <u>Waiver of Notice</u>. I waive presentment, demand, protest, notice of default, nonpayment, partial payments and all other notices and formalities in connection with the delivery, acceptance, performance, default or enforcement of this Agreement, except those notices that are required by federal Regulation Z.

J. <u>Meaning of Words</u>. All words in this Agreement will be read to be of such gender and number as the context may require. The section headings in this Agreement are for convenience and do not limit or amend any of the Agreement's provisions. Any list of conditions or events in this Agreement preceded by the phrase "such as" is not intended as a full or comprehensive list, but merely as a set of examples of such conditions or events. Other conditions or events are intended to be included to the fullest extent permitted under federal and state law, even if different from the listed conditions or events.

K. <u>Payment Marked "Payment in Full"</u>. I agree not to submit any checks to you in payment of my Account marked "Payment in Full" or similar wording unless the amount of the check is equal to the total amount then owing on my Account. If I do submit a check to you marked "Payment in Full" or similar wording for a sum less than the total amount then owing on my Account, you may accept it in partial payment of my Account but will not be bound by the "Payment in Full" or similar notation. **Communications concerning a dispute as to amounts owing on my Account, including any checks submitted to you as full satisfaction of my Account, must be sent to**
Countrywide Bank, FSB.
P.O. Box 5170, Simi Valley, CA 93062-5170

L. <u>Enforcement</u>. You can accept any late or partial payment or otherwise waive or delay enforcing your rights under this Agreement and still exercise your rights at a later time.

M. <u>Notices</u>. Except for any notice required under applicable law to be given in another manner, (a) any notice provided for in this Agreement shall be given by delivering it or by mailing such notice to me by regular first class mail, addressed to me at my last address appearing on your records or at such other address as I may designate by written notice to you as provided in this paragraph 17.M and (b) any notice to you provided for in this Agreement shall be given by mailing such notice to you by certified mail, return receipt requested, at
Countrywide Bank, FSB.
P.O. Box 5170, Simi Valley, CA 93062-5170
or to such other address as you may designate by written notice to me as provided in this paragraph 17.M.

N. <u>Riders/Addenda</u>. The covenants and agreements of each of the riders/addenda checked below are incorporated into and supplement and amend the terms of this Agreement.

| | |
|---|---|
| [ ] No Cost Addendum | [ ] _____ Rider |
| [x] Fee _____ Addendum | [ ] _____ |
| [x] Billing Rights Statement | |

BY SIGNING BELOW, (1) I AGREE THAT I HAVE READ ALL PAGES OF THIS AGREEMENT INCLUDING ANY RIDERS/ADDENDA, (2) I AGREE AND INTEND TO BE LEGALLY BOUND BY ALL OF ITS TERMS AND CONDITIONS, INCLUDING ANY TERMS AND CONDITIONS LISTED IN ANY RIDERS/ADDENDA, AND (3) I ALSO ACKNOWLEDGE RECEIVING A COMPLETED COPY OF THIS AGREEMENT AND ANY RIDERS/ADDENDA. I ALSO ACKNOWLEDGE THAT I RECEIVED A COPY OF YOUR HOME EQUITY EARLY DISCLOSURE ENTITLED, "IMPORTANT TERMS OF OUR HOME EQUITY LINE OF CREDIT", THE HOME EQUITY BROCHURE ENTITLED, "WHEN YOUR HOME IS ON THE LINE" AND TWO COPIES OF THE HOME EQUITY LINE OF CREDIT NOTICE OF RIGHT TO CANCEL.

_Lorraine R. Santoli_ 4/18/07

Borrower: LORRAINE R. SANTOLI        Date

_____

Borrower:                              Date

_____

Borrower:                              Date

_____

Borrower:                              Date

Prepared by: SUSAN T. AADAL

LOAN #:

# FEE ADDENDUM TO HOME EQUITY CREDIT LINE AGREEMENT AND DISCLOSURE STATEMENT

This Addendum amends and supplements and is incorporated into the Home Equity Credit Line Agreement and Disclosure Statement ("Agreement") dated   APRIL 19, 2007      entered into between me and the Lender identified in the Agreement. Capitalized terms used in this Addendum have the same meanings as given to them in the Agreement. The words "I" and "my" refer to the Borrower or Borrowers signing the Agreement and this Addendum.

Section  6.B   , Other **FINANCE CHARGES**, of the Agreement is amended by replacing subparagraphs (1) and (2) with the following and renumbering, as applicable, the remaining subparagraphs.

B. Other **FINANCE CHARGES**. In addition to any Finance Charges listed in the Agreement, I agree to pay the following FINANCE CHARGES at the time I sign the Agreement:

Attorney/Settlement Agent                                                $    295.00
------------------------------------------------------                      ------------

Section  7.B      of the Agreement is amended to read as follows:
B. In addition to any closing costs listed in the Agreement, I agree to pay the following closing costs at or before the time I sign this Agreement.

Except for the modifications described above, all terms and conditions of the Agreement remain unchanged and in full force and effect.

_____ (Seal)          _____ (Seal)
LORRAINE R. SANTOLI                                                    Borrower
Borrower

_____ (Seal)          _____ (Seal)

Borrower                                                                      Borrower

● Addendum to HELOC - Agreement & Disclosure
2E305-US (08/05)(d)                            Page 1 of 1



* 2 3 9 9 1 *



Prepared by: SUSAN T. AADAL

# HOME EQUITY
## CONFIRMATION AGREEMENT

AGENT:

ORIGINATION DATE:   03/22/2007
AGREEMENT DATE:   03/22/2007
APPLICANT:   LORRAINE R. SANTOLI
CO-APPLICANT:
PROPERTY ADDRESS:   28 HYNARD PLACE
BALDWIN HARBOR, NY 10505

BRANCH # 0000214        96 TRIANGLE CENTER
                        YORKTOWN HEIGHTS, NY 10598

CONFIRMATION NO.:   9704
POINTS:   0.000
AGREEMENT TERM:   45 Days
EXPIRATION DATE:   05/07/2007

LOAN NUMBER:
LOAN AMOUNT:        125,000.00
LOAN TYPE:          HELOC - Stand Alone/ 14.71%/Flex/Cost

INDEX:              WSJ Prime Rate
OCCUPANCY:          OWNER OCCUPIED

| MARGIN | CURRENT INDEX | INT. RATE CEILING |
|--------|---------------|-------------------|
| 3.125  | 8.250         | 18.000            |

This Agreement covers only the above described Applicant, property, and loan program and is subject to the following terms and conditions. **YOU MUST SIGN THIS AGREEMENT AND RETURN IT TO THE LENDER WITHIN 10 DAYS OF THE DATE OF THIS AGREEMENT.**

1.    [ ] This home equity line of credit loan is an adjustable rate mortgage loan, and the interest rate is subject to periodic adjustment. The interest rate will be based on the then-current value of the Index plus the Margin shown above. The loan you have applied for also has an Introductory Interest Rate, which may be lower or greater than the rate that you will be required to pay for the remaining term of the loan. Refer to the "Important Terms of Our Home Equity Line of Credit" disclosure for complete information.

      [X] This home equity line of credit loan is an adjustable rate mortgage loan, and the interest rate is subject to periodic adjustment. The interest rate after closing will be based on the then-current value of the Index plus the Margin shown above. Refer to the "Important Terms of Our Home Equity Line of Credit" disclosure for complete information.

      [ ] This home equity loan is an adjustable rate mortgage loan, and the interest rate is subject to periodic adjustment. The interest rate will be based on the then-current value of the Index plus the Margin shown above. The loan you have applied for also has an Introductory Interest Rate, which may be lower or greater than the rate that you will be required to pay for the remaining term of the loan.

2.    The loan must close, the three-day rescission period (unless such a period is not applicable) must expire, and funds must be disbursed on or before the expiration date set forth above.

3.    Upon loan closing, the Lender must receive a valid first or second lien on the property, as specified in the loan application, and title must be clear, without defects unacceptable to Lender. If required, there must be title insurance in an amount and form acceptable to the Lender.

4.    The Applicant must submit to the Lender a complete loan application, including any additional supporting documentation which the Lender may request in order to enable the Lender to make an underwriting decision.

5.    If this Agreement covers a "reduced documentation" loan application, the Lender reserves the right, in its discretion, to require the Applicant to submit a complete loan application with any additional supporting documentation which the Lender may request. This may result in delays due to the time the Lender will need to verify the information contained in the complete loan application and/or supporting documentation.

6.    This is not a loan approval or loan commitment. Any program described above may not be available for Applicant. The Lender will not close the loan unless, among other things, it approves the Applicant's loan application, including employment, income, assets, credit and property, and all conditions of such approval are satisfied prior to loan closing.

7.    As of the date of loan closing, the Applicant must have hazard insurance on the property covering the replacement cost of the dwelling with an insurance carrier acceptable to the Lender. If the property is located in a special flood hazard area, flood insurance will be required. If the property includes commonly owned area, a master policy insurance certificate will be required. Insurance against additional perils, including but not limited to earthquake, may also be required.

LOAN #: ████████

8.   The Applicant must complete or cause to be completed all required construction, tests or repairs prior to loan closing, and the property must be suitable for occupancy. The Applicant must obtain all required inspections or certifications by applicable and appropriate authorities prior to loan closing. These include, but are not limited to, wood-destroying insect inspection, repair and abatement; radon test; well water or septic system acceptance; local occupancy or use permits; and repairs required by the appraiser as a valuation condition.

9.   If this Agreement covers a purchase transaction, the sale must close with each party paying costs and expenses as specified in the copy of the purchase agreement supplied to the Lender. Any changes in such purchase agreement must be approved by the Lender prior to closing.

10.   The points specified above   ☐ do   ☒ do not   include all other loan fees, costs and expenses.

11.   The Lender estimates that it will take approximately   45   days to process, approve, close and fund the loan. The Lender agrees to use commercially reasonable efforts to fund the loan prior to the expiration date of this Agreement. However, this Agreement is not a commitment to close and fund the loan prior to the expiration date. Delays may occur, and this Agreement may expire prior to loan closing due to a variety of circumstances. Such circumstances include, but are not limited to, unforeseeable or extraordinary events, delays in receipt or failure to receive various required information, documents or fees from either the applicant or third parties, and acts of God. The Lender agrees to exercise reasonable efforts to obtain third-party documentation. Nevertheless, the expiration date of this Agreement shall not be extended as a result of any such circumstances or events.

12.   Regardless of whether or not loan documents have been signed, if the Lender discovers a material change in the information provided with respect to the loan, including but not limited to, the borrowers' income, employment, credit or the property, the Lender shall not be obligated to fund the loan, and the expiration date of this Agreement shall not be extended as a result of any such circumstances or events.

13.   If the loan does not close and funds are not disbursed prior to the expiration date of this Agreement, the Lender and the Applicant may enter into a new Confirmation Agreement. The interest rate and points specified in such new Agreement may be higher than either of the interest rate and points specified above or the Lender's then-current market rate and points.

15.   IF YOU SIGN THIS COMMITMENT, AND YOU DO NOT CLOSE THIS LOAN IN ACCORDANCE WITH THE DESCRIBED TERMS, YOU MAY LOSE SOME OR ALL OF THE FEES OR CHARGES YOU HAVE PAID.

---

Any questions concerning the terms and conditions of this Agreement may be directed to
MICHAEL WATERS                                 (914) 962-5004                                             .

BY SIGNING BELOW, LENDER AND APPLICANT AGREE TO THE TERMS AND CONDITIONS OF THIS CONFIRMATION AGREEMENT.
Countrywide Bank, FSB.

BY _____          TITLE   Closer
    SUSAN AXDAL

Please sign and date below; return the original and keep a copy for your records.

I (We) have read this Confirmation Agreement and agree to all the terms and conditions set forth herein.

_____ 4/19/07 _____          _____
Signature                                              Date          Signature                                              Date
LORRAINE R. SANTOLI

_____ _____          _____
Signature                                              Date          Signature                                              Date



*471360284MTG1*

610                    D2 001 001

Instrument Type
**MTG**

COUNTY RECORDING AND ENDORSEMENT PAGE
(THIS PAGE FORMS PART OF THE INSTRUMENT)
*** DO NOT REMOVE ***

THE FOLLOWING INSTRUMENT WAS ENDORSED FOR THE RECORD AS FOLLOWS:
TYPE OF INSTRUMENT: <u>MTG - MORTGAGE</u>
FEE PAGES:  8          TOTAL PAGES:  8

### RECORDING FEES

| | |
|---|---:|
| STATUTORY CHARGE | $6.00 |
| RECORDING CHARGE | $24.00 |
| RECORD MGT. FUND | $19.00 |
| RP 5217 | $0.00 |
| TP-584 | $0.00 |
| CROSS REFERENCE | $0.00 |
| MISCELLANEOUS | $0.00 |
| TOTAL FEES PAID | $49.00 |

### TRANSFER TAXES

| | |
|---|---:|
| CONSIDERATION | $0.00 |
| TAX PAID | $0.00 |
| TRANSFER TAX # | |

RECORDING DATE: 5/22/2007
TIME: 09:54:00

### MORTGAGE TAXES

| | |
|---|---:|
| MORTGAGE DATE | 4/19/2007 |
| MORTGAGE AMOUNT | $125,000.00 |
| EXEMPT | Yes |
| COUNTY TAX | $312.50 |
| YONKERS TAX | $0.00 |
| BASIC | $625.00 |
| ADDITIONAL | $345.00 |
| MTA | $312.50 |
| SPECIAL | $0.00 |
| TOTAL PAID | $1,595.00 |

SERIAL NUMBER: CY06464
DWELLING: 1-2 Family

THE PROPERTY IS SITUATED IN
WESTCHESTER COUNTY, NEW YORK IN THE:
TOWN OF SOMERS

WITNESS MY HAND AND OFFICIAL SEAL

*Timothy C. Idoni*

TIMOTHY C. IDONI
WESTCHESTER COUNTY CLERK

Record & Return to:
COUNTRYWIDE HOME LOANS INC
MS SV-79 DOCUMENT PROCESSING
PO BOX 10423
VAN NUYS, CA 91410

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

Prepared By:
SUSAN T. AADAL

---

[Space Above This Line For Recording Data]

[Doc ID #]

**THIS MORTGAGE IS A CREDIT LINE MORTGAGE AS DEFINED IN SECTION 281 OF THE NEW YORK REAL PROPERTY LAW. IT SECURES AN INDEBTEDNESS UNDER THE AGREEMENT WHICH REFLECTS THE FACT THAT THE PARTIES' REASONABLY CONTEMPLATE ENTERING INTO A SERIES OF ADVANCES OR ADVANCES, PAYMENTS, AND READVANCES.**

## MORTGAGE
(Line of Credit)

MIN

THIS MORTGAGE, dated APRIL 19, 2007        , is between

LORRAINE R SANTOLI

residing at
28 HYNARD PLACE, BALDWIN PLACE, NY 10505
the person or persons signing as "Mortgagor(s)" below and hereinafter referred to as "we," "our," or "us" and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ("MERS") a Delaware corporation, with an address of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS. FOR PURPOSES OF RECORDING THIS MORTGAGE, MERS IS THE "MORTGAGEE" OF RECORD and is acting solely as nominee for
Countrywide Bank, FSB.
("Lender" or "you") and its successors and assigns. Lender's address is
1199 North Fairfax St. Ste.500, Alexandria, VA 22314

MORTGAGED PREMISES: In consideration of the loan hereinafter described, we hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the premises located at:
28 HYNARD PLACE, BALDWIN PLACE

Street, Municipality

PUTNAM                    New York        10505        (the "Premises").
County                                        ZIP

Section: _____5.17_____   Block: ___2___   Lot: ___19___   Unit: _____

◦ MERS HELOC - NY Mortgage
2E020-NY (02/06)(d)                              Page 1 of 5





DOC ID #:

and further described as:
SEE SCHEDULE "A" ATTACHED HERETO AND MADE A PART HEREOF.

Borrower's Statement Regarding the Premises [check box as applicable]
[x] This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.
[ ] This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.
[ ] This Security Instrument does not cover real property improved as described above.
In addition, the Premises includes all buildings and other improvements now or in the future on the Premises and all rights and interests which derive from our ownership, use or possession of the Premises and all appurtenances thereto.

WE UNDERSTAND and agree that MERS is a separate corporation acting solely as nominee for Lender and Lender's successors and assigns, and holds only legal title to the interests granted by us in this Mortgage, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property, and to take any action required of Lender including, but not limited to, releasing or canceling this Mortgage.

LOAN: This Mortgage will secure your loan to us in the principal amount of $ 125,000.00      or so much there of as may be advanced and readvanced from time to time to
LORRAINE R. SANTOLI

the Borrower(s) under the Home Equity Credit Line Agreement and Disclosure Statement (the "Note") dated APRIL 19, 2007      , plus interest and costs, late charges and all other charges related to the loan, all of which sums are repayable according to the Note. This Mortgage will also secure the performance of all of the promises and agreements made by us and each Borrower and Co-Signer in the Note, all of our promises and agreements in this Mortgage, any extensions, renewals, amendments, supplements and other modifications of the Note, and any amounts advanced by you under the terms of the section of this Mortgage entitled "Our Authority To You." Loans under the Note may be made, repaid and remade from time to time in accordance with the terms of the Note and subject to the Credit Limit set forth in the Note. The Loans secured by this Mortgage have a variable interest rate feature, and the annual percentage rate (corresponding to the periodic rate) and the minimum monthly payment may increase or decrease as a result.

OWNERSHIP: We are the sole owner(s) of the Premises. We have the legal right to mortgage the Premises to you.

OUR IMPORTANT OBLIGATIONS:

(a) TAXES: We will pay all real estate taxes, assessments, water charges and sewer rents relating to the Premises when they become due. We will not claim any credit on, or make deduction from, the loan under the Note because we pay these taxes and charges. We will provide you with proof of payment upon request.

(b) MAINTENANCE: We will maintain the building(s) on the Premises in good condition. We will not make major changes in the building(s) except for normal repairs. We will not tear down any of the building(s) on the Premises without first getting your consent. We will not use the Premises illegally. If this Mortgage is on a unit in a condominium or a planned unit development, we shall perform all of our obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development and constituent documents.

MERS HELOC - NY Mortgage
2E020-NY (02/06)                     Page 2 of 5

DOC ID #:

(c) INSURANCE: We will keep the building(s) on the Premises insured at all times against loss by fire, flood and any other hazards you may specify. We may choose the insurance company, but our choice is subject to your reasonable approval. The policies must be for at least the amounts and the time periods that you specify. We will deliver to you upon your request the policies or other proof of the insurance. The policies must name you as "mortgagee" and "loss-payee" so that you will receive payment on all insurance claims, to the extent of your interest under this Mortgage, before we do. The insurance policies must also provide that you be given not less than 10 days prior written notice of any cancellation or reduction in coverage, for any reason. Upon request, we shall deliver the policies, certificates or other evidence of insurance to you. In the event of loss or damage to the Premises, we will immediately notify you in writing and file a proof of loss with the insurer. You may file a proof of loss on our behalf if we fail or refuse to do so. You may also sign our name to any check, draft or other order for the payment of insurance proceeds in the event of loss or damage to the Premises. If you receive payment of a claim, you will have the right to choose to use the money either to repair the Premises or to reduce the amount owing on the Note.

(d) CONDEMNATION: We assign to you the proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Premises, or part thereof, or for conveyance in lieu of condemnation, all of which shall be paid to you, subject to the terms of any Prior Mortgage.

(e) SECURITY INTEREST: We will join with you in signing and filing documents and, at our expense, in doing whatever you believe is necessary to perfect and continue the perfection of your lien and security interest in the Premises. It is agreed that the Lender shall be subrogated to the claims and liens of all parties whose claims or liens are discharged or paid with the proceeds of the Note secured hereby.

(f) OUR AUTHORITY TO YOU: If we fail to perform our obligations under this Mortgage, you may, if you choose, perform our obligations and pay such costs and expenses. You will add the amounts you advance to the sums owing on the Note, on which you will charge interest at the interest rate set forth in the Note. If, for example, we fail to honor our promises to maintain insurance in effect, or to pay filing fees, taxes or the costs necessary to keep the Premises in good condition and repair or to perform any of our other agreements with you, you may, if you choose, advance any sums to satisfy any of our agreements with you and charge us interest on such advances at the interest rate set forth in the Note. This Mortgage secures all such advances. Your payments on our behalf will not cure our failure to perform our promises in this Mortgage. Any replacement insurance that you obtain to cover loss or damages to the Premises may be limited to the amount owing on the Note plus the amount of any Prior Mortgages.

(g) PRIOR MORTGAGE: If the provisions of this paragraph are completed, this Mortgage is subject and subordinate to a prior mortgage dated 11/21/06 and given by us to COUNTRYWIDE HOME LOANS as mortgagee, in the original amount of $ 595,000.00 (the "Prior Mortgage"). We shall not increase, amend or modify the Prior Mortgage without your prior written consent and shall upon receipt of any written notice from the holder of the Prior Mortgage promptly deliver a copy of such notice to you. We shall pay and perform all of our obligations under the Prior Mortgage as and when required under the Prior Mortgage.

(h) HAZARDOUS SUBSTANCES: We shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Premises. We shall not do, nor allow anyone else to do, anything affecting the Premises that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Premises of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Premises. As used in this paragraph, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph, "Environmental Law" means federal laws and laws of the jurisdiction where the Premises are located that relate to health, safety or "Environmental Law" means federal laws and laws of the jurisdiction where the Premises are located that relate to health, safety or environmental protection.

(i) SALE OF PREMISES: We will not sell, transfer ownership of, mortgage or otherwise dispose of our interest in the Premises, in whole or in part, or permit any other lien or claim against the Premises without your prior written consent.

(j) INSPECTION: We will permit you to inspect the Premises at any reasonable time.

MERS HELOC - NY Mortgage
2E020-NY (02/06)    Page 3 of 5

DOC ID #:

**(k) NEW YORK LIEN LAW:** We will, in compliance with Section 13 of the New York Lien Law, make sure that the loans secured by this Mortgage are received as a Trust Fund to be applied first for the purpose of paying the cost of any improvements to the Premises and will apply the same first to the payment of the cost of the improvements before using any part of the total of the same for any other purpose.

**NO LOSS OF RIGHTS:** The Note and this Mortgage may be negotiated or assigned by you without releasing us or the Premises. You may add or release any person or property obligated under the Note and this Mortgage without losing your rights in the Premises.

**DEFAULT:** Except as may be prohibited by applicable law, and subject to any advance notice and cure period if required by applicable law, if any event or condition of default as described in the Note occurs, you may foreclose upon this Mortgage. This means that you may arrange for the Premises to be sold, as provided by law, in order to pay off what we owe on the Note and under this Mortgage. If the money you receive from the sale is not enough to pay off what we owe you, we will still owe you the difference which you may seek to collect from us in accordance with applicable law. In addition, you may, in accordance with applicable law, (i) enter on and take possession of the Premises; (ii) collect the rental payments, including over-due rental payments, directly from tenants; (iii) manage the Premises; and (iv) sign, cancel and change leases. We agree that the interest rate set forth in the Note will continue before and after a default, entry of a judgment and foreclosure. In addition, you shall be entitled to collect all reasonable fees and costs actually incurred by you in proceeding to foreclosure, including, but not limited to, reasonable attorneys fees and costs of documentary evidence, abstracts and title reports.

**ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER:** As additional security, we assign to you the rents of the Premises. You or a receiver appointed by the courts shall be entitled to enter upon, take possession of and manage the Premises and collect the rents of the Premises including those past due.

**WAIVERS:** To the extent permitted by applicable law, we waive and release any error or defects in proceedings to enforce this Mortgage and hereby waive the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale and homestead exemption.

**BINDING EFFECT:** Each of us shall be fully responsible for all of the promises and agreements in this Mortgage. Until the Note has been paid in full and your obligation to make further advances under the Note has been terminated, the provisions of this Mortgage will be binding on us, our legal representatives, our heirs and all future owners of the Premises. This Mortgage is for your benefit and for the benefit of anyone to whom you may assign it. Upon payment in full of all amounts owing to you under the Note and this Mortgage, and provided any obligation to make further advances under the Note has terminated, this Mortgage and your rights in the Premises shall end.

**NOTICE:** Except for any notice required under applicable law to be given in another manner, (a) any notice to us provided for in this Mortgage shall be given by delivering it or by mailing such notice by regular first class mail addressed to us at the last address appearing in your records or at such other address as we may designate by notice to you as provided herein, and (b) any notice to you shall be given by certified mail, return receipt requested, to your address at
For MERS:
P.O. Box 2026, Flint, MI 48051-2026
For Lender:
1199 North Fairfax St. Ste.500, Alexandria, VA 22314
or to such other address as you may designate by notice to us. Any notice provided for in this Mortgage shall be deemed to have been given to us or you when given in the manner designated herein.

**RELEASE:** Upon payment of all sums secured by this Mortgage and provided your obligation to make further advances under the Note has terminated, you shall discharge this Mortgage without charge to us, except that we shall pay any fees for recording of a satisfaction of this Mortgage.

**GENERAL:** You can waive or delay enforcing any of your rights under this Mortgage without losing them. Any waiver by you of any provisions of this Mortgage will not be a waiver of that or any other provision on any other occasion.

DOC ID #:

THIS MORTGAGE has been signed by each of us under seal on the date first above written.

_____
Mortgagor:   LORRAINE R. SANTOLI

_____
Mortgagor:

_____
Mortgagor:

_____
Mortgagor:

**STATE OF NEW YORK**                    )
                                         )ss.
County of   Westchester                  )

On the ___19th___ day of ___April___ in the year ___2007___ before me, the undersigned, a notary public in and for said state, personally appeared ___Lorraine R. Santoli___

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that __she__ executed the same in __her__ capacity(ies), and that by __her__ signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

My Commission Expires:

_____
Notary Public

Tax Map Information: 564

Robert A. Finkelstein
Notary Public, State of New York
No. 4630184
Qualified in Westchester County
Commission Expires May 21, 2007

● MERS HELOC - NY Mortgage
2E020-NY (02/06)                    Page 5 of 5

# WESTCHESTER COUNTY CLERK RECORDING SHEET
110 Dr. Martin Luther King, Jr. Boulevard     White Plains, NY 10601

RECEIVED
07 MAY 10  AM 10:20
WESTCHESTER COUNTY CLERK

-------- THIS FORM MUST BE COMPLETED AND SUBMITTED WITH EACH DOCUMENT --------

This page is part of the instrument; the County Clerk will rely on the information
provided on this page for purposes of indexing this document.
To the best of the submitter's knowledge the information contained on this
Recording Sheet is consistent with the information contained in the attached document.

**SUBMITTER INFORMATION:**
Title Number: 07CA51659
Company: CASTLE TITLE INS. AGENCY
Address: 297 KNOLLWOOD ROAD
City: WHITE PLAINS   State: NY   Zip: 10607   Telephone: 914-681-0800
Attention: _____

Document type: Mortgage   # of pages - 7
Mortgage Amount: On page 3 of document $125,000
Dwelling Type: For Mortgage Only On page 3 of document ☑ 1 to 2 family ☐ 1 to 6 family ☐ Not 1 to 6 family

1st party name(s): On page 1
Lorraine K. Santoli

2nd party name(s): On page 1
Mers

Check if submitted: ☐ RP-5217 ☐$75 ☐$165 ☐ TP-584 ☐ TP-584.1 ☐ IT-2663

TAXES PAID:
Mortgage Tax $ 1595   Reference # 2931
Transfer Tax $
Mansion Tax $
RECORDING FEES PAID: $ 275   Reference # 2932

Tax designation (Section, Block & Lot): 5.17 / 2 / 19   On page 1 of document
City(ies) or Town(s) for Property Description: Somers   On page 2

MORTGAGE TAX AFFIDAVITS SUBMITTED: ☐252 ☐255 ☐280 ☐253 ☐260 ☐339-ee Other:
Cross Reference(s):

Property Description: ☑ Metes & bounds On page 2 ☐ Lot number on map ☐ Refer to deed

Record and Return To:
Countrywide Home Loans
MS-SV-79 Document
PO Box 10423
Van Nuys CA 91410

LandRecords/Coversheet.doc   revised 06/30/05



The Office of the Westchester County Clerk: This page is part of the instrument; the County Clerk will rely on the information provided on this page for purposes of indexing this instrument. To the best of submitter's knowledge, the information contained on this Recording and Endorsement Cover Page is consistent with the information contained in the attached document.

## Westchester County Recording & Endorsement Page

### Submitter Information

| | | | |
|---|---|---|---|
| Name: | Bank of America NA | Phone: | 2133451221 |
| Address 1: | 1800 Tapo Cyn Rd | Fax: | |
| Address 2: | | Email: | tracey.snyder@bankofamerica.com |
| City/State/Zip: | Simi Valley CA 93063 | Reference for Submitter: | |

### Document Details

| | | | |
|---|---|---|---|
| Control Number: | | Document Type: | Assignment (ASS) |
| Package ID: | 2013082600137001001 | Document Page Count: 1 | Total Page Count: 2 |

### Parties

☐ Additional Parties on Continuation page

| 1st PARTY | | 2nd PARTY | |
|---|---|---|---|
| 1: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC | - Other | 1: BANK OF AMERICA N A | - Other |
| 2: | | 2: | |

### Property

☐ Additional Properties on Continuation page

Street Address: 28 HYNARD PLACE        Tax Designation: 5.17-2-19

City/Town:    SOMERS            Village:

### Cross- References

☐ Additional Cross-Refs on Continuation page

1:  471360284        2:        3:        4:

### Supporting Documents

| Recording Fees | | Mortgage Taxes | |
|---|---|---|---|
| Statutory Recording Fee: | $40.00 | Document Date: | |
| Page Fee: | $10.00 | Mortgage Amount: | |
| Cross-Reference Fee: | $0.50 | | |
| Mortgage Affidavit Filing Fee: | $0.00 | Basic: | $0.00 |
| RP-5217 Filing Fee: | $0.00 | Westchester: | $0.00 |
| TP-584 Filing Fee: | $0.00 | Additional: | $0.00 |
| | | MTA: | $0.00 |
| Total Recording Fees Paid: | $50.50 | Special: | $0.00 |
| Transfer Taxes | | Yonkers: | $0.00 |
| Consideration: | $0.00 | Total Mortgage Tax: | $0.00 |
| Transfer Tax: | $0.00 | | |
| Mansion Tax: | $0.00 | Dwelling Type: | Exempt: ☐ |
| Transfer Tax Number: | | Serial #: | |

### RECORDED IN THE OFFICE OF THE WESTCHESTER COUNTY CLERK

Recorded:    09/13/2013 at 10:37 AM

Control Number:

Witness my hand and official seal

Timothy C.Idoni
Westchester County Clerk

### Record and Return To

☐ Pick-up at County Clerk's office

BANK OF AMERICA, N.A.
4500 AMON CARTER BLVD.
TX2-979-01-19
FORT WORTH , TX 76155
Attn: ASSIGNMENT UNIT

008000942    SANTOLI    LR

610        D8  001  001

Recording requested by:
MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC. AS
NOMINEE FOR COUNTRYWIDE BANK
FSB

When recorded mail to:
BANK OF AMERICA
DOCUMENT PROCESSING

4500 AMON CARTED BLVD
FORT WORTH, TX 76155-2202
Attn: ASSIGNMENT UNIT

## CORPORATION ASSIGNMENT OF MORTGAGE

Doc. ID#
Commitment#

For value received, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE
FOR COUNTRYWIDE BANK FSB, 1901 E VOORHEES ST, STE C, DANVILLE, IL  61834, its
successors and assigns, hereby assigns and transfers to BANK OF AMERICA, N.A.
1800 TAPO CANYON ROAD, SIMI VALLEY, CA 93063 all its rights, title and
interest in and to a certain Mortgage dated 4/19/07, executed by: LORRAINE R
SANTOLI, Mortgagor as per MORTGAGE recorded as Instrument No. 471360284 on
5/22/07 in Book N/A Page N/A of official records in the County Recorder's
Office of WESTCHESTER County, NEW YORK.
   Tax Parcel =  564,   ~~GREENBURGH TOWN RECEIVER OF TAXES~~
Original Mortgage $125,000.00
28 HYNARD PLACE, BALDWIN PLACE, NY 10505

*original lender* SA

This assignment is not subject to the requirements of Section 275 of the Real
Property Law because it is an assignment within the secondary mortgage
market.

Dated: _AUG 12 2013_        MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS
                            NOMINEE FOR COUNTRYWIDE BANK FSB

                       By
                            MIGUEL ROMERO, ASSISTANT SECRETARY

State of California
County of Ventura
On AUG 12 2013 before me, Jacqueline Benson , Notary Public,
personally appeared MIGUEL ROMERO, who proved to me on the basis of
satisfactory evidence to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the
same in his/her/their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s), or the entity upon behalf of
which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California
that the foregoing paragraph is true and correct

Witness my hand and official seal.

Signature: _Jacqueline Benson_
               Jacqueline Benson

JACQUELINE BENSON
Commission # 1963212
Notary Public - California
Los Angeles County
My Comm. Expires Dec 9, 2015

Prepared by: SEVAN APIK
1800 TAPO CANYON RD
SIMI VALLEY, CA 93063
Phone#: (213) 345-0511
MIN:
MERS Phone: 1-888-679-6377

## COLLECTION AGREEMENT

This COLLECTION AGREEMENT (this "**Agreement**") is dated as of this 1st day of February, 2013, by and among Specialized Loan Servicing LLC, a Delaware limited liability company, as servicer (the "**Servicer**") and Real Time Resolutions, Inc., a Texas corporation, as collection contractor (the "**Contractor**").

## BACKGROUND

A.    The Servicer is currently servicing or expects to begin servicing certain Mortgage Loans under certain pooling and servicing agreements (each, a "**PSA**" and, collectively, the "**PSAs**") for the benefit of certificateholders of certain trusts (each, a "**Trust**" and, collectively, the "**Trusts**") created thereunder and for the benefit of the Certificate Insurer, described herein in Exhibit B.

B.    The Servicer agrees to engage or continue the engagement of the Contractor to perform such activities to benefit the Trusts, at the expense of the Trusts as more fully set forth herein and the Contractor wishes to accept such engagement.

C.    The Servicer is entering into this Agreement to retain the Contractor as its "sub-contractor" with respect to the collection and recovery responsibilities of certain Charged Off Loans (as defined below)  it currently services under the PSAs in accordance with the terms contained herein, provided that as between the Servicer and the Contractor, from and after the related Transfer Date (as defined below) (i) the Servicer has no liability with respect to the Contractor or the collection and recovery responsibilities with respect to the Charged Off Loans, except as provided herein or in the PSAs and (ii) the Contractor shall be solely responsible for performing the collection services in accordance with the terms and conditions of this Agreement.

NOW, THEREFORE, the parties agree as follows:

## ARTICLE I.

## DEFINITIONS

As used in this Agreement, the following words, phrases and acronyms shall have the following meanings, unless the context clearly and specifically requires otherwise:

"**Ancillary Charges**" shall mean reasonable consulting fees, contractor fees, Filing Costs, Legal Fees, or other types of costs incurred to collect a Charged Off Loan, which Contractor reasonably believes are in the best interest of the applicable Trust or Trusts. Ancillary Charges shall also specifically include up to

Ancillary Charges shall be allocable to the applicable Charged Off Loan Pools based on the best interests of the Trust and the Certificate Insurer and recovered solely from Proceeds associated with a particular Charged Off Loan. Any Ancillary Charges consisting of Legal Fees relating to offensive litigation against a Borrower or an Obligor or any that in total would be greater than

1.18    "**Reporting Date**" shall have the meaning set forth in Section 3.2 of this Agreement.

1.19    "**Reporting Period**" shall mean each calendar month.

1.20    "**Term**" shall have the meaning set forth in Section 8.1 below.

1.21    "**Transfer Date**" shall mean the earliest date on which a specified Loan was classified as a Charged Off Loan under the applicable PSA is transferred by Servicer or any prior Servicer to Contractor for the performance of the Obligations with respect thereto.

## ARTICLE II.

## ASSIGNMENT AND DELEGATION
## OF COLLECTION RESPONSIBILITIES

2.1    <u>Assignment and Delegation</u>.    On the terms and conditions contained herein, effective on the related Transfer Date, the Servicer hereby assigns and delegates to the Contractor the Obligations and the Contractor hereby accepts such assignment and delegation; provided, however, the Contractor shall only assume those Obligations which are specifically identified and expressly assumed herein.  The Servicer, in its sole discretion, shall determine which Charged Off Loans, if any, Servicer will assign and delegate to Contractor for performance of the Obligations hereunder.  The are no minimum or maximum numbers of Charged Off Loans which must be assigned and delegated to Contractor hereunder.  Further, the parties agree such assignment and delegation is not exclusive and Servicer may assign and delegate other Charged Off Loans to any third party at Servicer's sole discretion.

2.2    <u>Contracting Periods</u>.  The Contractor shall commence collecting each Charged Off Loan as provided herein beginning on its Transfer Date and shall continue collecting such Charged Off Loan throughout the Term unless such Charged Off Loan is removed as provided in Section 8.2 or 8.3.

4

IN WITNESS WHEREOF, the Servicer and the Contractor have caused their duly authorized officers to execute this Agreement as of the date first above written.

CONTRACTOR:

REAL TIME RESOLUTIONS, INC.

By: _Janice Conners_

Name: Janize L. Conners

Title: Secretary

SERVICER:

SPECIALIZED LOAN SERVICING LLC

By: _____

Name: Toby Wells

Title: CFO

19