**Fill in this information to identity the case:**

| | |
|---|---|
| Debtor 1 | Lorraine R Santoli |
| Debtor 2 | |
| United States Bankruptcy Court for the: | Southern District of New York, White Plains Division    District of    NY |
| | (State) |
| Case number | 1623516 |

## Official Form 410

# Proof of Claim

12/15

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C.§503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents**; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

| Part 1: | Identify the Claim |
|---|---|

| | |
|---|---|
| **1. Who is the current creditor?** | THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWMBS, INC., CHL MORTGAGE PASS-THROUGH TRUST 2006-20 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-20 |
| | Other names the creditor used with the debtor |
| **2. Has this claim been acquired from anyone else?** | ☑ No<br>☐ Yes    From whom? |
| **3. Where should notices and payments to the creditor be sent?**<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?**    **Where should payments to the creditor be sent?** (if different)<br><br>Shellpoint Mortgage Servicing<br>PO BOX 10826<br><br>Greenville        SC        29603-0826<br><br>Contact phone    (800) 365-7107        Contact phone<br>Contact email  mtgbk@ shellpointmtg.com        Contact email<br><br>Uniform claim identifier for electronic payments in chapter 13 (if you use one) |
| **4. Does this claim amend one already filed?** | ☑ No<br>☐ Yes    Claim number on court claims registry (if known)        Filed on |
| **5. Do you know if anyone else has filed a proof of claim for this claim?** | ☑ No<br>☐ Yes    Who made the earlier filing? |

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☐ No

☑ Yes    Last 4 digits of the debtor's account or any number you use to identify the debtor:    6086

---

**7. How much is the claim?**    $1,050,269.63    **Does this amount include interest or other charges?**

☐ No

☑ Yes    Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

---

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Money Loaned

---

**9. Is all or part of the claim secured?**

☐ No

☑ Yes    The claim is secured by a lien on property.

Nature of property:    28 Hynard Place , Baldwin Place, NY 10505

☑ Real estate.    If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A with this *Proof of Claim*.

☐ Motor vehicle.

☐ Other. Describe:

Basis for perfection:    Note/Mortgage

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recordsd.)

Value of Property:

Amount of the claim that is secured:    $1,050,269.63

Amount of the claim that is unsecured:    $0.00    (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition:    $544,673.12

Annual Interest Rate (when case was filed)    6.5000000%

☑ Fixed

☐ Variable

---

**10. Is this claim based on a lease?**

☑ No

☐ Yes    Amount necessary to cure any default as of  the date of the petition.

---

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes    Identify the property:

---

**12. Is all or part of this claim entitled to priority under 11 U.S.C. § 507(a)??**

☑ No

☐ Yes   *Check all that apply:*

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

| | Amount entitled to priority |
|---|---|

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C § 507(a)(1)(A) or (a)(1)(B).

☐ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).

☐ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).

☐ Taxes or penalties owed to government units. 11 U.S.C. § 507(a)(8)

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5)

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies.

* Amounts are subject to adjustment on 4/01/16 and every 3 years after that for cases begun on or after the date of adjustment.

---

## Part 3:   Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRPB 599(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisonment for up to 5 years, or both.**
**18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date       11/23/2016

/s/ Adryan Fambro
_____
Signature

**Print the name of the person who is completing and signing this claim:**

| | |
|---|---|
| Name | Adryan Fambro |
| Title | Bankruptcy Case Manager |
| Company | Shellpoint Mortgage Servicing |
| Address | PO Box 10826 |
| | Greenville          SC          29603-0826 |
| Contact phone | (800) 365-7107     Contact email     mtgbk@ shellpointmtg.com |

**Mortgage Proof of Claim Attachment**                                                                                      **(12/15)**

**If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See separate instructions.**

| Part 1: Mortgage and Case Information | | Part 2: Total Debt Calculation | | Part 3: Arrearage as of the Date of the Petition | | Part 4: Monthly Mortgage Payme |
|---|---|---|---|---|---|---|
| Case Number: | 1623516 | Principal balance: | $589,424.22 | Principal & interest due: | $409,927.20 | Principal & Interest: $3,760.80 |
| Debtor 1: | Lorraine R Santoli | Interest due: | $326,099.49 | Prepetition fees due: | $6,350.39 | Monthly escrow: $1,373.68 |
| Debtor 2: | | Fees, costs due: | $6,350.39 | Escrow deficiency for funds advanced: | $128,395.53 | Private mortage insurance: $0.00 |
| Last 4 digits to identify: | 6086 | Escrow deficiency for funds advanced: | $128,395.53 | Projected escrow shortage: | $0.00 | Total monthly payment: $5,134.48 |
| Creditor: | THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF | Less total funds on hand: - | $0.00 | Less funds on hand: - | $0.00 | |
| | | Total debt: | $1,050,269.63 | Total prepetition arrearage: | $544,673.12 | |
| Servicer | Shellpoint Mortgage Servicing | | | | | |
| Fixed accrual/daily simple interest/other: | Fixed | | | | | |

**Part 5: Loan Payment History from First Date of Default**

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, Int & esc past due amount | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 3760.80 | | 3760.80 | Regular Payment | 11/1/07 | 3760.80 | | | | | | 589424.22 | | 5314.36 | 45.59 | -225.66 |
| | 3760.80 | | 3760.80 | Regular Payment | 12/1/07 | 7521.60 | | | | | | | | | | |
| 12/17/07 | | 225.66 | | Unapplied Payment | 10/1/07 | | | | | 225.66 | | | | | | |
| 12/31/07 | | 19.29 | | Int on Escrow Pmt | 10/1/07 | | | | 19.29 | | | | | 5333.65 | | |
| | 3760.80 | | 3760.80 | Regular Payment | 1/1/08 | 11282.40 | | | | | | | | | | |
| | 3760.80 | | 3760.80 | Regular Payment | 2/1/08 | 15043.20 | | | | | | | | | | |
| 2/4/08 | | -3859.96 | | Tax Bill 1 Disburser | 10/1/07 | | | | -3859.96 | | | | | 1473.69 | | |
| | 3760.80 | | 3760.80 | Regular Payment | 3/1/08 | 18804.00 | | | | | | | | | | |
| 3/12/08 | | 3859.96 | | Tax Refund Report | 10/1/07 | | | | 3859.96 | | | | | 5333.65 | | |
| 3/12/08 | | | -400.00 | Title Cost | 10/1/07 | | | | | -400.00 | | | | | 445.59 | |
| 3/31/08 | | -3859.96 | | Tax Bill 1 Disburser | 10/1/07 | | | | -3859.96 | | | | | 1473.69 | | |
| 3/31/08 | | -3859.96 | | Tax Bill 1 Disburser | 10/1/07 | | | | -3859.96 | | | | | -2386.27 | | |
| 3/31/08 | | 18.77 | | Int on Escrow Pmt | 10/1/07 | | | | 18.77 | | | | | -2367.50 | | |
| | 3760.80 | | 3760.80 | Regular Payment | 4/1/08 | 22564.80 | | | | | | | | | | |
| 4/23/08 | | -3888.57 | | Tax Bill 1 Disburser | 10/1/07 | | | | -3888.57 | | | | | -6256.07 | | |
| | 3760.80 | | 3760.80 | Regular Payment | 5/1/08 | 26325.60 | | | | | | | | | | |
| | 3760.80 | | 3760.80 | Regular Payment | 6/1/08 | 30086.40 | | | | | | | | | | |

**Mortgage Proof of Claim Attachment**                                                                    **(12/15)**

Case Number:        1623516

Debtor 1:           Lorraine R Santoli

## Part 5: Loan Payment History from First Date of Default

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, Int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal blance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 3760.80 | | 3760.80 | Regular Payment | 7/1/08 | 33847.20 | | | | | | | | | | |
| | 3760.80 | | 3760.80 | Regular Payment | 8/1/08 | 37608.00 | | | | | | | | | | |
| | 3760.80 | | 3760.80 | Regular Payment | 9/1/08 | 41368.80 | | | | | | | | | | |
| 9/23/08 | | -4099.15 | | Tax Bill 1 Disburser | 10/1/07 | | | | -4099.15 | | | | | -10355.22 | | |
| | 3760.80 | | 3760.80 | Regular Payment | 10/1/08 | 45129.60 | | | | | | | | | | |
| | 3760.80 | | 3760.80 | Regular Payment | 11/1/08 | 48890.40 | | | | | | | | | | |
| | 3760.80 | | 3760.80 | Regular Payment | 12/1/08 | 52651.20 | | | | | | | | | | |
| 12/16/08 | | 3859.96 | | Tax Refund Report | 10/1/07 | | | | 3859.96 | | | | | -6495.26 | | |
| | 3760.80 | | 3760.80 | Regular Payment | 1/1/09 | 56412.00 | | | | | | | | | | |
| 1/21/09 | | -4099.15 | | Tax Bill 1 Disburser | 10/1/07 | | | | -4099.15 | | | | | -10594.41 | | |
| | 3760.80 | | 3760.80 | Regular Payment | 2/1/09 | 60172.80 | | | | | | | | | | |
| | 3760.80 | | 3760.80 | Regular Payment | 3/1/09 | 63933.60 | | | | | | | | | | |
| | 3760.80 | | 3760.80 | Regular Payment | 4/1/09 | 67694.40 | | | | | | | | | | |
| 4/8/09 | | -3941.35 | | Tax Bill 1 Disburser | 10/1/07 | | | | -3941.35 | | | | | -14535.76 | | |
| | 3760.80 | | 3760.80 | Regular Payment | 5/1/09 | 71455.20 | | | | | | | | | | |
| | 3760.80 | | 3760.80 | Regular Payment | 6/1/09 | 75216.00 | | | | | | | | | | |
| | 3760.80 | | 3760.80 | Regular Payment | 7/1/09 | 78976.80 | | | | | | | | | | |
| | 3760.80 | | 3760.80 | Regular Payment | 8/1/09 | 82737.60 | | | | | | | | | | |
| | 3760.80 | | 3760.80 | Regular Payment | 9/1/09 | 86498.40 | | | | | | | | | | |
| 9/18/09 | | -4239.13 | | Tax Bill 1 Disburser | 10/1/07 | | | | -4239.13 | | | | | -18774.89 | | |
| | 3760.80 | | 3760.80 | Regular Payment | 10/1/09 | 90259.20 | | | | | | | | | | |
| | 3760.80 | | 3760.80 | Regular Payment | 11/1/09 | 94020.00 | | | | | | | | | | |
| | 3760.80 | | 3760.80 | Regular Payment | 12/1/09 | 97780.80 | | | | | | | | | | |
| 12/1/09 | | -594.57 | | Addl Ins Premium D | 10/1/07 | | | | -594.57 | | | | | -19369.46 | | |
| | 3760.80 | | 3760.80 | Regular Payment | 1/1/10 | 101541.60 | | | | | | | | | | |
| 1/25/10 | | -4239.13 | | Tax Bill 1 Disburser | 10/1/07 | | | | -4239.13 | | | | | -23608.59 | | |
| | 3760.80 | | 3760.80 | Regular Payment | 2/1/10 | 105302.40 | | | | | | | | | | |
| | 3760.80 | | 3760.80 | Regular Payment | 3/1/10 | 109063.20 | | | | | | | | | | |
| 3/19/10 | | -1465.00 | | Insurance Premium I | 10/1/07 | | | | -1465.00 | | | | | -25073.59 | | |
| | 3760.80 | | 3760.80 | Regular Payment | 4/1/10 | 112824.00 | | | | | | | | | | |
| 4/13/10 | | -4112.40 | | Tax Bill 1 Disburser | 10/1/07 | | | | -4112.40 | | | | | -29185.99 | | |
| | 3760.80 | | 3760.80 | Regular Payment | 5/1/10 | 116584.80 | | | | | | | | | | |

Offical Form 410A                                              **Mortgage Proof of Claim Attachment**                                              Page 2 of 7

# Mortgage Proof of Claim Attachment

(12/15)

Case Number:        1623516

Debtor 1:        Lorraine R Santoli

## Part 5: Loan Payment History from First Date of Default

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, Int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal blance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 3760.80 | | 3760.80 | Regular Payment | 6/1/10 | 120345.60 | | | | | | | | | | |
| | 3760.80 | | 3760.80 | Regular Payment | 7/1/10 | 124106.40 | | | | | | | | | | |
| | 3760.80 | | 3760.80 | Regular Payment | 8/1/10 | 127867.20 | | | | | | | | | | |
| | 3760.80 | | 3760.80 | Regular Payment | 9/1/10 | 131628.00 | | | | | | | | | | |
| 9/9/10 | | -4291.56 | | Tax Bill 1 Disburser | 10/1/07 | | | | -4291.56 | | | | | -33477.55 | | |
| | 3760.80 | | 3760.80 | Regular Payment | 10/1/10 | 135388.80 | | | | | | | | | | |
| | 3760.80 | | 3760.80 | Regular Payment | 11/1/10 | 139149.60 | | | | | | | | | | |
| | 3760.80 | | 3760.80 | Regular Payment | 12/1/10 | 142910.40 | | | | | | | | | | |
| | 3760.80 | | 3760.80 | Regular Payment | 1/1/11 | 146671.20 | | | | | | | | | | |
| 1/19/11 | | -4291.56 | | Tax Bill 1 Disburser | 10/1/07 | | | | -4291.56 | | | | | -37769.11 | | |
| | 3760.80 | | 3760.80 | Regular Payment | 2/1/11 | 150432.00 | | | | | | | | | | |
| | 3760.80 | | 3760.80 | Regular Payment | 3/1/11 | 154192.80 | | | | | | | | | | |
| 3/15/11 | | -1568.00 | | Insurance Premium I | 10/1/07 | | | | -1568.00 | | | | | -39337.11 | | |
| | 3760.80 | | 3760.80 | Regular Payment | 4/1/11 | 157953.60 | | | | | | | | | | |
| 4/18/11 | | -4706.23 | | Tax Bill 1 Disburser | 10/1/07 | | | | -4706.23 | | | | | -44043.34 | | |
| | 3760.80 | | 3760.80 | Regular Payment | 5/1/11 | 161714.40 | | | | | | | | | | |
| 5/11/11 | | -700.00 | | Foreclosure Trustee | 10/1/07 | | | | | -700.00 | | | | | | 1145.59 |
| | 3760.80 | | 3760.80 | Regular Payment | 6/1/11 | 165475.20 | | | | | | | | | | |
| 6/15/11 | | -2425.00 | | Foreclosure Trustee | 10/1/07 | | | | | -2425.00 | | | | | | 3570.59 |
| | 3760.80 | | 3760.80 | Regular Payment | 7/1/11 | 169236.00 | | | | | | | | | | |
| | 3760.80 | | 3760.80 | Regular Payment | 8/1/11 | 172996.80 | | | | | | | | | | |
| | 3760.80 | | 3760.80 | Regular Payment | 9/1/11 | 176757.60 | | | | | | | | | | |
| 9/22/11 | | -4545.62 | | Tax Bill 1 Disburser | 10/1/07 | | | | -4545.62 | | | | | -48588.96 | | |
| | 3760.80 | | 3760.80 | Regular Payment | 10/1/11 | 180518.40 | | | | | | | | | | |
| | 3760.80 | | 3760.80 | Regular Payment | 11/1/11 | 184279.20 | | | | | | | | | | |
| | 3760.80 | | 3760.80 | Regular Payment | 12/1/11 | 188040.00 | | | | | | | | | | |
| | 3760.80 | | 3760.80 | Regular Payment | 1/1/12 | 191800.80 | | | | | | | | | | |
| 1/23/12 | | -4545.61 | | Tax Bill 1 Disburser | 10/1/07 | | | | -4545.61 | | | | | -53134.57 | | |
| | 3760.80 | | 3760.80 | Regular Payment | 2/1/12 | 195561.60 | | | | | | | | | | |
| | 3760.80 | | 3760.80 | Regular Payment | 3/1/12 | 199322.40 | | | | | | | | | | |
| 3/14/12 | | -1659.00 | | Insurance Premium I | 10/1/07 | | | | -1659.00 | | | | | -54793.57 | | |
| | 3760.80 | | 3760.80 | Regular Payment | 4/1/12 | 203083.20 | | | | | | | | | | |

**Mortgage Proof of Claim Attachment**  (12/15)

Case Number:  1623516

Debtor 1:  Lorraine R Santoli

## Part 5: Loan Payment History from First Date of Default

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, Int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal blance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4/13/12 | | -4405.80 | | Tax Bill 1 Disburser | 10/1/07 | | | | -4405.80 | | | | | -59199.37 | | |
| | 3760.80 | | 3760.80 | Regular Payment | 5/1/12 | 206844.00 | | | | | | | | | | |
| | 3760.80 | | 3760.80 | Regular Payment | 6/1/12 | 210604.80 | | | | | | | | | | |
| | 3760.80 | | 3760.80 | Regular Payment | 7/1/12 | 214365.60 | | | | | | | | | | |
| | 3760.80 | | 3760.80 | Regular Payment | 8/1/12 | 218126.40 | | | | | | | | | | |
| | 3760.80 | | 3760.80 | Regular Payment | 9/1/12 | 221887.20 | | | | | | | | | | |
| 9/20/12 | | -4736.78 | | Tax Bill 1 Disburser | 10/1/07 | | | | -4736.78 | | | | | -63936.15 | | |
| 9/28/12 | | | -81.28 | Title Cost | 10/1/07 | | | | | -81.28 | | | | | 3651.87 | |
| | 3760.80 | | 3760.80 | Regular Payment | 10/1/12 | 225648.00 | | | | | | | | | | |
| | 3760.80 | | 3760.80 | Regular Payment | 11/1/12 | 229408.80 | | | | | | | | | | |
| | 3760.80 | | 3760.80 | Regular Payment | 12/1/12 | 233169.60 | | | | | | | | | | |
| | 3760.80 | | 3760.80 | Regular Payment | 1/1/13 | 236930.40 | | | | | | | | | | |
| 1/10/13 | | -4736.78 | | Tax Bill 1 Disburser | 10/1/07 | | | | -4736.78 | | | | | -68672.93 | | |
| | 3760.80 | | 3760.80 | Regular Payment | 2/1/13 | 240691.20 | | | | | | | | | | |
| | 3760.80 | | 3760.80 | Regular Payment | 3/1/13 | 244452.00 | | | | | | | | | | |
| 3/12/13 | | -1662.00 | | Insurance Premium I | 10/1/07 | | | | -1662.00 | | | | | -70334.93 | | |
| | 3760.80 | | 3760.80 | Regular Payment | 4/1/13 | 248212.80 | | | | | | | | | | |
| 4/10/13 | | -4363.65 | | Tax Bill 1 Disburser | 10/1/07 | | | | -4363.65 | | | | | -74698.58 | | |
| | 3760.80 | | 3760.80 | Regular Payment | 5/1/13 | 251973.60 | | | | | | | | | | |
| | 3760.80 | | 3760.80 | Regular Payment | 6/1/13 | 255734.40 | | | | | | | | | | |
| | 3760.80 | | 3760.80 | Regular Payment | 7/1/13 | 259495.20 | | | | | | | | | | |
| | 3760.80 | | 3760.80 | Regular Payment | 8/1/13 | 263256.00 | | | | | | | | | | |
| | 3760.80 | | 3760.80 | Regular Payment | 9/1/13 | 267016.80 | | | | | | | | | | |
| | 3760.80 | | 3760.80 | Regular Payment | 10/1/13 | 270777.60 | | | | | | | | | | |
| 10/1/13 | | -4901.74 | | Tax Bill 1 Disburser | 9/30/13 | | | | -4901.74 | | | | | -79600.32 | | |
| | 3760.80 | | 3760.80 | Regular Payment | 11/1/13 | 274538.40 | | | | | | | | | | |
| 11/26/13 | | | -450.00 | FC Costs | 11/1/07 | | | | | -450.00 | | | | | 4101.87 | |
| | 3760.80 | | 3760.80 | Regular Payment | 12/1/13 | 278299.20 | | | | | | | | | | |
| 12/10/13 | | -4901.74 | | Tax Bill 2 Disburser | 12/31/13 | | | | -4901.74 | | | | | -84502.06 | | |
| 12/17/13 | | | -75.22 | Late Charge Assess | 12/1/13 | | | | | -75.22 | | | | | 4177.09 | |
| | 3760.80 | | 3760.80 | Regular Payment | 1/1/14 | 282060.00 | | | | | | | | | | |
| 1/17/14 | | | -75.22 | Late Charge Assess | 1/1/14 | | | | | -75.22 | | | | | 4252.31 | |

**Mortgage Proof of Claim Attachment** (12/15)

Case Number: 1623516

Debtor 1: Lorraine R Santoli

## Part 5: Loan Payment History from First Date of Default

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, Int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal blance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 3760.80 | | 3760.80 | Regular Payment | 2/1/14 | 285820.80 | | | | | | | | | | |
| 2/17/14 | | | -75.22 | Late Charge Assess | 2/1/14 | | | | | -75.22 | | | | | 4327.53 | |
| 2/26/14 | | | -525.00 | Property Inspection | 11/1/07 | | | | | -525.00 | | | | | 4852.53 | |
| | 3760.80 | | 3760.80 | Regular Payment | 3/1/14 | 289581.60 | | | | | | | | | | |
| 3/15/14 | | -1752.00 | | Insurance Premium I | 4/17/14 | | | | -1752.00 | | | | | -86254.06 | | |
| 3/17/14 | | | -75.22 | Late Charge Assess | 3/1/14 | | | | | -75.22 | | | | | 4927.75 | |
| | 3760.80 | | 3760.80 | Regular Payment | 4/1/14 | 293342.40 | | | | | | | | | | |
| 4/10/14 | | -4369.38 | | Tax Bill 1 Disburser | 4/30/14 | | | | -4369.38 | | | | | -90623.44 | | |
| 4/17/14 | | | -75.22 | Late Charge Assess | 4/1/14 | | | | | -75.22 | | | | | 5002.97 | |
| | 3760.80 | | 3760.80 | Regular Payment | 5/1/14 | 297103.20 | | | | | | | | | | |
| 5/15/14 | | | -175.00 | FC Costs | 11/1/07 | | | | | -175.00 | | | | | 5177.97 | |
| 5/17/14 | | | -75.22 | Late Charge Assess | 5/1/14 | | | | | -75.22 | | | | | 5253.19 | |
| | 3760.80 | | 3760.80 | Regular Payment | 6/1/14 | 300864.00 | | | | | | | | | | |
| 6/17/14 | | | -75.22 | Late Charge Assess | 6/1/14 | | | | | -75.22 | | | | | 5328.41 | |
| | 3760.80 | | 3760.80 | Regular Payment | 7/1/14 | 304624.80 | | | | | | | | | | |
| 7/11/14 | | | -15.00 | Occ Prop Insp | 11/1/07 | | | | | -15.00 | | | | | 5343.41 | |
| 7/17/14 | | | -75.22 | Late Charge Assess | 7/1/14 | | | | | -75.22 | | | | | 5418.63 | |
| | 3760.80 | | 3760.80 | Regular Payment | 8/1/14 | 308385.60 | | | | | | | | | | |
| 8/13/14 | | | -15.00 | Occ Prop Insp | 11/1/07 | | | | | -15.00 | | | | | 5433.63 | |
| 8/17/14 | | | -75.22 | Late Charge Assess | 8/1/14 | | | | | -75.22 | | | | | 5508.85 | |
| | 3760.80 | | 3760.80 | Regular Payment | 9/1/14 | 312146.40 | | | | | | | | | | |
| 9/10/14 | | -4958.91 | | Tax Bill 1 Disburser | 9/30/14 | | | | -4958.91 | | | | | -95582.35 | | |
| 9/17/14 | | | -75.22 | Late Charge Assess | 9/1/14 | | | | | -75.22 | | | | | 5584.07 | |
| 9/17/14 | | | -15.00 | Occ Prop Insp | 11/1/07 | | | | | -15.00 | | | | | 5599.07 | |
| | 3760.80 | | 3760.80 | Regular Payment | 10/1/14 | 315907.20 | | | | | | | | | | |
| 10/17/14 | | | -75.22 | Late Charge Assess | 10/1/14 | | | | | -75.22 | | | | | 5674.29 | |
| 10/17/14 | | | -15.00 | Occ Prop Insp | 11/1/07 | | | | | -15.00 | | | | | 5689.29 | |
| | 3760.80 | | 3760.80 | Regular Payment | 11/1/14 | 319668.00 | | | | | | | | | | |
| 11/17/14 | | | -75.22 | Late Charge Assess | 11/1/14 | | | | | -75.22 | | | | | 5764.51 | |
| 11/17/14 | | | -15.00 | Occ Prop Insp | 11/1/07 | | | | | -15.00 | | | | | 5779.51 | |
| | 3760.80 | | 3760.80 | Regular Payment | 12/1/14 | 323428.80 | | | | | | | | | | |
| 12/15/14 | | | -15.00 | Occ Prop Insp | 11/1/07 | | | | | -15.00 | | | | | 5794.51 | |

**Mortgage Proof of Claim Attachment**                                                                                                   **(12/15)**

Case Number:            1623516

Debtor 1:               Lorraine R Santoli

## Part 5: Loan Payment History from First Date of Default

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, Int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal blance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 12/17/14 | | -4958.91 | | Tax Bill 2 Disburser | 12/31/14 | | | | -4958.91 | | | | | -100541.26 | | |
| 12/17/14 | | | -75.22 | Late Charge Assess | 12/1/14 | | | | | -75.22 | | | | | 5869.73 | |
| | 3760.80 | | 3760.80 | Regular Payment | 1/1/15 | 327189.60 | | | | | | | | | | |
| 1/15/15 | | | -15.00 | Occ Prop Insp | 11/1/07 | | | | | -15.00 | | | | | 5884.73 | |
| 1/17/15 | | | -75.22 | Late Charge Assess | 1/1/15 | | | | | -75.22 | | | | | 5959.95 | |
| | 3760.80 | | 3760.80 | Regular Payment | 2/1/15 | 330950.40 | | | | | | | | | | |
| 2/17/15 | | | -75.22 | Late Charge Assess | 2/1/15 | | | | | -75.22 | | | | | 6035.17 | |
| | 3760.80 | | 3760.80 | Regular Payment | 3/1/15 | 334711.20 | | | | | | | | | | |
| 3/17/15 | | | -75.22 | Late Charge Assess | 3/1/15 | | | | | -75.22 | | | | | 6110.39 | |
| 3/25/15 | | | -15.00 | Occ Prop Insp | 11/1/07 | | | | | -15.00 | | | | | 6125.39 | |
| | 3760.80 | | 3760.80 | Regular Payment | 4/1/15 | 338472.00 | | | | | | | | | | |
| 4/14/15 | | -4412.32 | | Tax Bill 1 Disburser | 4/30/15 | | | | -4412.32 | | | | | -104953.58 | | |
| 4/17/15 | | | -75.22 | Late Charge Assess | 4/1/15 | | | | | -75.22 | | | | | 6200.61 | |
| 4/30/15 | | | 75.22 | Late Charge Waive | 11/1/07 | | | | | 75.22 | | | | | 6125.39 | |
| | 3760.80 | | 3760.80 | Regular Payment | 5/1/15 | 342232.80 | | | | | | | | | | |
| 5/12/15 | | -1878.00 | | Insurance Premium | 4/17/15 | | | | -1878.00 | | | | | -106831.58 | | |
| 5/13/15 | | | -15.00 | Occ Prop Insp | 11/1/07 | | | | | -15.00 | | | | | 6140.39 | |
| | 3760.80 | | 3760.80 | Regular Payment | 6/1/15 | 345993.60 | | | | | | | | | | |
| 6/26/15 | | | -15.00 | Occ Prop Insp | 11/1/07 | | | | | -15.00 | | | | | 6155.39 | |
| | 3760.80 | | 3760.80 | Regular Payment | 7/1/15 | 349754.40 | | | | | | | | | | |
| 7/20/15 | | | -15.00 | Occ Prop Insp | 11/1/07 | | | | | -15.00 | | | | | 6170.39 | |
| | 3760.80 | | 3760.80 | Regular Payment | 8/1/15 | 353515.20 | | | | | | | | | | |
| | 3760.80 | | 3760.80 | Regular Payment | 9/1/15 | 357276.00 | | | | | | | | | | |
| 9/8/15 | | -5079.74 | | Tax Bill 1 Disburser | 9/30/15 | | | | -5079.74 | | | | | -111911.32 | | |
| 9/30/15 | | | -15.00 | Occ Prop Insp | 11/1/07 | | | | | -15.00 | | | | | 6185.39 | |
| | 3760.80 | | 3760.80 | Regular Payment | 10/1/15 | 361036.80 | | | | | | | | | | |
| 10/21/15 | | | -15.00 | Occ Prop Insp | 11/1/07 | | | | | -15.00 | | | | | 6200.39 | |
| | 3760.80 | | 3760.80 | Regular Payment | 11/1/15 | 364797.60 | | | | | | | | | | |
| 11/9/15 | | | -15.00 | Occ Prop Insp | 11/1/07 | | | | | -15.00 | | | | | 6215.39 | |
| | 3760.80 | | 3760.80 | Regular Payment | 12/1/15 | 368558.40 | | | | | | | | | | |
| 12/10/15 | | | -15.00 | Occ Prop Insp | 11/1/07 | | | | | -15.00 | | | | | 6230.39 | |
| 12/22/15 | | -5079.73 | | Tax Bill 2 Disburser | 12/31/15 | | | | -5079.73 | | | | | -116991.05 | | |

**Mortgage Proof of Claim Attachment**                                                              **(12/15)**

Case Number:        1623516

Debtor 1:              Lorraine R Santoli

## Part 5: Loan Payment History from First Date of Default

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, Int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal blance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 3760.80 | | 3760.80 | Regular Payment | 1/1/16 | 372319.20 | | | | | | | | | | |
| 1/7/16 | | | -15.00 | Occ Prop Insp | 11/1/07 | | | | | -15.00 | | | | | 6245.39 | |
| | 3760.80 | | 3760.80 | Regular Payment | 2/1/16 | 376080.00 | | | | | | | | | | |
| 2/1/16 | | | -15.00 | Occ Prop Insp | 11/1/07 | | | | | -15.00 | | | | | 6260.39 | |
| | 3760.80 | | 3760.80 | Regular Payment | 3/1/16 | 379840.80 | | | | | | | | | | |
| 3/14/16 | | | -15.00 | Occ Prop Insp | 11/1/07 | | | | | -15.00 | | | | | 6275.39 | |
| 3/18/16 | | -1959.00 | | Insurance Premium I | 4/17/16 | | | | -1959.00 | | | | | -118950.05 | | |
| | 3760.80 | | 3760.80 | Regular Payment | 4/1/16 | 383601.60 | | | | | | | | | | |
| 4/13/16 | | | -15.00 | Occ Prop Insp | 11/1/07 | | | | | -15.00 | | | | | 6290.39 | |
| 4/19/16 | | -4353.49 | | Tax Bill 1 Disburser | 4/30/16 | | | | -4353.49 | | | | | -123303.54 | | |
| | 3760.80 | | 3760.80 | Regular Payment | 5/1/16 | 387362.40 | | | | | | | | | | |
| 5/31/16 | | | -15.00 | Occ Prop Insp | 11/1/07 | | | | | -15.00 | | | | | 6305.39 | |
| | 3760.80 | | 3760.80 | Regular Payment | 6/1/16 | 391123.20 | | | | | | | | | | |
| | 3760.80 | | 3760.80 | Regular Payment | 7/1/16 | 394884.00 | | | | | | | | | | |
| 7/11/16 | | | -15.00 | Occ Prop Insp | 11/1/07 | | | | | -15.00 | | | | | 6320.39 | |
| | 3760.80 | | 3760.80 | Regular Payment | 8/1/16 | 398644.80 | | | | | | | | | | |
| 8/1/16 | | | -15.00 | Occ Prop Insp | 11/1/07 | | | | | -15.00 | | | | | 6335.39 | |
| | 3760.80 | | 3760.80 | Regular Payment | 9/1/16 | 402405.60 | | | | | | | | | | |
| 9/6/16 | | -5091.99 | | Tax Bill 1 Disburser | 9/30/16 | | | | -5091.99 | | | | | -128395.53 | | |
| 9/29/16 | | | -15.00 | Occ Prop Insp | 11/1/07 | | | | | -15.00 | | | | | 6350.39 | |
| | 3760.80 | | 3760.80 | Regular Payment | 10/1/16 | 406166.40 | | | | | | | | | | |
| | 3760.80 | | 3760.80 | Regular Payment | 11/1/16 | 409927.20 | | | | | | | 589424.22 | | -128395.53 | 6350.39 | |

# Exhibit 'A'

Case No.:     1623516

Debtors:      Lorraine R Santoli                          SS No.      XXX-XX-1778

Address:      28 Hynard Place

              Baldwin Place          NY              10505

Loan No:      6086

On filing petition 11/04/2016 debtor(s) owed claimant $589,424.22 plus interest on arrearages at   6.500000%   per annum (rate at petition) from 11/01/2007.

ARREARAGES owed as of 11/04/2016, the date of filing of the petition.

| From Date | Through Date | Type of Charge | # | Unit Charge | Total |
|---|---|---|---|---|---|
| 11/01/2007 | 11/01/2016 | Payment @ 6.5% | 109 | $3,760.80 | $409,927.20 |
| | | Late Charge | | | $1,249.11 |
| | | FC Costs | | | $175.00 |
| | | Foreclosure Trustee | | | $3,125.00 |
| | | FC Costs | | | $450.00 |
| | | Title Cost | | | $481.28 |
| | | Property Inspection | | | $525.00 |
| | | Occ Prop Insp | | | $345.00 |
| | | Escrow Deficiency | | | $128,395.53 |
| | | Unapplied | | | $0.00 |
| | | Subtotal | | | **$544,673.12** |
| | | **Total:** | | | **$544,673.12** |

The above figures represent the delinquency at the time of filing and do not reflect payments received after the date of filing of the bankruptcy.

Late charges accrue to the account when payments are received 16 days past the payment due date.

Loan agreements that provided for interest calculated at a daily simple rate will be reset to reflect a standard amortization rate during the pendency of your current bankruptcy.

# Exhibit 'A1'

Case No.:    1623516

Debtors:    Lorraine R Santoli          SS No.    XXX-XX-1778

Address:    28 Hynard Place

        Baldwin Place    NY      10505

Loan No:    6086

On filing petition  11/04/2016  debtor(s) owed claimant total debt of $1,050,269.63.

The Total Debt owed at petition:

| | |
|---|---:|
| Principal Balance | $589,424.22 |
| Interest | $326,099.49 |
| Late Charge | $1,249.11 |
| FC Costs | $175.00 |
| Foreclosure Trustee | $3,125.00 |
| FC Costs | $450.00 |
| Title Cost | $481.28 |
| Property Inspection | $525.00 |
| Occ Prop Insp | $345.00 |
| Escrow Deficiency | $128,395.53 |
| Unapplied | $0.00 |
| **Total Debt:** | **$1,050,269.63** |

The above figures represent the owed at the time of filing and do not reflect payments received after the date of filing of the bankruptcy.

Shellpoint Mortgage Servicing services the underlying mortgage loan and note for the property referenced in this proof of claim for BANK OF NY as trustee for CWMBS 2006-20. In the event the automatic stay in this case is modified, this case dismisses, and/or the debtor obtains a discharge and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWMBS, INC., CHL MORTGAGE PASS-THROUGH TRUST 2006-20 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-20 .

Noteholder, directly or through an agent, has possession of the promissory note. The promissory note is either made payable to Noteholder or has been duly endorsed. Noteholder is the original mortgagee or beneficiary or the assignee of the security instrument for the referenced loan.

Shellpoint Mortgage Servicing
55 Beattie Place
Suite 110
Greenville, SC  29601
For Inquiries:  (800) 365-7107

Analysis Date:    November 04, 2016

Lorraine R Santoli
28 Hynard Pl
Baldwin Place NY  10505

Loan:                6086
Property Address:
28 Hynard Place
Baldwin Place, NY  10505

### Annual Escrow Account Disclosure Statement
### Account History

This is a statement of actual activity in your escrow account from Oct 2016 to Nov 2016.  Last year's anticipated activity (payments to and from your escrow account) is next to the actual activity.

| Payment Information | Current: | Effective Dec 01, 2016: |
|---|---|---|
| Principal & Interest Pmt: | 3,760.80 | 3,760.80 |
| Escrow Payment: | 1,360.01 | 1,373.68 |
| Other Funds Payment: | 0.00 | 0.00 |
| Assistance Payment (-): | 0.00 | 0.00 |
| Reserve Acct Payment: | 0.00 | 0.00 |
| Total Payment: | $5,120.81 | $5,134.48 |

| Escrow Balance Calculation | |
|---|---|
| Due Date: | Nov 01, 2007 |
| Escrow Balance: | 0.00 |
| Anticipated Pmts to Escrow: | 148,241.09 |
| Anticipated Pmts from Escrow (-): | 0.00 |
| Anticipated Escrow Balance: | $148,241.09 |

| Date | Payments to Escrow Anticipated | Actual | Payments From Escrow Anticipated | Actual | Description | Escrow Balance Required | Actual |
|---|---|---|---|---|---|---|---|
| | | | | | Starting Balance | 4,528.93 | (128,395.53) |
| Oct 2016 | 1,372.66 | | | * | | 5,901.59 | (128,395.53) |
| Nov 2016 | 1,372.66 | | | * | | 7,274.25 | (128,395.53) |
| | | | | | Anticipated Transactions | 7,274.25 | (128,395.53) |
| Nov 2016 | | 148,241.09 | | | | | 19,845.56 |
| | $2,745.32 | $148,241.09 | $0.00 | $0.00 | | | |

An asterisk (*) indicates a difference from a previous estimate either in the date or the amount.  If you want a further explanation, please call our toll-free number.

Last year, we  anticipated that payments from your account would be made during this period equaling $0.00.  Under Federal law, your lowest monthly balance should not have exceeded $2,745.33 or 1/6 of the anticipated payment from the account, unless your mortgage contract or State law specifies a lower amount.  Under your mortgage contract and State law, your lowest monthly balance should not exceed $2,745.33.

Shellpoint Mortgage Servicing
For Inquiries:  (800) 365-7107

Analysis Date:   November 04, 2016

Lorraine R Santoli

Loan:        086

**Annual Escrow Account Disclosure Statement**
**Projections for Coming Year**

This is an estimate of activity in your escrow account during the coming year based on payments anticipated to be made to and from your account.

| Date | Anticipated Payments | | Description | Escrow Balance | |
|------|---------|-----------|-------------|-------------|----------|
| | To Escrow | From Escrow | | Anticipated | Required |
| | | | Starting Balance | 148,241.09 | 7,271.19 |
| Dec 2016 | 1,373.68 | 5,079.73 | School Tax | 144,535.04 | 3,565.14 |
| Jan 2017 | 1,373.68 | | | 145,908.72 | 4,938.82 |
| Feb 2017 | 1,373.68 | | | 147,282.40 | 6,312.50 |
| Mar 2017 | 1,373.68 | | | 148,656.08 | 7,686.18 |
| Apr 2017 | 1,373.68 | 1,959.00 | Hazard | 148,070.76 | 7,100.86 |
| Apr 2017 | | 4,353.49 | Town Tax | 143,717.27 | 2,747.37 |
| May 2017 | 1,373.68 | | | 145,090.95 | 4,121.05 |
| Jun 2017 | 1,373.68 | | | 146,464.63 | 5,494.73 |
| Jul 2017 | 1,373.68 | | | 147,838.31 | 6,868.41 |
| Aug 2017 | 1,373.68 | | | 149,211.99 | 8,242.09 |
| Sep 2017 | 1,373.68 | 5,091.99 | School Tax | 145,493.68 | 4,523.78 |
| Oct 2017 | 1,373.68 | | | 146,867.36 | 5,897.46 |
| Nov 2017 | 1,373.68 | | | 148,241.04 | 7,271.14 |
| | $16,484.16 | $16,484.21 | | | |

(Please keep this statement for comparison with the actual activity in your account at the end of the escrow accounting computation year.)

Your escrow balance contains a cushion of $2,747.37.  A cushion is an additional amount of funds held in your escrow balance to prevent the balance from becoming overdrawn when an increase in the disbursement amount occurs.  Under Federal law, your lowest monthly balance should not exceed $2,747.37 or 1/6 of the anticipated payment from the account, unless your mortgage contract or State law specifies a lower amount.  Under your mortgage contract and State law, your lowest monthly balance should not exceed $2,747.37

Your ending balance from the last month of the account history (escrow balance anticipated) is $148,241.09.  Your starting balance (escrow balance required) according to this analysis should be $7,271.19.  This means you have a surplus of $140,969.90. This surplus must be returned to you unless it is less than $50.00, in which case we have the additional option of keeping it and lowering your monthly payments accordingly.  We are sending you a check for the surplus.

We anticipate the total of your coming year bills to be $16,484.2l.  We divide that amount by the number of payments expected during the coming year to obtain your escrow payment.

| New Escrow Payment Calculation | |
|------|------|
| Unadjusted Escrow Payment | 1,373.68 |
| Surplus Amount: | 0.00 |
| Shortage Amount: | 0.00 |
| Rounding Adjustment Amount: | 0.00 |
| Escrow Payment: | $1,373.68 |

Recording Requested By:

And When Recorded Mail To:
**T.D. Service Company**
**LR Department (Cust# 610)**
**4000 W Metropolitan Dr Ste 400**
**Orange, CA  92868**

———————————————— Space above for Recorder's use ————————————————

Custom


Loan#:

## ASSIGNMENT OF MORTGAGE

FOR VALUE RECEIVED, THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATEHOLDERS CHL MORTGAGE PASS-THROUGH TRUST 2006-20, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-20 BY NEW PENN FINANCIAL LLC DBA SHELLPOINT MORTGAGE SERVICING AS ATTORNEY IN FACT, C/O NEW PENN FINANCIAL LLC D/B/A SHELLPOINT MTG SERVICING, 55 BEATTIE PL #110, GREENVILLE, SC  29601-0000, hereby assign and transfer to THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWMBS, INC., CHL MORTGAGE PASS-THROUGH TRUST 2006-20 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-20 C/O NEW PENN FINANCIAL, LLC, D/B/A SHELLPOINT MORTGAGE SERVICING,  55 BEATTIE PL STE 110, MS #001, GREENVILLE, SC  29601-0000, all its right, title and interest in and to said Mortgage in the amount of $595,000.00, recorded in the State of NEW YORK, County of WESTCHESTER Official Records, dated NOVEMBER 21, 2006 and recorded on FEBRUARY 27, 2007, as Instrument No. 470400872, in Book No. —, at Page No. —.
Executed by: LORRAINE R SANTOLI (Original Mortgagor).
Original Mortgagee: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR COUNTRYWIDE HOME LOANS, INC., ITS SUCCESSORS AND ASSIGNS.  Property Address: 28 Hynard Place, Baldwin Place, NY 10505-0000.  SBL # SECTION: 5.17  BLOCK: 2  LOT: 19.
The assignee is not acting as a nominee of the mortgagor and that the mortgage continues to secure a bonafide obligation.

Lo
Pa

Date: 8|18|15

**THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATEHOLDERS CHL MORTGAGE PASS-THROUGH TRUST 2006-20, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-20 BY NEW PENN FINANCIAL LLC DBA SHELLPOINT MORTGAGE SERVICING AS ATTORNEY IN FACT**

~~Power of Attorney was recorded simultaneously herewith.~~

Power of Attorney Recorded on 4-3-2015
As Inst# ✳ on Book _____ Page _____

By: _____            ✳550853295
    Cynthia M. Brock, Manager

This Assignment is not subject to the requirements of new section 275 of the real property law because it is an assignment with the secondary mortgage market.

State of    **SOUTH CAROLINA**            }
County of   **GREENVILLE**               } ss.

On 8|18|15, before me, **Michelle L. Church**, a Notary Public, personally appeared **Cynthia M. Brock** who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument, and that such individual made such appearance before the undersigned in the City of Greenville , County of **GREENVILLE** State of **SOUTH CAROLINA** .

Witness my hand and official seal.

_____

(Notary Name): Michelle L. Church
My commission expires: 01/31/2016

*[Notary seal: MICHELLE L. CHURCH, MY COMMISSION EXPIRES 1/31/2016, NOTARY PUBLIC, SOUTH CAROLINA]*

**THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATEHOLDERS CHL MORTGAGE PASS-THROUGH TRUST 2006-20, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-20 BY NEW PENN FINANCIAL LLC DBA SHELLPOINT MORTGAGE SERVICING AS ATTORNEY IN FACT** and officer located at C/O NEW PENN FINANCIAL LLC D/B/A SHELLPOINT MTG SERVICING, 55 BEATTIE PL #110, GREENVILLE, SC 29601-0000

**PREPARED BY: T.D. Service Company, LR Department**
**4000 W Metropolitan Dr Ste 400, Orange, CA 92868, STEVEN DANG**



**Exhibit "A"**
**Mortgage History**

Mortgage (1) dated 04/21/2003 from Lorraine R. Santoli to Mortgage Electronic Registration Systems, Inc. as Nominee for America's Wholesale Lender  in the amount of $322,700.00, recorded 04/29/2004 as Control No. 440930062.

Mortgage (2) dated 11/22/2005 from Lorraine R. Santoli to Mortgage Electronic Registration Systems, Inc. as Nominee for Countrywide Bank, N.A. in the amount of $312,214.36, recorded 03/08/2006 as Control No. 460590139.

Consolidation, Extension and Modification Agreement (1) dated 11/22/2005 from Lorraine R. Santoli and Mortgage Electronic Registration Systems, Inc. as Nominee for Countrywide Bank, N.A. in the amount of $625,000.00 to form a single lien between Mortgages 1 & 2, recorded 03/08/2006 as Control No. 460590144.

Consolidation, Extension and Modification Agreement (2) dated 11/21/2006 from Lorraine R. Santoli and Mortgage Electronic Registration Systems, Inc. as Nominee for Countrywide Home Loans, Inc. in the amount of $595,000.00, recorded 02/27/2007 as Control No. 470400872.

Assignment (1) dated 04/08/2008 from Mortgage Electronic Registration Systems, Inc. as Nominee for Countrywide Home Loans, Inc. to The Bank of New York as Trustee for the Certificateholders CWMBS, Inc. CHL Mortgage Pass-Through Trust 2006-20, Mortgage Pass-Through Certificates, Series 2006-20 recorded 06/11/2008 as Control No. 481400350.

Corrective Assignment (2) dated 02/09/2009 from Mortgage Electronic Registration Systems, Inc. as Nominee for Countrywide Home Loans, Inc. to The Bank of New York as Trustee for the Certificateholders CHL Mortgage Pass-Through Trust 2006-20, Mortgage Pass-Through Certificates, Series 2006-20 to correct the Assignee name, recorded 03/16/2009 as Control No. 490680483.

Interim Assignment (3) dated 06/30/2009 from Mortgage Electronic Registration Systems, Inc. as Nominee for America's Wholesale Lender to  Mortgage Electronic Registration Systems, Inc. as Nominee for Countrywide Bank, N.A. to correct the chain of title, recorded 07/27/2010 as Control No. 501973504.

Interim Assignment (4) dated 06/30/2009 from Mortgage Electronic Registration Systems, Inc. as Nominee for Countrywide Bank, N.A. to  Mortgage Electronic Registration Systems, Inc. as Nominee for Countrywide Home Loans, Inc. to correct the chain of title, recorded 07/27/2010 as Control No. 501973508.

Corrective Assignment (2) dated 6/30/2009 from Mortgage Electronic Registration Systems, Inc. as Nominee for Countrywide Home Loans, Inc. to The Bank of New York as Trustee for the Certificateholders CHL Mortgage Pass-Through Trust 2006-20, Mortgage Pass-Through Certificates, Series 2006-20 to correct the effective date of the 1st Assignment, recorded 07/27/2010 as Control No. 501973509.

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

Prepared By:
SUSAN T. AADAL



CERTIFIED TRUE COPY
OF ORIGINAL

———————————[Space Above This Line For Recording Data]———————————

# CONSOLIDATION, EXTENSION, AND MODIFICATION AGREEMENT
## MIN

**WORDS USED OFTEN IN THIS DOCUMENT**
   (A) **"Agreement."** This document, which is dated  NOVEMBER 21, 2006                                    and
exhibits and riders attached to this document will be called the "Agreement."
   (B) **"Borrower."**
LORRAINE R SANTOLI



will be called "Borrower" and sometimes "I" or "me." Borrower's address is
28 HYNARD PLACE, BALDWIN PLACE, NY 10505

   (C) **"Lender."**
COUNTRYWIDE HOME LOANS, INC.

will be called "Lender" and sometimes "Note Holder." Lender is a
CORPORATION                                                                              which
exists under the laws of NEW YORK
  Lender's address is
4500 Park Granada, Calabasas, CA 91302-1613

   (D) **"Mortgages."** The mortgages, deeds of trust, or other security instruments and any additional
security instruments and related agreements (such as assignments, extensions, modifications, or consolidations
of mortgages) identified in Exhibit A to this Agreement will be called the "Mortgages."
   (E) **"MERS"** *is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is
acting solely as a nominee for Lender and Lender's successors and assigns. MERS is organized and existing
under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI
48501-2026, tel. (888) 679-MERS.* **FOR PURPOSES OF RECORDING THIS AGREEMENT, MERS IS
THE MORTGAGEE OF RECORD.**
THE PREMISES ARE IMPROVED OR ARE TO BE IMPROVED BY A ONE OR TWO
FAMILY RESIDENCE OR DWELLING ONLY.
   (F) **"Note Holder."** Lender or anyone who succeeds to Lender's rights under this Agreement and who is
entitled to receive the payments I agree to make under this Agreement may be called the "Note Holder."
   (G) **"Notes."** The Notes which are identified in Exhibit A to this Agreement, and which are secured by
the Mortgages, will be called the "Notes."
   (H) **"Property."** The property which is described in the Mortgage(s) and in Exhibit B (Property
Description) to this Agreement, will be called the "Property." The Property is located at:
                                28 HYNARD PLACE
                                        [Street]

              BALDWIN PLACE                    ,                    PUTNAM                ,
                  [City]                                            [County]
              NY, 10505
              [State and Zip Code]
   I promise and I agree with Lender as follows:
Section: ___5.17_____   Block: _____2_____   Lot: ____19____   Unit: _____
**NEW YORK CONSOLIDATION, EXTENSION, AND MODIFICATION AGREEMENT WITH MERS**        Form 3172 1/01
**- Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**                            (rev. 5/01)
                                     Page 1 of 5
VMP -850A(NY) (0506) CHL (07/05)(d)     VMP Mortgage Solutions, Inc. (800)521-7291          Initials:_____

DOC ID #:

**I. BORROWER'S AGREEMENT ABOUT OBLIGATION UNDER THE NOTES AND MORTGAGES**

I agree to take over all of the obligations under the Notes and Mortgages as consolidated and modified by this Agreement as Borrower. This means that I will keep all of the promises and agreements made in the Notes and Mortgages even if some other person made those promises and agreements before me. The total unpaid principal balance of the Notes is U.S. $ 595,000.00                        of this amount, U.S. $        0                     was advanced to me (or for my account) immediately prior to this consolidation.

**II.    AGREEMENT TO COMBINE NOTES AND MORTGAGES**

(A)  By signing this Agreement, Lender and I are combining into one set of rights and obligations all of the promises and agreements stated in the Notes and Mortgages including any earlier agreements which combined, modified, or extended rights and obligations under any of the Notes and Mortgages. This means that all of Lender's rights in the Property are combined so that under the law Lender has one mortgage and I have one loan obligation which I will pay as provided in this Agreement. This combining of notes and mortgages is known as a "Consolidation."

(B)  In the event that Exhibit A indicates that all of the Notes and Mortgages have already been combined by a previous agreement, then Lender and I agree to change the terms of Section II, paragraph (A) of this Agreement to the following:

Lender and I agree that all of the promises and agreements stated in the Notes and Mortgages -- including any earlier agreements which combined, modified, or extended rights and obligations under any of the Notes and Mortgages -- have been combined into one set of rights and obligations by an earlier agreement which is referred to in Exhibit A. This means that all of the Lender's rights in the Property have already been combined so that under the law Lender already has one mortgage and I have one loan obligation which I will pay as provided in this Agreement. The combining of notes and mortgages is known as a "Consolidation."

**III.  AGREEMENT TO CHANGE TERMS OF THE CONSOLIDATED NOTE**

Lender and I agree that the terms of the Notes are changed and restated to be the terms of the "Consolidated Note" which is attached to this Agreement as Exhibit C. The Consolidated Note contains the terms of payment for the amounts that I owe to Note Holder. I agree to pay the amounts due under the Notes in accordance with the terms of the Consolidated Note. The Consolidated Note will supersede all terms, covenants, and provisions of the Notes.

**IV. AGREEMENT TO CHANGE TERMS OF THE CONSOLIDATED MORTGAGE**

Lender and I agree that the terms of the Mortgages are changed and restated to be the terms of the "Consolidated Mortgage" which is attached to this Agreement as Exhibit D. The Consolidated Mortgage secures the Consolidated Note and will constitute in law a single lien upon the Property. I agree to be bound by the terms set forth in the Consolidated Mortgage which will supersede all terms, covenants, and provisions of the Mortgages.

**V.   NO SET-OFF, DEFENSES**

I agree that I have no right of set-off or counterclaim, or any defense to the obligations of the Consolidated Note or the Consolidated Mortgage.

**VI. BORROWER'S INTEREST IN THE PROPERTY**

I promise that I am the lawful owner occupying the Property and that I have the right to consolidate, modify, and extend the Notes and Mortgages.

**VII. WRITTEN TERMINATION OR CHANGE OF THIS AGREEMENT**

This Agreement may not be terminated, changed, or amended except by a written agreement signed by the party whose rights or obligations are being changed by that agreement.

**VIII.OBLIGATIONS OF BORROWERS AND OF PERSONS TAKING OVER BORROWER'S OR LENDER'S RIGHTS OR OBLIGATIONS**

If more than one person signs this Agreement as Borrower, each of us is fully and personally obligated to keep all of Borrower's promises and obligations contained in this Agreement. The Note Holder may enforce its rights under this Agreement against each of us individually or against all of us together.

The terms of the Consolidated Note and the Consolidated Mortgage may not allow any person to take over my rights or obligations under this Agreement. Lender and I agree that if any person is permitted to take over my rights and obligations under this Agreement, that person will have all of my rights and will be obligated to keep all of my promises and agreements made in this Agreement. Similarly, any person who takes over Lender's rights or obligations under this Agreement will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Agreement.

**IX.  LIEN LAW**

I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (A) hold all amounts which I receive and which I have a right to receive from Lender under the Consolidated Note as a "trust fund;" and (B) use those amounts to pay for "cost of improvement" (as defined in the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a "trust fund" means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section IX.

Initials:

Form 3172  1/01 (rev. 5/01)

DOC ID #:

**X.   TYPE OF PROPERTY**
Check box(es) as applicable.

☐ This Agreement covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six (6) residential dwelling units with each dwelling unit having its own separate cooking facilities.

☒ This Agreement covers real property improved, or to be improved, by a one (1) or two (2) family dwelling.

☐ This Agreement does not cover real property improved as described above.

By signing this Agreement, Lender and I agree to all of the above.

COUNTRYWIDE HOME LOANS, INC.

- Lender
By: _____
    ROSEANNE CASTELLANO, Operations Mgr.

Mortgage Electronic Registration Systems, Inc.
- Mortgagee
By: _____
    ROSEANNE CASTELLANO, Operations Mgr.

_____
LORRAINE R. SANTOLI                        - Borrower

_____          - Borrower

_____          - Borrower

_____          - Borrower

Initials: _____

DOC ID #

**STATE OF NEW YORK,**          Westchester

On the __21st__ day of __November__ __2006__ before me, the undersigned, a notary public in and for said state, personally appeared
LORRAINE R SANTOLI

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

Notary Public

Marie L. Stahl
Notary Public, State of NY
No. 01ST6034921
Qualified in Putnam County
Commission Expires 12 / 20 / 2009

**STATE OF NEW YORK,**          Westchester                    County ss:

On the __21st__ day of __November__ __2006__ before me, the undersigned, a notary public in and for said state, personally appeared
Roseanne Castellano

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

Notary Public

Tax Map Information:

Robert A. Finkelstein
Notary Public, State of New York
No. 4630184
Qualified in Westchester County
Commission Expires May 21, 2007

EXHIBIT "A"

(1) The Mortgage given by Lorraine R. Santoli, dated April 21,
2003, in favor of Mortgage Electronic Registration Systems, Inc.
solely as nominee for America's Wholesale Lender a/k/a
Countrywide Home Loans, Inc. securing the original principal
amount of U.S. $322,700.00.  This Mortgage was recorded on April
29, 2004 in the Clerk's Office of Westchester County, State of
New York, at Control No. 440930062,  upon which such Mortgage all
taxes have been paid..  This Mortgage secures a Note dated April
21, 2003.

(2) The Mortgage given by Lorraine R. Santoli, and dated November
22, 2005 in favor of Mortgage Electronic Registration Systems,
Inc. solely as nominee for Countrywide Home Loans, Inc. securing
the original principal amount of U.S. $312,214.36.  This Mortgage
was recorded on March 8, 2006 in the Clerk's Office of
Westchester County, State of New York, at Control No. 460590139,
upon which such Mortgage all taxes have been paid. This Mortgage
secures a Note dated November 22, 2005.

The Mortgages and Notes set forth in paragraphs (1) and (2)
above, were consolidated, to form a single mortgage loan, in the
principal amount of U.S. $687,500.00, by that certain
Consolidation Extension and Modification Agreement, dated
November 22, 2005, entered into by and between Lorraine R.
Santoli and Mortgage Electronic Registration Systems, Inc. solely
as nominee for Countrywide Home Loans, Inc. and recorded on March
8, 2006 in the Clerk's Office of Westchester County, State of New
York at Control No. 460590144. At this date, the unpaid principal
balance secured by the Mortgage and Note is U.S. $595,000.00.

## "SCHEDULE A"
## DESCRIPTION

Page   **1**

ALL that certain plot, piece or parcel of land with the buildings and improvements thereon erected, situate, lying and being in the Town of Somers, County of Westchester and State of New York, being known and designated as Lot No. 179 on a certain map entitled, "Subdivision Map Section 3, 'The Meadows and Stephan's Green' situated in the Town of Somers, County of Westchester", made by Roland K. Link, P.L.L.C., dated October 7, 1998, last revised October 7, 1999 and filed in the Office of the Westchester County Clerk, Division of Land Records on June 11, 2001 as Map No. 26810.

EXHIBIT "B"

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

Prepared By:
SUSAN T. AADAL


EXHIBIT D CONSOLIDATED

———————————————— [Space Above This Line For Recording Data] ————————

EXHIBIT D CONSOLIDATED

# MORTGAGE
MIN


**WORDS USED OFTEN IN THIS DOCUMENT**
**(A) "Security Instrument."** This document, which is dated   NOVEMBER 21, 2006   , together with all
Riders to this document, will be called the "Security Instrument."
**(B) "Borrower."**
LORRAINE R SANTOLI


whose address is
28 HYNARD PLACE, BALDWIN PLACE, NY 10505
sometimes will be called "Borrower" and sometimes simply "I" or "me."
**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting
solely as a nominee for Lender and Lender's successors and assigns. MERS is organized and existing under
the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel.
(888) 679-MERS. **FOR PURPOSES OF RECORDING THIS MORTGAGE, MERS IS THE
MORTGAGEE OF RECORD.**
**(D) "Lender."**
COUNTRYWIDE HOME LOANS, INC.
will be called "Lender." Lender is a
CORPORATION                                                                      which exists
under the laws of NEW YORK                                    . Lender's address is
4500 Park Granada MSN# SVB-314, Calabasas, CA 91302-1613                   .
**(E) "Note."** The note signed by Borrower and dated   NOVEMBER 21, 2006   , will be called the "Note."
The Note shows that I owe Lender
FIVE HUNDRED NINETY FIVE THOUSAND and 00/100

Dollars (U.S. $ 595,000.00                         ) plus interest and other amounts that may be payable. I have
promised to pay this debt in Periodic Payments and to pay the debt in full by   DECEMBER 01, 2036   .
Section: ___5.17___   Block: ___2___   Lot: ___19___   Unit: _____

**NEW YORK-** Single Family -Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Page 1 of 13
-6A(NY) (0508)        CHL (08/05)(d)        VMP Mortgage Solutions, Inc. (800)521-7291
CONV/VA

**Form 3033 1/01**




## "SCHEDULE A"
## DESCRIPTION

Page    1

ALL that certain plot, piece or parcel of land with the buildings and improvements thereon erected, situate, lying and being in the Town of Somers, County of Westchester and State of New York, being known and designated as Lot No. 179 on a certain map entitled, "Subdivision Map Section 3, 'The Meadows and Stephan's Green' situated in the Town of Somers, County of Westchester", made by Roland K. Link, P.L.L.C., dated October 7, 1998, last revised October 7, 1999 and filed in the Office of the Westchester County Clerk, Division of Land Records on June 11, 2001 as Map No. 26810.

DOC ID #:

**(F) "Property."** The property that is described below in the section titled "Description of the Property," will be called the "Property."
THE PREMISES ARE IMPROVED OR ARE TO BE IMPROVED BY A ONE OR TWO
FAMILY RESIDENCE OR DWELLING ONLY.

**(G) "Loan."** The "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(H) "Sums Secured."** The amounts described below in the section titled "Borrower's Transfer to Lender of Rights in the Property" sometimes will be called the "Sums Secured."

**(I) "Riders."** All Riders attached to this Security Instrument that are signed by Borrower will be called "Riders." The following Riders are to be signed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☒ Other(s) [specify] |
| | | SCHEDULE A |

**(J) "Applicable Law."** All controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable, judicial opinions will be called "Applicable Law."

**(K) "Community Association Dues, Fees, and Assessments."** All dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization will be called "Community Association Dues, Fees, and Assessments."

**(L) "Electronic Funds Transfer."** "Electronic Funds Transfer" means any transfer of money, other than by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Some common examples of an Electronic Funds Transfer are point-of-sale transfers (where a card such as an asset or debit card is used at a merchant), automated teller machine (or ATM) transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M) "Escrow Items."** Those items that are described in Section 3 will be called "Escrow Items."

**(N) "Miscellaneous Proceeds."** "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than Insurance Proceeds, as defined in, and paid under the coverage described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) Condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of Condemnation or sale to avoid Condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property. A taking of the Property by any governmental authority by eminent domain is known as "Condemnation."

**(O) "Mortgage Insurance."** "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment."** The regularly scheduled amount due for (i) principal and interest under the Note, and (ii) any amounts under Section 3 will be called "Periodic Payment."

**(Q) "RESPA."** "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY**

I mortgage, grant and convey the Property to MERS (solely as nominee for Lender and Lender's successors in interest) and its successors in interest subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

(A) Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;

(B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

(C) Keep all of my other promises and agreements under this Security Instrument and the Note.

I understand and agree that MERS holds only legal title to the rights granted by me in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:

(A) to exercise any or all of those rights, including, but not limited to, the right to foreclose and sell the Property; and

(B) to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

**EXHIBIT "A"**

(1) The Mortgage given by Lorraine R. Santoli, dated April 21, 2003, in favor of Mortgage Electronic Registration Systems, Inc. solely as nominee for America's Wholesale Lender a/k/a Countrywide Home Loans, Inc. securing the original principal amount of U.S. $322,700.00. This Mortgage was recorded on April 29, 2004 in the Clerk's Office of Westchester County, State of New York, at Control No. 440930062, upon which such Mortgage all taxes have been paid.. This Mortgage secures a Note dated April 21, 2003.

(2) The Mortgage given by Lorraine R. Santoli, and dated November 22, 2005 in favor of Mortgage Electronic Registration Systems, Inc. solely as nominee for Countrywide Home Loans, Inc. securing the original principal amount of U.S. $312,214.36. This Mortgage was recorded on March 8, 2006 in the Clerk's Office of Westchester County, State of New York, at Control No. 460590139, upon which such Mortgage all taxes have been paid. This Mortgage secures a Note dated November 22, 2005.

The Mortgages and Notes set forth in paragraphs (1) and (2) above, were consolidated, to form a single mortgage loan, in the principal amount of U.S. $687,500.00, by that certain Consolidation Extension and Modification Agreement, dated November 22, 2005, entered into by and between Lorraine R. Santoli and Mortgage Electronic Registration Systems, Inc. solely as nominee for Countrywide Home Loans, Inc. and recorded on March 8, 2006 in the Clerk's Office of Westchester County, State of New York at Control No. 460590144. At this date, the unpaid principal balance secured by the Mortgage and Note is U.S. $595,000.00.

DOC ID #:

## DESCRIPTION OF THE PROPERTY

I give MERS rights in the Property described in (A) through (G) below:

(A) The Property which is located at

28 HYNARD PLACE                                                                    [Street]

BALDWIN PLACE                          [City, Town or Village], New York

10505      [Zip Code]. This Property is in    PUTNAM                        County.

It has the following legal description:

SEE SCHEDULE "A" ATTACHED HERETO AND MADE A PART HEREOF.

(B) All buildings and other improvements that are located on the Property described in subsection (A) of this section;

(C) All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property;"

(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;

(E) All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;

(F) All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and

(G) All replacements of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) through (F) of this section.

## BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

## PLAIN LANGUAGE SECURITY INSTRUMENT

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language."

## COVENANTS

I promise and I agree with Lender as follows:

**1. Borrower's Promise to Pay.** I will pay to Lender on time principal and interest due under the Note and any prepayment, late charges and other amounts due under the Note. I will also pay all amounts for Escrow Items under Section 3 of this Security Instrument.

Payments due under the Note and this Security Instrument shall be made in U.S. currency. If any of my payments by check or other payment instrument is returned to Lender unpaid, Lender may require my payment be made by: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location required in the Note, or at another location designated by Lender under Section 15 of this Security Instrument. Lender may return or accept any payment or partial payment if it is for an amount that is less than the amount that is then due. If Lender accepts a lesser payment, Lender may refuse to accept a lesser payment that I may make in the future and does not waive any of its rights. Lender is not obligated to apply such lesser payments when it accepts such payments. If interest on principal accrues as if all Periodic Payments had been paid when due, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until I make payments to bring the Loan current. If I do not do so within a reasonable period of time, Lender will either

DOC ID #:

apply such funds or return them to me. In the event of foreclosure, any unapplied funds will be applied to the outstanding principal balance immediately prior to foreclosure. No offset or claim which I might have now or in the future against Lender will relieve me from making payments due under the Note and this Security Instrument or keeping all of my other promises and agreements secured by this Security Instrument.

**2. Application of Borrower's Payments and Insurance Proceeds.** Unless Applicable Law or this Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following order:

First, to pay interest due under the Note;

Next, to pay principal due under the Note; and

Next, to pay the amounts due Lender under Section 3 of this Security Instrument.

Such payments will be applied to each Periodic Payment in the order in which it became due.

Any remaining amounts will be applied as follows:

First, to pay any late charges;

Next, to pay any other amounts due under this Security Instrument; and

Next, to reduce the principal balance of the Note.

If Lender receives a payment from me for a late Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the late Periodic Payment and the late charge. If more than one Periodic Payment is due, Lender may apply any payment received from me: First, to the repayment of the Periodic Payments that are due if, and to the extent that, each payment can be paid in full; Next, to the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.

Voluntary prepayments will be applied as follows: First, to any prepayment charges; and Next, as described in the Note.

Any application of payments, Insurance Proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date of the Periodic Payments or change the amount of those payments.

**3. Monthly Payments For Taxes And Insurance.**

**(a) Borrower's Obligations.**

I will pay to Lender all amounts necessary to pay for taxes, assessments, water charges, sewer rents and other similar charges, ground leasehold payments or rents (if any), hazard or property insurance covering the Property, flood insurance (if any), and any required Mortgage Insurance, or a Loss Reserve as described in Section 10 in the place of Mortgage Insurance. Each Periodic Payment will include an amount to be applied toward payment of the following items which are called "Escrow Items:"

(1) The taxes, assessments, water charges, sewer rents and other similar charges, on the Property which under Applicable Law may be superior to this Security Instrument as a Lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "Lien;"

(2) The leasehold payments or ground rents on the Property (if any);

(3) The premium for any and all insurance required by Lender under Section 5 of this Security Instrument;

(4) The premium for Mortgage Insurance (if any);

(5) The amount I may be required to pay Lender under Section 10 of this Security Instrument instead of the payment of the premium for Mortgage Insurance (if any); and

(6) If required by Lender, the amount for any Community Association Dues, Fees, and Assessments.

After signing the Note, or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment I will make for Escrow Items will be based on Lender's estimate of the annual amount required.

I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise. I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note.

The amounts that I pay to Lender for Escrow Items under this Section 3 will be called "Escrow Funds." I will pay Lender the Escrow Funds for Escrow Items unless Lender waives my obligation to pay the Escrow Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Escrow Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, I will pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Escrow Funds has been waived by Lender and, if Lender requires, will promptly send to Lender receipts showing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts will be considered to be a promise and agreement contained in this Security Instrument, as the phrase "promises and agreements" is used in Section 9 of this Security Instrument. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may pay that amount and I will then be obligated under Section 9 of this Security Instrument to repay to Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 of this Security Instrument and, upon the revocation, I will pay to Lender all Escrow Funds, and in amounts, that are then required under this Section 3.

DOC ID #

I promise to promptly send to Lender any notices that I receive of Escrow Item amounts to be paid. Lender will estimate from time to time the amount of Escrow Funds I will have to pay by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless Applicable Law requires Lender to use another method for determining the amount I am to pay.

Lender may, at any time, collect and hold Escrow Funds in an amount sufficient to permit Lender to apply the Escrow Funds at the time specified under RESPA. Applicable Law puts limits on the total amount of Escrow Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender could require under RESPA. If there is another Applicable Law that imposes a lower limit on the total amount of Escrow Funds Lender can collect and hold, Lender will be limited to the lower amount.

(b) **Lender's Obligations.**

Lender will keep the Escrow Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Escrow Funds. Lender will use the Escrow Funds to pay the Escrow Items no later than the time allowed under RESPA or other Applicable Law. Lender will give to me, without charge, an annual accounting of the Escrow Funds. That accounting will show all additions to and deductions from the Escrow Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Escrow Funds, for using the Escrow Funds to pay Escrow Items, for making a yearly analysis of my payment of Escrow Funds or for receiving, or for verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Escrow Funds and if Applicable Law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Escrow Funds unless either (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or (2) Applicable Law requires Lender to pay interest on the Escrow Funds.

(c) **Adjustments to the Escrow Funds.**

Under Applicable Law, there is a limit on the amount of Escrow Funds Lender may hold. If the amount of Escrow Funds held by Lender exceeds this limit, then there will be an excess amount and RESPA requires Lender to account to me in a special manner for the excess amount of Escrow Funds.

If, at any time, Lender has not received enough Escrow Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items when the payments are due, but the number of payments will not be more than 12.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Escrow Funds that are then being held by Lender.

**4. Borrower's Obligation to Pay Charges, Assessments And Claims.** I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and any other charges that may be imposed on the Property and that may be superior to this Security Instrument. I will also make ground rents or payments due under my lease if I am a tenant on the Property and Community Association Dues, Fees, and Assessments (if any) due on the Property. If these items are Escrow Items, I will do this by making the payments as described in Section 3 of this Security Instrument. In this Security Instrument, the word "Person" means any individual, organization, governmental authority or other party.

I will promptly pay or satisfy all Liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior Lien if: (a) I agree, in writing, to pay the obligation which gave rise to the superior Lien and Lender approves the way in which I agree to pay that obligation, but only so long as I am performing such agreement; (b) in good faith, I argue or defend against the superior Lien in a lawsuit so that in Lender's opinion, during the lawsuit, the superior Lien may not be enforced, but only until the lawsuit ends; or (c) I secure from the holder of that other Lien an agreement, approved in writing by Lender, that the Lien of this Security Instrument is superior to the Lien held by that Person. If Lender determines that any part of the Property is subject to a superior Lien, Lender may give Borrower a notice identifying the superior Lien. Within 10 days of the date on which the notice is given, Borrower shall pay or satisfy the superior Lien or take one or more of the actions mentioned in this Section 4.

Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with the Loan, unless Applicable Law does not permit Lender to make such a charge.

**5. Borrower's Obligation to Maintain Hazard Insurance or Property Insurance.** I will obtain hazard or property insurance to cover all buildings and other improvements that now are, or in the future will be, located on the Property. The insurance will cover loss or damage caused by fire, hazards normally covered by "Extended Coverage" hazard insurance policies, and any other hazards for which Lender requires coverage, including, but not limited to earthquakes and floods. The insurance will be in the amounts (including, but not limited to, deductible levels) and for the periods of time required by Lender. What Lender requires under the last sentence can change during the term of the Loan. I may choose the insurance company, but my choice is subject to Lender's right to disapprove. Lender may not disapprove my choice unless the disapproval is reasonable. Lender may require me to pay either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect the flood zone determination or certification. If I disagree with the flood zone determination, I may request the Federal Emergency Management Agency to review the flood zone determination and I promise to pay any fees charged by the Federal Emergency Management Agency for its review.

If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense. Lender is under no obligation to purchase any particular type or

DOC ID

amount of coverage. Therefore, such coverage will cover Lender, but might or might not protect me, my equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. I acknowledge that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that I could have obtained. Any amounts disbursed by Lender under this Section 5 will become my additional debt secured by this Security Instrument. These amounts will bear interest at the interest rate set forth in the Note from the date of disbursement and will be payable with such interest, upon notice from Lender to me requesting payment.

All of the insurance policies and renewals of those policies will include what is known as a "Standard Mortgage Clause" to protect Lender and will name Lender as mortgagee and/or as an additional loss payee. The form of all policies and renewals will be acceptable to Lender. Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy will include a Standard Mortgage Clause and will name Lender as mortgagee and/or as an additional loss payee.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company for loss or damage to the Property is called "Insurance Proceeds." Unless Lender and I otherwise agree in writing, any Insurance Proceeds, whether or not the underlying insurance was required by Lender, will be used to repair or to restore the damaged Property unless: (a) it is not economically feasible to make the repairs or restoration; (b) the use of the Insurance Proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (c) Lender and I have agreed in writing not to use the Insurance Proceeds for that purpose. During the period that any repairs or restorations are being made, Lender may hold any Insurance Proceeds until it has had an opportunity to inspect the Property to verify that the repair work has been completed to Lender's satisfaction. However, this inspection will be done promptly. Lender may make payments for the repairs and restorations in a single payment or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, Lender is not required to pay me any interest or earnings on the Insurance Proceeds. I will pay for any public adjusters or other third parties that I hire, and their fees will not be paid out of the Insurance Proceeds. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the Insurance Proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument. Such Insurance Proceeds will be applied in the order provided for in Section 2. If any of the Insurance Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining Insurance Proceeds will be paid to me.

If I abandon the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 of this Security Instrument or otherwise, I give Lender my rights to any Insurance Proceeds in an amount not greater than the amounts unpaid under the Note and this Security Instrument. I also give Lender any other of my rights (other than the right to any refund of unearned premiums that I paid) under all insurance policies covering the Property, if the rights are applicable to the coverage of the Property. Lender may use the Insurance Proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Borrower's Obligations to Occupy The Property.** I will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

**7. Borrower's Obligations to Maintain And Protect The Property And to Fulfill Any Lease Obligations.**

(a) **Maintenance and Protection of the Property.**

I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate. Whether or not I am residing in the Property, I will keep the Property in good repair so that it will not deteriorate or decrease in value due to its condition. Unless it is determined under Section 5 of this Security Instrument that repair is not economically feasible, I will promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or Condemnation (as defined in the definition of Miscellaneous Proceeds) proceeds are paid because of loss or damage to, or Condemnation of, the Property, I will repair or restore the Property only if Lender has released those proceeds for such purposes. Lender may pay for the repairs and restoration out of proceeds in a single payment or in a series of progress payments as the work is completed. If the insurance or Condemnation proceeds are not sufficient to repair or restore the Property, I promise to pay for the completion of such repair or restoration.

DOC ID #:

**(b) Lender's Inspection of Property.**

Lender, and others authorized by Lender, may enter on and inspect the Property. They will do so in a reasonable manner and at reasonable times. If it has a reasonable purpose, Lender may inspect the inside of the home or other improvements on the Property. Before or at the time an inspection is made, Lender will give me notice stating a reasonable purpose for such interior inspection.

**8. Borrower's Loan Application.** If, during the application process for the Loan, I, or any Person or entity acting at my direction or with my knowledge or consent, made false, misleading, or inaccurate statements to Lender about information important to Lender in determining my eligibility for the Loan (or did not provide Lender with such information), Lender will treat my actions as a default under this Security Instrument. False, misleading, or inaccurate statements about information important to Lender would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading, or inaccurate statement of important information.

**9. Lender's Right to Protect Its Rights in The Property.** If: (a) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for Condemnation or Forfeiture (as defined in Section 11), proceedings which could give a Person rights which could equal or exceed Lender's interest in the Property or under this Security Instrument, proceedings for enforcement of a Lien which may become superior to this Security Instrument, or to enforce laws or regulations); or (c) I have abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and Lender's rights under this Security Instrument.

Lender's actions may include, but are not limited to: (a) protecting and/or assessing the value of the Property; (b) securing and/or repairing the Property; (c) paying sums to eliminate any Lien against the Property that may be equal or superior to this Security Instrument; (d) appearing in court; and (e) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Lender can also enter the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, have utilities turned on or off, and take any other action to secure the Property. Although Lender may take action under this Section 9, Lender does not have to do so and is under no duty to do so. I agree that Lender will not be liable for not taking any or all actions under this Section 9.

I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will pay interest on those amounts at the interest rate set forth in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

If I do not own, but am a tenant on the Property, I will fulfill all my obligations under my lease. I also agree that, if I acquire the full title (sometimes called "Fee Title") to the Property, my lease interest and the Fee Title will not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, I will pay the premiums for the Mortgage Insurance. If, for any reason, the Mortgage Insurance coverage ceases to be available from the mortgage insurer that previously provided such insurance and Lender required me to make separate payments toward the premiums for Mortgage Insurance, I will pay the premiums for substantially equivalent Mortgage Insurance coverage from an alternate mortgage insurer. However, the cost of this Mortgage Insurance coverage will be substantially equivalent to the cost to me of the previous Mortgage Insurance coverage, and the alternate mortgage insurer will be selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available, Lender will establish a non-refundable "Loss Reserve" as a substitute for the Mortgage Insurance coverage. I will continue to pay to Lender each month an amount equal to one-twelfth of the yearly Mortgage Insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the Mortgage Insurance would have covered. The Loss Reserve is non-refundable even if the Loan is ultimately paid in full and Lender is not required to pay me any interest on the Loss Reserve. Lender can no longer require Loss Reserve payments if: (a) Mortgage Insurance coverage again becomes available through an insurer selected by Lender; (b) such Mortgage Insurance is obtained; (c) Lender requires separately designated payments toward the premiums for Mortgage Insurance; and (d) the Mortgage Insurance coverage is in the amount and for the period of time required by Lender.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separate payments toward the premiums for Mortgage Insurance, I will pay the Mortgage Insurance premiums, or the Loss Reserve payments, until the requirement for Mortgage Insurance ends according to any written agreement between Lender and me providing for such termination or until termination of Mortgage Insurance is required by Applicable Law. Lender may require me to pay the premiums, or the Loss Reserve payments, in the manner described in Section 3 of this Security Instrument. Nothing in this Section 10 will affect my obligation to pay interest at the rate provided in the Note.

A Mortgage Insurance policy pays Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy.

DOC ID #:

Mortgage insurers assess their total risk on all Mortgage Insurance from time to time. Mortgage insurers may enter into agreements with other parties to share or change their risk, or to reduce losses. These agreements are based on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include Mortgage Insurance premiums).

As a result of these agreements, Lender, any owner of the Note, another insurer, any reinsurer, or any other entity may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk, or reducing losses. If these agreements provide that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." It also should be understood that: (a) any of these agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund; and (b) any of these agreements will not affect the rights Borrower has - if any - regarding the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right (a) to receive certain disclosures, (b) to request and obtain cancellation of the Mortgage Insurance, (c) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of any Mortgage Insurance premiums that were not earned at the time of such cancellation or termination.

**11. Agreements About Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are assigned to and will be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security given in this Security Instrument is not lessened. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to verify that the work has been completed to Lender's satisfaction. However, the inspection will be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on the Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security given in this Security Instrument would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Sums Secured will be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the Sums Secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Miscellaneous Proceeds will be applied to the Sums Secured whether or not the sums are then due.

If I abandon the Property, or if, after Lender sends me notice that the Opposing Party (as defined in the next sentence) offered to make an award to settle a claim for damages, I fail to respond to Lender within 30 days after the date Lender gives notice, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Sums Secured, whether or not then due. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a right of action in regard to Miscellaneous Proceeds.

I will be in default under this Security Instrument if any civil or criminal action or proceeding that Lender determines could result in a court ruling (a) that would require Forfeiture of the Property, or (b) that could damage Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" is a court action to require the Property, or any part of the Property, to be given up. I may correct the default by obtaining a court ruling that dismisses the court action, if Lender determines that this court ruling prevents Forfeiture of the Property and also prevents any damage to Lender's interest in the Property or rights under this Security Instrument. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Section 19 of this Security Instrument, even if Lender has required Immediate Payment in Full (as defined in Section 22). The proceeds of any award or claim for damages that are attributable to the damage or reduction of Lender's interest in the Property are assigned, and will be paid, to Lender.

DOC ID #:

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for in Section 2.

**12. Continuation of Borrower's Obligations And of Lender's Rights.**

**(a) Borrower's Obligations.**

Lender may allow me, or a Person who takes over my rights and obligations, to delay or to change the amount of the Periodic Payments. Even if Lender does this, however, I will still be fully obligated under the Note and under this Security Instrument unless Lender agrees to release me, in writing, from my obligations.

Lender may allow those delays or changes for me or a Person who takes over my rights and obligations, even if Lender is requested not to do so. Even if Lender is requested to do so, Lender will not be required to (1) bring a lawsuit against me or such a Person for not fulfilling obligations under the Note or under this Security Instrument, or (2) refuse to extend time for payment or otherwise modify amortization of the Sums Secured.

**(b) Lender's Rights.**

Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if: (1) Lender obtains insurance, pays taxes, or pays other claims, charges or Liens against the Property; (2) Lender accepts payments from third Persons; or (3) Lender accepts payments in amounts less than the amount then due, Lender will have the right under Section 22 below to demand that I make Immediate Payment in Full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument.

**13. Obligations of Borrower And of Persons Taking Over Borrower's Rights or Obligations.** If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument; (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender may agree with the other Borrowers to delay enforcing any of Lender's rights, to modify, or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent.

Subject to the provisions of Section 18 of this Security Instrument, any Person who takes over my rights or obligations under this Security Instrument in writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 20.

**14. Loan Charges.** Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee. Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (even if a prepayment charge is provided for under the Note). If I accept such a refund that is paid directly to me, I will waive any right to bring a lawsuit against Lender because of the overcharge.

**15. Notices Required under this Security Instrument.** All notices given by me or Lender in connection with this Security Instrument will be in writing. Any notice to me in connection with this Security Instrument is considered given to me when mailed by first class mail or when actually delivered to my notice address if sent by other means. Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address is the address of the Property unless I give notice to Lender of a different address. I will promptly notify Lender of my change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security Instrument unless Lender has given me notice of another address. Any notice in connection with this Security Instrument is given to Lender when it is actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

DOC ID #

**16. Law That Governs this Security Instrument; Word Usage.** This Security Instrument is governed by federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might allow the parties to agree by contract or it might be silent, but such silence does not mean that Lender and I cannot agree by contract. If any term of this Security Instrument or of the Note conflicts with Applicable Law, the conflict will not affect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. This means that the Security Instrument or the Note will remain as if the conflicting provision did not exist.

As used in this Security Instrument: (a) words of the masculine gender mean and include corresponding words of the feminine and neuter genders; (b) words in the singular mean and include the plural, and words in the plural mean and include the singular; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** I will be given one copy of the Note and of this Security Instrument.

**18. Agreements about Lender's Rights If the Property Is Sold or Transferred.** Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

**19. Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued.** Even if Lender has required Immediate Payment in Full, I may have the right to have enforcement of this Security Instrument stopped. I will have this right at any time before the earliest of: (a) five days before sale of the Property under any power of sale granted by this Security Instrument; (b) another period as Applicable Law might specify for the termination of my right to have enforcement of the Loan stopped; or (c) a judgment has been entered enforcing this Security Instrument. In order to have this right, I will meet the following conditions:

(a) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if Immediate Payment in Full had never been required;

(b) I correct my failure to keep any of my other promises or agreements made in this Security Instrument;

(c) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

(d) I do whatever Lender reasonably requires to assure that Lender's interest in the Property and rights under this Security Instrument and my obligations under the Note and under this Security Instrument continue unchanged.

Lender may require that I pay the sums and expenses mentioned in (a) through (d) in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 19, then this Security Instrument will remain in full effect as if Immediate Payment in Full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required Immediate Payment in Full under Section 18 of this Security Instrument.

**20. Note Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Lender's and Borrower's Right to Notice of Grievance.** The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales.

The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. Applicable Law requires that I be given written notice of any change of the Loan Servicer. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by RESPA or Applicable Law. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to me will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

DOC ID #

Neither I nor Lender may commence, join or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified (in the manner required under Section 15 of this Security Instrument) of the unfulfilled obligation and given a reasonable time period to take corrective action. If Applicable Law provides a time period which will elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to me under Section 22 and the notice of the demand for payment in full given to me under Section 22 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20. All rights under this paragraph are subject to Applicable Law.

**21. Continuation of Borrower's Obligations to Maintain and Protect the Property.** The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Law." Environmental Law classifies certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 21. These substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances." "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law. An "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

I will not do anything affecting the Property that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. I also will not do, nor allow anyone else to do, anything affecting the Property that: (a) is in violation of any Environmental Law; (b) creates an Environmental Condition; or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The promises in this paragraph do not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products). I may use or store these small quantities on the Property. In addition, unless Environmental Law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

I will promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If I learn, or any governmental or regulatory authority, or any private party, notifies me that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial actions in accordance with Environmental Law.

Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS**
I also promise and agree with Lender as follows:

**22. Lender's Rights If Borrower Fails to Keep Promises and Agreements. Except as provided in Section 18 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."**

**If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another Person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.**

**Lender may require Immediate Payment in Full under this Section 22 only if all of the following conditions are met:**

(a) **I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument;**

(b) **Lender sends to me, in the manner described in Section 15 of this Security Instrument, a notice that states:**

(1) **The promise or agreement that I failed to keep or the default that has occurred;**

(2) **The action that I must take to correct that default;**

DOC ID :

(3) A date by which I must correct the default. That date will be at least 30 days from the date on which the notice is given;

(4) That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of Foreclosure and Sale;

(5) That if I meet the conditions stated in Section 19 of this Security Instrument, I will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and

(6) That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and

(c) I do not correct the default stated in the notice from Lender by the date stated in that notice.

**23. Lender's Obligation to Discharge this Security Instrument.** When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

**24. Agreements about New York Lien Law.** I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 24.

**25. Borrower's Statement Regarding the Property [check box as applicable].**

[X] This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.

[ ] This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

[ ] This Security Instrument does not cover real property improved as described above.

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 17 of this Security Instrument and in any Rider signed by me and recorded with it.

_____ (Seal)
LORRAINE R. SANTOLI                         -Borrower

_____ (Seal)
                                            -Borrower

_____ (Seal)
                                            -Borrower

_____ (Seal)
                                            -Borrower

DOC ID #:

**STATE OF NEW YORK,**　　　　　Westchester　　　　　County ss:

On the ___21st___ day of ___November___ ___2006___ before me, the undersigned, a notary public in and for said state, personally appeared ___Lorraine R. Santoli___

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

Tax Map Information: 5.17-2-19

Marie L. Stahl
Notary Public, State of NY
No. 01ST6034921
Qualified in Putnam County
Commission Expires 12 / 20 / 2009

Prepared by: SUSAN T. AADAL

LOAN #:

# CONSOLIDATED NOTE

**This Note amends and restates in their entirety, and is given in substitution for,
the Notes described in Exhibit A of the New York Consolidation, Extension,
and Modification Agreement dated the same date as this Note.**

EXHIBIT C CONSOLIDATED

NOVEMBER 21, 2006                                          NEW YORK
  [Date]                              [City]                   [State]

28 HYNARD PLACE, BALDWIN PLACE, NY 10505
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 595,000.00          (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is
COUNTRYWIDE HOME LOANS, INC.
I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of   6.500 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

**(A) Time and Place of Payments**
I will pay principal and interest by making a payment every month.
I will make my monthly payment on the   FIRST    day of each month beginning on  January, 2007    . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on  DECEMBER 01, 2036   , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at
P.O. Box 660694, Dallas, TX 75266-0694
or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**
My monthly payment will be in the amount of U.S. $ 3,760.80

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

NEW YORK FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Amended for NY Consolidated Note                                  Page 1 of 3
 -850N(NY) (0312)    CHL (12/03)(d)    VMP Mortgage Solutions (800)521-7291

Initials: 
Form 3233 1/01




LOAN #

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of FIFTEEN calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 2.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Lender may require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require immediate payment in full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires immediate payment in full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

Initials: _____

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____(Seal)
LORRAINE R. SANTOLI                                          -Borrower

_____(Seal)
                                                            -Borrower

_____(Seal)
                                                            -Borrower

_____(Seal)
                                                            -Borrower

*[Sign Original Only]*

**EXECUTION COPY**

CWMBS, INC.,

Depositor

COUNTRYWIDE HOME LOANS, INC.,

Seller

PARK GRANADA LLC,

Seller

PARK MONACO INC.,

Seller

PARK SIENNA LLC,

Seller

COUNTRYWIDE HOME LOANS SERVICING LP,

Master Servicer

and

THE BANK OF NEW YORK,

Trustee

POOLING AND SERVICING AGREEMENT

Dated as of December 1, 2006

CHL MORTGAGE PASS-THROUGH TRUST 2006-20

MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-20

2016002379
January 14, 2016  10:11:26 AM
Rec: $24.00
FILED IN GREENVILLE COUNTY, SC  Timothy A. Nanney

### LIMITED POWER OF ATTORNEY

Reference is hereby made to (x) each of the pooling and servicing agreements listed in Schedule 1 attached hereto, by and among The Bank of New York Mellon f/k/a The Bank of New York ("BNY Mellon"), as trustee, Countrywide Home Loans Servicing LP, as master servicer, Countrywide Home Loans, Inc., as seller, one or more additional sellers identified therein, and either of CWALT, Inc. or CWABS, Inc. or CWMBS, Inc., as depositor (each, a "Pooling and Servicing Agreement" and collectively, the "Pooling and Servicing Agreements"), and (y) that certain settlement agreement (the "Settlement Agreement"), dated as of June 28, 2011, by and among BNY Mellon, in its capacity as trustee or indenture trustee of certain mortgage-securitization trusts identified therein, Bank of America Corporation, Bank of America, N.A., as successor by merger to BAC Home Loans Servicing, LP (f/k/a Countrywide Home Loans Servicing LP) (the "Master Servicer"), Countrywide Financial Corporation and Countrywide Home Loans, Inc.  Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Pooling and Servicing Agreements or the Settlement Agreement, as the context requires.

BNY Mellon, as Trustee under the Pooling and Servicing Agreements, hereby constitutes and appoints New Penn Financial LLC dba Shellpoint Mortgage Servicing and its authorized officers (collectively, "Shellpoint") and each of them, its true and lawful attorneys-in-fact and agents, with full powers of substitution and resubstitution, for and in its name, place and stead, in any and all capacities, for the limited purpose of executing and recording any and all documents necessary to effect (i) a foreclosure of a Mortgage Loan, (ii) the disposition of an REO Property, (iii) an assumption agreement or modification agreement or supplement to the Mortgage Note, Mortgage, or deed of trust, (iv) defense of the Trustee in litigation and to resolve any litigation where Shellpoint has an obligation to defend the Trustee, including but not limited to dismissal, termination, cancellation, rescission and settlement, which settlement shall release with prejudice all claims and liabilities against BNY Mellon and will not result in admission of guilt by BNY Mellon, (v) title claim resolution, including but not limited to settlement agreements or (vi) a reconveyance, deed of reconveyance or release or satisfaction of mortgage or such instrument releasing the lien of a Mortgage, (vii) the protection, enforcement and/or assignment of BNY Mellon's interest, as Trustee, in a Mortgage Loan, the property secured thereby, or the proceeds related thereto, including but not limited to preparation or execution of documents relating to tax sales, in each case solely in the performance of Shellpoint's duties and obligations in respect of Mortgage Loans that are then being subserviced by Shellpoint pursuant to a subservicing agreement (the "Subservicing Agreement") with the Master Servicer, then in effect in accordance with the terms of the Settlement Agreement.  BNY Mellon also grants unto said attorneys-in-fact and agents, and each of them, subject to the foregoing limitations, the full power and authority to do and perform each and every act and thing requisite and necessary to be done in and about the premises, as fully to all intents and purposes as might or could be done in person to effect items (i), (ii), (iii), (iv), (v), (vi) and (vii) above, hereby ratifying and confirming all that said attorneys-in-fact and agents or any of them, or their substitutes, may lawfully do or cause to be done by virtue hereof; provided that this instrument is to be construed and interpreted as a limited power of attorney and does not empower or authorize the said attorneys-in-fact and agents to do any act or execute any document on behalf of BNY Mellon not specifically described herein.

For the purposes of clarification, but not limitation, BNY Mellon grants unto said attorneys-in-fact and agents, and each of them the full power and authority to (x) execute, acknowledge, seal and deliver deeds, deed of trust/mortgage note endorsements, assignments of deed of trust/mortgage and other recorded documents, tax authority notifications and other instruments of sale, conveyance and transfer, full or partial releases and subordinations, each appropriately completed, with all ordinary or necessary endorsements, acknowledgments, affidavits, and supporting documents as may be necessary and proper to effect the execution, delivery, conveyance, recordation or filing of said documents; (y) execute and deliver affidavits of debt, substitutions of trustee, substitutions of counsel, non-military affidavits, notices of rescission, foreclosure deeds, transfer tax affidavits, affidavits of merit, verifications of complaint, notices to quit,

bankruptcy declarations for the purpose of filing motions to lift stays and other documents or notice filings on behalf of the Trustee in connection with foreclosure, bankruptcy and eviction actions; and (z) endorse and/or assign any borrower or Mortgagor's check or negotiable instrument received by Shellpoint as a payment under a Mortgage Loan.

Nothing in this Limited Power of Attorney shall be deemed to amend or modify the Pooling and Servicing Agreements, the Settlement Agreement, the applicable Subservicing Agreement or the respective rights, duties or obligations of Shellpoint thereunder, and nothing herein shall constitute a waiver of any rights or remedies thereunder. Without limiting the generality of the foregoing, this Limited Power of Attorney does not provide, and shall not be read so as to provide, Shellpoint with the power to perform or undertake actions which Shellpoint is not authorized to take pursuant to the applicable Subservicing Agreement or that the Master Servicer is not authorized to take pursuant to the applicable Pooling and Servicing Agreement. In addition, each attorney-in-fact and agent is only authorized to act pursuant to this Limited Power of Attorney in a manner which complies with all applicable laws, rules and regulations.

Shellpoint shall indemnify, defend and hold BNY Mellon and its successors and assigns harmless, from and against any and all losses, costs, expenses (including, without limitation, actual attorneys' fees), damages, liabilities, demands or claims of any kind whatsoever, arising out of, related to or in connection with any misuse of this Limited Power of Attorney in any manner or by any person not expressly authorized hereby. Acceptance of this Limited Power of Attorney by Shellpoint, or the taking by Shellpoint of any action pursuant to this Limited Power of Attorney, shall be deemed an agreement and acceptance by Shellpoint of this indemnity obligation.

The rights, power, and authority of said attorneys-in-fact and agents granted in this Limited Power of Attorney will commence and be in full force and effect on the date of execution and such rights, powers, and authority will remain in full force and effect until the earlier of (x) 11:59 p.m., New York City time, on the date that is 2 year[s] from such date and (y) the date, if any, on which Shellpoint is no longer an "Approved Subservicer" under the Settlement Agreement; provided, however, that BNY Mellon may terminate this Limited Power of Attorney prior to such date by delivering a written notice of revocation to Shellpoint, with a copy to the Master Servicer.

THE BANK OF NEW YORK MELLON F/K/A
THE BANK OF NEW YORK, as Trustee

Witness: _____
Thomas R. Johnson

By: _____
Gerard F. Facendola
Managing Director

Witness: _____
Antonia DePinto

By: _____
Gavin Tsang
Vice President

ACKNOWLEDGEMENT

STATE OF NEW YORK    §

COUNTY OF NEW YORK    §

    On the 16th day of December in the year 2015 before me, the undersigned, a Notary Public in and for said State, personally appeared   Gerard F. Facendola and Gavin Tsang, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed, the instrument.

    Subscribed and sworn before me this16th day of December, 2015.

NOTARY PUBLIC NAME:
My Commission expires:

RAFAL BAR
NOTARY PUBLIC, State of New York
No. 01BA6293822
Qualified in Kings County
Commission Expires Dec. 16, 2017

Shellpoint Mortgage Servicing                Phone Number:        (800) 365-7107
PO BOX 10826                                 Fax:                 (866) 467-1137
Greenville, SC  29603-0826
                                             Email:    mtgbk@ shellpointmtg.com

---

RE: Debtor 1     Lorraine R Santoli
     Debtor 2

Case No:    1623516

PROOF OF SERVICE

I certify that a copy of the foregoing documents were served upon the following persons electronically or by mail via the U.S. Postal
Service, postage prepaid or by personal delivery, at their scheduled addresses on this day, 11/23/2016.

Southern District of New York, White Plains Division
300 Quarropas Street
White Plains, NY  10601


Jeffrey L. Sapir
399 Knollwood Rd.
Suite 102
White Plains, NY  10603-1936


Linda M. Tirelli
50 Main Street Suite 390
White Plains, NY  10606




/s/ Adryan Fambro