**Linda M. Tirelli, Esq.**
**Tirelli Law Group**
**50 Main Street, Suite 1265**
**White Plains, N.Y. 10606**
**914-732-3222**
**LTirelli@TirelliLawGroup.com**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X    Case No. 16-23516 (SHL)
**IN RE:**

**LORRAINE SANTOLI,**                                              Chapter 13

                                                                   **OBJECTION TO MOTION**
                                              **DEBTORS.**        **FOR RECONSIDERATION**
-------------------------------------------------------------X

**NOW HERE COMES** Debtor, Lorraine Santoli, by and through counsel, Linda M. Tirelli, Esq., and submit this Objection to the Motion for Reconsideration filed by Attorney Michael Rozea as counsel for NewRez LLC d/b/a Shellpoint Mortgage Servicing as servicer for Bank of New York Mellon f/k/a the Bank of New York as Trustee for the Certificate Holders of CWMBS, Inc. CHL Mortgage Pass-Through Trust 2006-20 Mortgage Pass-Through Certificates ,Series 2006-20 (hereinafter "Movant" or "BONYM"), respectfully setting forth as follows:

**PRELIMINARY STATEMENT**

The motion for reconsideration filed by BONYM essentially asks this Court to reverse itself --- to relieve BONYM and its agents from the known consequences of its repeated long time failure to appear and failure to timely respond to the Debtor's Motion To Expunge and Objecting to Proof of Claim No. 2 (ECF Dkt No. 34). Debtor's Motion along with a proper Notice of Hearing scheduled for July 24, 2019 were served on April 23, 2019. The Debtor's Motion was heard on July 24, 2019 and due to the failure of the Respondent to appear or file any response, the hearing was adjourned to August 28, 2019. The Debtor re-served the Motion on July 26, 2019 ( ECF Dkt No 38) to include service on **both** the CEO of Bank of New York Melon and on the servicer, Shellpoint Mortgage using the exact address provided by Bank of New York Mellon on page 1 of

1

its proof of claim, paragraph 3 of Official Form B10, in the space titled "Where should notices to the creditor be sent?"

On August 28, 2019, the motion was heard, the Debtor and her counsel both appeared but once again, BONYM failed to appear and failed to respond. The Debtor's Motion was again adjourned, this time to November 6, 2019. For a THIRD time, the Debtor appeared with her counsel but BONYM failed to appear or file any response. The Court directed Debtor's counsel to submit an Order to Show Cause which the court did enter on November 22, 2019. The Order to Show Cause reads in relevant part,

> ORDERED that, **any opposition to Debtor's Motion must be filed on or before January 7, 2020**; and, it is further
> ORDERED that, failure to oppose Debtor's Motion and failure to appear before the Court, on January 15, 2020, may result in the Debtor's Motion Objecting to Proof of Claim 2-1, seeking to expunge and void the lien, being granted and the Claim forever expunged and all other requested relief be granted; and, it is further
> ORDERED, that, the Debtor's counsel, shall serve this Order to Show Cause directly to Bank of New York Mellon Corp., and its servicing agent "Shellpoint Mortgage Servicing" at the following addresses;
> 1. Bank of New York Mellon Corp., Attn: Thomas P. Gibbons, Interim CEO, 225 Liberty Street, New York, NY 10281;
> 2. Bank of New York Mellon Corp., Attn: Kevin McCarthy, Esq., General Counsel, 400 South Hope Street, Los Angeles, CA 90071;
> 3. Stern & Eisenberg P.C., Attn: Margaret J. Cascino, Esq., 485B Route 1 South, Suite 330, Iselin, NJ 08830;
> 4. Shellpoint Mortgage Servicing, Attn: Bruce Williams, CEO, 140 E. 45th Street, NY 10017;
> 5. Shellpoint Mortgage Servicing, P.O. Box 10826, Greenville, SC 29603-0826; and 6. Shellpoint Mortgage Servicing, Attn: Adryan Fambro, Bankruptcy Case Manager, P.O. Box 10826, Greenville, SC 29603-0826.
> (Emphasis added)

The Debtor through counsel did serve the Order to Show Cause the same day, November 22, 2019 to all addresses required by the Court and certified service on ECF ( ECF Dkt. No. 43) Additionally, the Court Clerk also served the Order to Show Cause on all of the required addresses which appears as a Certificate of Mailing (ECF Dkt. No. 44). On November 25, 2019 a duplicate

2

of the November 22, 2019 Order to Show Cause was again posted to the public docket and again served by the clerk of the court on multiple addresses for the alleged creditor (ECF Dkt. No. 45)

Oddly, without filing a simple Notice of Appearance[1] and apparently not reading the THREE (3) year old lengthy docket or paying any attention to either of the TWO (2) copies of the Orders to Show Cause filed and served, Counsel for BONYM took the time to file a Motion for Relief From Stay, but he did not file any response to the Debtor's Motion to Expunge and Objecting to Proof of Claim 2 that the court ordered be done by January 7, 2020. The court should note, the version of the Note presented with the Motion for Relief From Stay on November 25, 2020 is unendorsed, just like the unendorsed Note complained about by the Debtor in her Motion objecting to Proof of Claim No. 2. The Deadline to file papers in response to the Debtor's Motion Objecting to Proof of Claim was not a suggestion, the Court order was clear in that **any opposition to Debtor's Motion must be filed on or before January 7, 2020.**

The Court through public notice on its website did announce that its calendar for January 15, 2020 was moved to January 8, 2020. All appearing counsel received notice of this calendar change including Attorney Margaret Casino who did file an appearance on behalf of BONYM back in 2016. Any counsel who filed papers, such as the above mentioned Motion for Relief From Stay, but chose, failed, refused or neglected to file a Notice of Appearance acted so at their client's peril of missing court announcements and calendar changes. The Debtor avers that regardless of whether the hearing was scheduled for January 15, 2020 and rescheduled for January 8, 2020, the responsive papers were undeniably ordered to be filed by January 7, 2020 and were not filed by

---

[1] While under FRBP 910, counsel for a party isn't necessarily required to file a Notice of Appearance, refusing, neglecting or failing to file a Notice of Appearance has the direct consequence of not receiving court notices. Still, all court notices would be available to any counsel or person so long as they regularly manually check the court's website, case docket and Judge's calendar.

the court ordered deadline. No one for BONYM filed an appearance or a motion seeking an enlargement of time to respond or to vacate the order for more time. Moreover, no counsel or agent for BONYM ever reached out to the undersigned counsel to request more time. If BONYM despite clear service (three times) of the Order to Show Cause did not retain counsel to respond to the Debtor's motion, the consequence for failing to respond was the granting of the Debtor's Motion. To the date of this Objection there has never been any request, written or otherwise, by BONYM or its attorneys seeking an enlargement of time to respond to the Debtor's Motion or to otherwise extend the ordered response deadline.

On January 3, 2020, the undersigned filed a status report on the court's docket acknowledging that no response had been filed or received and that the Debtor would be appearing at the January 8, 2020 hearing.

In open and crowded court on January 8, 2020 the Debtor appeared once again with her counsel of record to argue her motion and BONYM once again failed to appear. The Court granted the Debtor's Motion on record as memorialized in the transcript of hearing attached hereto as **Exhibit A**. The Debtor through counsel submitted a proposed order for entry. The debtor is unclear why the proposed order was not entered at the time it was submitted, but of course, the Covid 19 Pandemic hit soon after.

If counsel learned on January 15, 2020 that the hearing was held on January 8, 2020, why wasn't a motion to reargue filed at that time or a Motion to Enlarge Time to file a an objection nun pro tunc? It was not until **April 23, 2020** that present counsel for BONYM filed an actual Notice of Appearance in the Debtor's case; more than 3 months after the hearing, a year after the Debtor filed her motion and FIVE (5) months after the Court entered an Order to Show Cause.

The Attorney who filed a Motion for Relief From Stay did not file a Notice of Appearance or apparently bother to check the docket for announcements and notices, as all counsel in the Southern District of New York are required to do, there is a very real consequence to neglecting cases. On December 16, 2020 the Court entered a written order granting the Debtors objection thereby disallowing BONYM's proof of claim. On December 29, 2020, the Court entered an order confirming the Debtor's Chapter 13 Plan.

BONYM is not entitled to the relief it seeks for three reasons. First, BONYM cannot establish excusable neglect --- repeated, multiple failures, over an extensive period of time with multiple opportunities and notices to file responsive papers and produce evidence, is **deliberate and willful conduct**. Second, BONYM **does not have a meritorious defense** --- it lacks standing to enforce the underlying Note because it has failed to produce evidence that it is the holder of said instrument when it had the opportunity to do so. Third, the Debtor's plan not only confirmed, it has been fully administered and paid out 100% to all allowed claims. To date, no motion has been brought to vacate the confirmation, no timely appeal brought to challenge the confirmation of the Debtor's plan and no pending motion to stay a discharge with only SEVEN (7) months remaining in the Debtor's FIVE (5) year plan. BONYM sat on its rights to its own detriment.

Indeed, if this Court is going to afford any party relief, then it should be the Debtor and all remaining creditors, via an Order denying the motion of BONYM, in toto, and awarding them damages for having to defend against the instant frivolous motion, which reeks of bad faith and gamesmanship.

The Debtor's Plan is Confirmed and fully Administered with no Notice of Appeal of the confirmation order and no pending motion to stay a discharge which the Debtor is entitled to. Attached as **Exhibit B** is a copy of the trustee's account leger / records maintained by the National

5

Data Center showing that all the money ($34,797.00) paid by the Debtor into her plan to date has been disbursed to the remaining creditors. According to the online records, the plan paid out a total of $31,820.17 to all the timely allowed claims and the trustee's commission. The confirmed plan having been fully performed by the Debtor is ready for discharge.

## LAW AND ARGUMENT

### A. LEGAL STANDARD - FEDERAL RULE OF CIVIL PROCEDURE 60(B) AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 9024

1. Federal Rule of Civil Procedure 60(b), applicable in bankruptcy cases pursuant to Federal Rule of Bankruptcy Procedure 9024, provides, in relevant part:

   > On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
   >
   > (1) mistake, inadvertence, surprise, or excusable neglect;
   > * * *
   > (6) any other reason that justifies relief.

2. Rule 60(b)(6) is an extraordinary remedy and should not be used as a substitute for other legal remedies, and relief is to only be afforded when "exceptional circumstances prevented the moving party from seeking redress through the usual channels."[2]

3. "In addition to demanding that the movant show 'exceptional circumstances,' the courts of this circuit also require that the evidence in support of the motion be highly convincing, that the

---

[2] In re Salander, 450 B.R. 37, 47 (Bankr.S.D.N.Y. 2011).

movant show good cause for the failure to act sooner, and that no undue hardship be imposed on the other parties as a result."[3]

4. It is universally accepted in all jurisdictions that a Rule 60(b) motion is **not** a substitute for a direct appeal.[4] Indeed, "[a]llowing motions to vacate pursuant to Rule 60(b) after a deliberate choice has been made not to appeal, would allow litigants to circumvent the appeals process and would undermine greatly the policies supporting finality of judgments. Litigants unsuccessful at trial could forego available appeals and, should subsequent decisions in other cases render their positions viable, they could move to have adverse judgments vacated. The uncertainty resulting from such a rule would be unacceptable. In order to bring himself within the limited area of Rule 60(b), a petitioner is required to establish the existence of extraordinary circumstances which prevented or rendered him unable to prosecute an appeal."[5]

5. The timing provision for the rule can be found in section (c), which provides: "A motion under Rule 60(b) must be made within a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding. A motion brought pursuant to this rule must be made within a reasonable time, which has been

---

[3] In re Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC, 2017 Bankr. LEXIS 4145 at *6 (Bankr.S.D.N.Y. 2017) (citing Freedom, N.Y., Inc. v. United States, 438 F.Supp.2d 457, 462-63 (S.D.N.Y. 2006) (quotation and internal quotation marks omitted)).

[4] Stevens v. Miller, 676 F.3d 62, 67 (2nd Cir. 2012)(citing United Airlines, Inc. v. Brien, 588 F.3d 158, 176 (2nd Cir. 2009)). See also In re Salander, 450 B.R. 37, 52-53 (CGM) (Bankr.S.D.N.Y. 2011).

[5] Plotkin v. Pacific Tel. & Tel. Co., 688 F.2d 1291, 1293 (9th Cir. 1982) (internal citations omitted).

7

construed to mean "no more than a year after the entry of the judgment or order or the date of the proceeding."[6]

6. The moving party bears a heavy burden because the relief afforded by Rule 60 is extraordinary and, as such, viewed with disfavor.[7]

## B. BONYM CANNOT ESTABLISH EXCUSABLE NEGLECT – ITS CONDUCT WAS DELIBERATE AND WILLFUL

7. The Code does not define excusable neglect, but the Second Circuit has set forth a tripartite-test to determine whether excusable neglect exists in the context of a Rule 60(b) motion.[8] The American Alliance factors are: (i) whether the failure to respond was willful; (ii) the existence of a meritorious defense; and (iii) the degree of prejudice that the non-movant would suffer if the court granted the motion.[9]

8. "The Second Circuit has interpreted the willfulness standard to include conduct which is deliberate, egregious, or evidencing bad faith. Mere careless or negligent errors by an attorney or client do not constitute 'willfulness.' A court may find willfulness where there is 'bad faith, or at least something more than mere negligence.' 'The subjective inquiry into willfulness

---

[6] In re Old Carco LLC, 423 B.R. 40, 46 (Bankr. S.D.N.Y.2010) (quoting Fed.R.Civ.P. 60(c)(1) (omission in original)).

[7] In re Dana Corp., Case No. 06-10354 (BRL) (Bankr.S.D.N.Y. 2008) (citing In re Crozier Bros., Inc., 60 B.R. 683, 688 (Bankr.S.D.N.Y. 1986)(Rule 60(b) does not permit relitigation of an issue of merit unless one of the bases for relief are established)); see also In re Bowman, 253 B.R. 233, 240 (8th Cir. 2000).

[8] In re Barquet Group, Inc., 477 B.R. 454, 461 (Bankr.S.D.N.Y. 2012) (citing American Alliance Ins. Co. v. Eagle Ins. Co., 92 F.3d 57 (2nd Cir. 1996); In re FairPoint Communications, Inc., 462 B.R. 75, 79-80 (Bankr.S.D.N.Y. 2012)).

[9] American Alliance Ins. Co., 92 F.3d at 61; In re FairPoint Communications, Inc., 462 B.R. at 80.

effectively distinguishes those defaults that, though due to neglect, are excusable, from those that are not.' 'To a significant extent, this test is akin to the clean hands doctrine applicable to all equity cases.'"[10]

9. Simply put, willfulness refers to conduct that is more deliberate in nature, as opposed to negligent or careless.[11]

10. As applied herein, there is **no amount** of revisionist history that can recast BONYM's nearly year-long failure to produce evidence that it is the holder of a valid and enforceable instrument into --- a simple oversight.

11. For example, conduct was deemed willful in In re Tyson where the defendants had been properly served with the Adversary Proceeding Complaint but chose not to file an Answer, despite having been given numerous extensions and opportunities to do so.[12]

12. Here, the record is replete with express certifications of service on BONYM and its agents including the address designated for notices in its own proof of claim, that a motion was filed, needed to be responded to and hearing scheduled; clearly, BONYM knew that it had to respond and produce documentation and appear at a hearing, but simply chose not to comply. Indeed,

---

[10] In re Barquet Group, Inc., 477 B.R. at 462 (citations and quotations omitted).
[11] Id. at 462; see also In re Schiltkamp, Case No. 16-13037-SMB, at *14 (Bankr.S.D.N.Y. Mar. 9, 2019) (citations omitted).
[12] In re Tyson, Case No. 03-41900-ALG (Bankr.S.D.N.Y. Aug. 17, 2007). See also In re Dana Corp., Case No. 06-10354 (BRL) (Bankr.S.D.N.Y. 2008) (citing Tyson v. New York, 81 Fed. Appx. 398 (2nd Cir. 2003) (Movant not entitled to relief under Rule 60(b) where documents produced during discovery and available to moving party prior to filing motion); Gibson v. Wise, 331 F. Supp.2d 168, 169 (E.D.N.Y. 2004) (refusing to grant relief under Rule 60(b) where movant failed to identity any "newly discovered evidence" but rather simply set forth the same arguments initially raised in complaint)).

9

even here, counsel for BONYM offers no explanation for failures to respond timely and show up at multiple hearings scheduled throughout the year despite requests by this Court (and opposing counsel) to do so.

13. Interestingly, BONYM does not appear to offer a reason or otherwise explain its repeated failure.

14. BONYM has failed to cite to any legal authority that excuses its failure; nor has BONYM demonstrated that it has met its heavy burden in establishing relief sought pursuant to Rule 60.

15. Accordingly, BONYM's repeated failure to respond and produce evidence of being the holder of the underlying Note can only be described as deliberate and willful. If BONYM's repeated failure to comply with directives from this Court and file its papers by a date certain, does not fall within the purview of "willful," then it is hard to imagine conduct that does.

16. In any event, by no means should Ms. Santoli be forced to pay the price for the conduct of BONYM nor its counsel.

17. Based on the foregoing, BONYM's repeated failures to respond and proffer documentary evidence of being the holder of a valid and enforceable instrument cannot be construed as anything other than deliberate and willful.

### C. **BONYM DOES NOT HAVE STANDING – IT DOES NOT HAVE A MERITORIOUS DEFENSE**

18. In addition to not establishing excusable neglect, BONYM can likewise not prove that it has a meritorious defense.

19. Although BONYM waxes ecstatic that it now has the documentation both requested by this Court and required by New York law to be deemed the holder of the Note at issue, nothing could be further from the truth. The purported indorsement it proffers the court was not present on the note presented in the proof of claim. Who placed the rubber stamp indorsement on the note and when did it happen remains unknown and would require litigation and an evidentiary hearing. Why would BONYM have an unendorsed note in its possession if it was fully indorsed at the time of transfer? The court did read the Debtor's objection and ruled on the record on January 8, 2020 having not received any argument to the contrary, based on the proof of claim in front of it. The unendorsed note is not enforceable by BONYM.

20. Moreover, BONYM cannot demonstrate a meritorious defense because it is just simply too late for any proffer of evidence that establishes its status as holder.

### D. **BONYM IS BARED FROM AMENDING ITS CLAIM AND PRODUCING ADITIONAL DOCUMENTS NOT INCLUDED WITH ITS PROOF OF CLAIM**

21. The U.S. Congress drafted the applicable Federal Rules of Bankruptcy Procedure as follows:

> **F.R.B.P. "Rule 9002. Meanings of Words in the Federal Rules of Civil Procedure When Applicable to Cases Under The Code**
> The following words and phrases used in the Federal Rules of Civil Procedure made applicable to cases under the Code by these rules have the meanings indicated unless they are inconsistent with the context:
> **(1) "Action" or "civil action" means** an adversary proceeding or, when appropriate, a contested petition, or proceedings to vacate an order for relief or to determine *any other contested matter*. ( *Emphasis Added*)

22. The Debtor's Objection to Proof of Claim 2-1 <u>is</u> a contested matter under the Bankruptcy Code and as such, certain Part VII rules apply.

> **Rule 9014. Contested Matters**

**(a) Motion.**

In a contested matter not otherwise governed by these rules, relief shall be requested by motion, and reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought. No response is required under this rule unless the court directs otherwise.

**(b) Service.**

The motion shall be served in the manner provided for service of a summons and complaint by Rule 7004. Any paper served after the motion shall be served in the manner provided by Rule 5(b) F.R.Civ.P.

**(c) Application of Part VII Rules.**

Except as provided in this rule, and unless the court directs otherwise, **the following rules *shall* apply**: 7009, 7017, 7021, 7025, 7026, 7028-7037, 7041, 7042, 7052, 7054-7056, 7064, 7069, 7071. The following subdivisions of Fed. R. Civ. P. 26. as incorporated by Rule 7026, shall not apply in a contested matter unless the court directs otherwise: 26(a)(1) (mandatory disclosure), 26(a)(2) (disclosures regarding expert testimony) and 26(a)(3)(additional pre-trial disclosure), and 26(f) (mandatory meeting before scheduling conference/discovery plan). An entity that desires to perpetuate testimony may proceed in the same manner as provided in Rule 7027 for the taking of a deposition before an adversary proceeding. The court may at any stage in a particular matter direct that one or more of the other rules in Part VII shall apply. The court shall give the parties notice of any order issued under this paragraph to afford them a reasonable opportunity to comply with the procedures prescribed by the order. (*Emphasis Added*)

23.     Since 9014(c) does not include 7015 the right to amend does not apply in contested cases unless a Local Rule or an Administrative Order is issued that so applies it to such cases.  Rule 9002 "Meanings of Words in the Federal Rules of Civil Procedure When Applicable to Cases Under The Code" requires the language in Rule 7041, which is adopted from the Federal Rules of Civil Procedure (FRCP 41), be read in context as applicable to contested matters under the Bankruptcy Code, such as the case at bar. As noted in the Advisory Committee on Rules 1983, "When the rules of Part VII are applicable to a contested matter, reference in the Part VII rules to adversary proceedings is to be read as a reference to a contested matter. See Rule 9002(1)."

Pursuant to FRBP Rule 7014 as read in context with a contested matter under the Bankruptcy Code, a contested case is commenced, the only permitted manner to amend the claim is by a Court order or stipulation of the parties.

24. Simply stated, the Debtor responded to BONYM's Proof of Claim by way of a Motion Objecting to Proof of Claim which is a contested matter. Therefore the claimant, BONYM, may not voluntarily amend its claim post-objection without the Debtor's consent or otherwise without obtaining an order of the court <u>after</u> notice and hearing – none of which have happened.

25. Despite the direct order of this court that any opposition to the Debtor's Motion be filed by January 7, 2020, BONYM did nothing. Nothing, that is, until now after litigation was invited and commenced. Disregarding the rules and creating havoc by filing a baseless proof of claim and false documents only to be followed by filing an amended baseless proof of claim 9 months into litigation is yet another example of BONYM and its attorneys continuing to play by their own rules with blatant disregard for the havoc they have caused by trying to deceive the Court and the Debtor with their faulted documents. Clearly there is no sense of accountability on the part of BONYM or its attorneys, let alone any regard for the rules or the rights and well being of the other parties involved.

26. The Debtor is relying on the integrity of the Bankruptcy Process as well as the enforcement of the rules all parties are expected to adhere to and BONYM and its lawyers have made a mockery of the system. The actions of the purported creditor and its attorneys caused additional motion practice, it is inexcusable and bears all the

    hallmarks of bad faith; the Debtor should not be forced to bear the costs associated with the same.

27. Debtors hereby further contends that if BONYM and its attorneys are afforded the opportunity to file late opposition without proper motion and to amend a claim post-objection, the Debtor should be permitted to file a motion for fees and expenses and request for other relief and sanctions, as it properly survives and remain pending.

### E. GRANTING THE MOTION WILL CAUSE UNDUE HARM AND SUBSTANTIAL PREJUDICE TO THE DEBTOR

28. The third and final factor of the tripartite test is the amount of prejudice that granting the Motion for Reconsideration would cause the debtor and/or the bankruptcy estate.[13]

29. As a general rule, "mere delay is not sufficient to demonstrate a sufficient level of prejudice."[14]

30. Regarding this point, BONYM argues that if it is not granted relief from the Order entered on December 16, 2020, then it will lose the benefit of its bargained for exchange.

31. That argument, however, is a nonstarter for two reasons. First, BONYM has failed to produce evidence of standing from the get-go --- it is not lawfully entitled to enforce the Note bearing an unexplained indorsement not present 2 years ago and upon which its argument is premised. And, second, the Debtor will suffer undue harm and substantial prejudice.

---

[13] In re FairPoint Communications, 462 B.R. at 82.
[14] In re Enron, 326 B.R. 46, 52, 53 (Bankr.S.D.N.Y. 2005).

32. With respect to the latter, Ms. Santoli is in her 70's and retired after a 35+ year career in marketing for Disney Corporation; she worked hard her entire life and conducted herself with strong integrity.

33. Ms. Santoli has fully complied with all the demands that have been made of her, and she exhibited what the Court referred to as great "fortitude" being present in court each time her case was on this Court's docket.

34. The Debtor never showed up late, unprepared or looking to game the system; she did everything a Debtor seeking relief could be expected to do.

35. Additionally, as the Court in the very similar case of *In re Pinnock*, 594 B.R. 609 (Bankr. S.D.N.Y. 2018), pointed out, the Pinnocks were lawfully entitled to pursue "a recognized collective action to quiet title." In accordance therewith, Ms. Santoli obtained approval[15] to retain Albert A. Hatem, Esq., who is currently representing her in that pursuit pending in the Westchester County Court. A natural consequence flowing therefrom is the amount of money that the Debtor has expended and is currently expending in connection with her pending quiet title proceeding.

36. Based on the foregoing, it is beyond dispute that sustaining BONYM's motion will cause not only the Debtor to suffer undue hardship and substantial prejudice, but the remaining creditors as well. As set forth above, the Debtor has fully funded her confirmed Chapter 13 Plan and all monies have been disbursed paying her remaining allowed creditors 100% as well as a trustee's commission. If the Motion to Reargue is permitted, the trustee presumably would have to get

---

[15] ECF Doc. No. 51 and Order entered Doc No. 57.

back the money already disbursed to creditors who were paid in full. Moreover, the length of litigation is easily estimated to take more than the balance of time in the Debtor's 5 years permitted for a Chapter 13 case. The inattentiveness and deliberate actions of ignoring notices on the part of the creditor has foreseeable consequences.

## SUMMARY

Federal Rule 60 affords extraordinary relief. Here, there is no real question that BONYM has failed to meet its burden in establishing its entitlement to the relief requested. BONYM did not advance any argument supported by either fact or law to demonstrate that it met even one prong of the American Alliance tripartite test, let alone, satisfy all three.

- BONYM attached different documentation to Claim No. 2-1 and to its Motion for Relief From Stay filed on November 25, 2020 then it did to its motion for reconsideration --- both sets of documentation purport, however, to be the same set of documentation, i.e., the underlying Note and mortgage.

- The Debtor expended considerable sums of money in defending her Objection to Claim No. 2, i.e., preparing for and attending hearings, only to have them adjourned and adjourned and adjourned and then adjourned again.

- The Debtor expended, and continues to expend, considerable sums of money in defending against the instant motion.

- Succinctly stated, BONYM has had more than 4 opportunities to show up and to produce evidence that is the holder of the underlying Note indorsed to it but it has chosen not to. Now that BONYM must deal with the resting consequences of its own inactions, it cries

16

foul. But a party cannot cry foul if it does not show up to play and, here, BONYM made no such showing.

## CONCLUSION

**WHEREFORE,** the Debtor respectfully requests that the motion for reconsideration filed by BONYM be denied in its entirety.

**Dated:** White Plains, New York
March 9, 2021

/s/Linda M. Tirelli, Esq.
TIRELLI LAW GROUP, LLC
50 Main Street, Suite 1265
White Plains, N.Y. 10606
Phone: 914-732-3222
Email: LTirelli@TirelliLawGroup.com