UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

In re:                                          Chapter 13

LORRAINE SANTOLI,                               Case No. 16-23516 (SHL)

                Debtor.

-----------------------------------------------------------x

## MEMORANDUM OF DECISION AND ORDER

**A P P E A R A N C E S :**

**TIRELLI LAW GROUP, LLC**
*Counsel for Debtor*
50 Main Street, Suite 1265
White Plains, New York 10606
By:    Linda M. Tirelli, Esq.

**HILL WALLACK LLP**
*Counsel for NewRez LLC d/b/a Shellpoint Mortgage Servicing in its capacity as servicer for Bank of New York Melon f/k/a the Bank of New York as Trustee for the Certificateholders of CWMBS, Inc., CHL Mortgage Pass-Through Trust 2006-20 Mortgage Pass-through Certificates, Series 2006-20*
575 Lexington Avenue, Fourth Floor
New York, New York 10022
By:    Michael T. Rozea, Esq.
        Raquel Felix, Esq.


**SEAN H. LANE**
**UNITED STATES BANKRUPTCY JUDGE**

       Before the Court is Lorraine Santoli's (the "Debtor") request under 11 U.S.C. § 506(d) to void the lien of Bank of New York Melon ("BNYM") on the Debtor's real property. This request is the sole issue left undecided following the Court's June 2, 2021 bench ruling granting the Debtor's motion objecting to BNYM's Proof of Claim No. 2-1. *See* Hr'g Tr., June 2, 2021 [ECF No. 101]; Debtor's Motion Objecting to Claim 2-1 (the "Expungement Motion") [ECF No.

34]; NewRez LLC d/b/a Shellpoint Mortgage Servicing ("Shellpoint") in its capacity as servicer for Bank of New York Mellon Supplemental Papers Objecting to Debtor's Request to Void the Lien ("Shellpoint's Supplemental Response") [ECF No. 95]; Debtor's Supplemental Statement in Support of Debtor's Motion Objecting to POC-2 ("Debtor's Supplemental Statement") [ECF No. 96]. Also before the Court is Shellpoint's related Motion for Relief from the Automatic Stay ("Shellpoint's Stay Relief Motion") [ECF No. 46-1]. For the reasons set forth below, the Debtor's request to void the lien is denied and Shellpoint's Stay Relief Motion is denied.

## BACKGROUND

The Debtor filed for Chapter 13 relief in early November 2016. ECF No. 1. In late November 2016, Shellpoint filed its Proof of Claim No. 2-1 (as subsequently amended, the "Proof of Claim"). *See* Expungement Motion, Ex. A (Proof of Claim No. 2-1) [ECF No. 34-1]. In April of 2019, the Debtor filed the Expungement Motion seeking to expunge Proof of Claim No. 2-1. *See* Expungement Motion.

The Debtor did not initially serve Shellpoint at the address listed on its Proof of Claim, and Shellpoint did not respond to the Debtor's Expungement Motion or appear at a hearing held on the motion in late July 2019. *See* Notice of Adjournment of Hearing [ECF No. 37]; *see also* Certificate of Service [ECF No. 34-4]. The matter was adjourned to late August 2019. *Id.* The Debtor then correctly served Shellpoint, but Shellpoint still failed to appear at hearings on the Expungement Motion in August 2019 and November 2019. *See* Certificate of Service [ECF No. 38]; Notice of Adjournment of Hearing [ECF No. 40]. Given Shellpoint's failure to appear, the Court entered an Order to Show Cause in late November 2019. *See* Order to Show Cause Directing Bank of New York Melon to File Any Opposition to Debtor's Motion Objecting to Claim 2-1 (the "Order to Show Cause") [ECF Nos. 42, 45]. The Order to Show Cause provided,

2

*inter alia*, that a hearing on the Expungement Motion was scheduled for January 15, 2020. *See* ECF Nos. 42, 45.

Prior to the January 15th hearing date—and for reasons entirely unrelated to this case—the Court rescheduled that January 15th calendar to January 8, 2020. The Court notified all parties listed on that day's calendar of the change via email, and notification was posted on the Court's website. However, no notification of such a change was specifically posted on the docket for this case. Apart from the notifications emailed and posted by the Court, Shellpoint was not directly served with any notice of the date change. When Shellpoint failed to appear at the new hearing date on January 8, 2020, the Court granted the Debtor's Expungement Motion on the record. *See* Hr'g Tr. 2:12–4:6, Jan. 8, 2020 [ECF No. 70]. The order granting the Expungement Motion was entered on the docket. *See* Order Granting Debtor's Motion Objecting to Proof of Claim No. 2-1 (the "Expungement Order") [ECF No. 71]. Shellpoint filed a timely motion for reconsideration as to the Expungement Order. *See* Motion for Reconsideration of Order Granting Debtor's Motion Objecting to Proof of Claim No. 2-1 (the "Motion for Reconsideration") [ECF No. 73]. While the Court was concerned with Shellpoint's "cavalier disregard for its obligations earlier in the case," it nonetheless granted Shellpoint's Motion for Reconsideration as Shellpoint was not directly served with notice of the changed hearing date for the Order to Show Cause. *See In re Santoli*, 627 B.R. 595, 601 (Bankr. S.D.N.Y. 2021). Accordingly, the Expungement Order was voided. *Id.* at 602.

During the course of the proceedings, the evidence as to BNYM's standing as a secured creditor evolved, but not in a linear path. In its original Proof of Claim No. 2-1, Shellpoint attached an unendorsed Consolidated Note made payable to Countrywide Home Loans, Inc. *See* Proof of Claim No. 2-1. An unendorsed note was also attached to Shellpoint's amended Proof of

3

Claim No. 2-2 filed in January 2020, which was filed after the Debtor lodged her objection to the Proof of Claim.  *See* Opposition to Motion to Expunge Claim, Ex. B (Proof of Claim No. 2-2) [ECF No. 50 at 56 of 103].  Nearly a year after Shellpoint filed its amended Proof of Claim No. 2-2, it did file a Consolidated Note that had been endorsed-in-blank by Countrywide Home Loans, Inc. as part of other pleadings.  *See* Motion for Reconsideration, Ex. H at 28–30 [ECF No. 73-9].  But Shellpoint never amended its Proof of Claim to include the endorsed Consolidated Note.

The validity of Shellpoint's Proof of Claim once again came before the Court in early June 2021.  At that hearing, Shellpoint was forced to concede that—despite extensive litigation on Shellpoint's claim and the lengthy passage of time—none of Shellpoint's filed proofs of claim included an endorsed note.  Hr'g Tr. 6:21–25, June 2, 2021.  With the Court's patience at an end, the Court ruled that Shellpoint lacked standing to enforce its Proof of Claim due to its failure to demonstrate that it possessed a purported note endorsed-in-blank as of the date that the Debtor's bankruptcy case was commenced.  *See* Hr'g Tr. 5:12–7:23, June 2, 2021; *see also In re Daly*, 2015 WL 196509, at *5 (Bankr. S.D.N.Y. Jan. 14, 2015) (the "seminal date for analysis and allowance of a proof of claim, including the question of standing, is the date the bankruptcy case was commenced," and "the critical inquiry is whether [the claimant] was the holder of the Note as of the date of the Debtor's bankruptcy filing") (quoting *In re Densmore,* 445 B.R. 307, 308, 312 (Bankr. D. Vt. 2011)); *In re Benyamin*, 596 B.R. 789, 796 (Bankr. S.D.N.Y. 2019), *aff'd*, 2020 WL 2832815 (S.D.N.Y. June 1, 2020) (finding that the claimant did not have standing to file a proof of claim because it "failed to show that it was in actual or constructive possession of the Note on the Petition Date"); *In re Lippold*, 457 B.R. 293, 296–97 (Bankr. S.D.N.Y. 2011) (Under New York law, a plaintiff has standing to commence a mortgage foreclosure action

4

"where it is both the holder or assignee of the subject mortgage and the holder or assignee of the underlying note at the time the action is commenced.") (internal citation and quotation omitted).

Following its ruling as to standing, the Court gave the parties an opportunity to brief the issue now before the Court: whether BNYM's lien should be voided under Section 506(d) of the Bankruptcy Code.[1]  Hr'g Tr. 8:18–25, June 2, 2021.

## DISCUSSION

### A. Applicable Legal Standard

11 U.S.C. Section 506(d) provides that

To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless—

> (1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or
>
> (2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

11 U.S.C. § 506(d). "The lien of parties who did not file a proof of claim, to the extent valid and enforceable, would ride through th[e] chapter 13 case notwithstanding such failure to file." *In re Pinnock*, 594 B.R. 609, 618 (Bankr. S.D.N.Y. 2018) (citing *Dewsnup v. Timm*, 502 U.S. 410, 417 (1992)).

But once a party purporting to hold a lien on property has filed a timely proof of claim, a "determination that the lien[ ] encumbering the [property] [is] void . . . must be brought by the filing of an adversary proceeding(s) pursuant to Bankruptcy Rule 7001(2)." *In re Osuji*, 580 B.R. 36, 45 (Bankr. E.D.N.Y. 2018).  As the court in *Osuji* explained:

---

[1]   Debtor's counsel insinuates that "the Court ruled on the record" as to the lien avoidance issue and merely "wanted yet more briefing on the issue of 11 USC 506(d) to supplement the record." Debtor's Supplemental Statement at 10. But this is not so. As described above, the Court did not rule on lien avoidance at the June 2, 2021 hearing and instead asked the parties to brief the issue because this was the first time the Court had been asked to address the issue. *See* Hr'g Tr. 8:3–10:4, June 2, 2021.

> Bankruptcy Rule 3007, which governs objections to claims, provides that a party in interest shall not include a demand for relief of a kind specified in Rule 7001 in an objection to the allowance of a claim, but may include the objection in an adversary proceeding. Bankruptcy Rule 7001(2), governing adversary proceedings, provides that a party seeking a judicial determination of the validity, enforceability, priority or extent of a lien or other interest in property must generally seek such relief through the filing of an adversary proceeding.

*Id.* Other courts have reached the same conclusion. *See In re MF Glob. Inc.*, 531 B.R. 424, 430 (Bankr. S.D.N.Y. 2015) (following its amendment in 2007, "Bankruptcy Rule 3007 no longer permits a claim objection to automatically convert to an adversary proceeding when the claim objection is joined with a demand for relief that must be brought by adversary proceeding," and thus if a party "seeks relief of the type that must be sought in an adversary proceeding, such relief cannot be sought in a claim objection and must instead be pursued in an adversary proceeding").

Even if the issue of lien avoidance is properly before the court in an adversary proceeding, "[Section] 506[d] only empowers the bankruptcy court to void liens supporting disallowed claims if it judges those liens to be invalid *in substance*." *Kohout v. Nationstar Mortgage, LLC*, 576 B.R. 290, 296 (N.D.N.Y. 2017) (quoting *In re Hamlett*, 322 F.3d 342, 348 (4th Cir. 2003)). And although a claim objection based on the lack of standing is a substantive objection, a court still cannot void a lien under Section 506(d) unless it "judge[s] the [underlying] lien to be invalid in substance." *In re Lane*, 589 B.R. 399, 410 (B.A.P. 9th Cir. 2018), *as corrected* (Sept. 26, 2018), *aff'd*, 959 F.3d 1226 (9th Cir. 2020).

**B. BNYM's Lien**

In arguing that the lien here should be voided, the Debtor relies largely upon the protracted history of the proceedings before this Court, stressing Shellpoint's repeated failures to appear. *See* Debtor's Supplemental Statement at 1–10. It also cites to a decision in *In re*

6

*Pinnock*, 594 B.R. 609 (Bankr. S.D.N.Y. 2018) that permitted the voiding of a lien as to a specific secured creditor when that creditor's claim was disallowed.

Shellpoint argues, however, that the Court's previous decision on standing was based on Shellpoint's failure to attach sufficient documentation to its proof of claim and thus was a procedural—rather than substantive—decision. *See* Shellpoint's Supplemental Response at 4–5 (citing *Kohout*, 576 B.R. at 291, 296). Moreover, Shellpoint argues that a decision to void BNYM's lien could only be made following an adversary proceeding or, at the very least, after an evidentiary hearing. *See id.* at 7–11.

The Court concludes that Shellpoint has the better of the argument for several reasons. First, a "determination that the lien[ ] encumbering the [property] [is] void . . . must be brought by the filing of an adversary proceeding(s) pursuant to Bankruptcy Rule 7001(2)." *In re Osuji*, 580 B.R. at 45. While the Debtor does not specifically address this argument raised by Shellpoint, the Debtor does rely on *Pinnock*, where a lien was voided without an adversary proceeding. As Shellpoint correctly notes, however, the court in *Pinnock* held an evidentiary hearing after which it voided the creditor's lien *on the merits* due to the creditor's submission at the hearing of an allonge that was not firmly attached to the note and its failure to show how, when, or from whom it obtained the note. *See In re Pinnock*, 594 B.R. at 611. No such evidentiary hearing was held here. Additionally, it does not appear that the creditor in *Pinnock* objected to the Court ruling on the validity of the underlying lien based on the evidentiary hearing rather than an adversary proceeding. *See generally In re Pinnock*, 594 B.R. 609. Here, Shellpoint has made that exact objection, specifically arguing that the validity of its lien cannot be decided without an adversary proceeding. *See* Shellpoint's Supplemental Response at 9.

7

Second, the Debtor's position fails given the procedural nature of the Court's ruling. The Court's decision as to Shellpoint's standing to enforce the Note underlying its proof of claim was based on Shellpoint's failure to amend its claim despite repeated opportunities and an extensive length of time. The procedural nature of the Court's ruling makes it inappropriate for the Court to void BNYM's lien on this record. *See Kohout*, 576 B.R. at 296 (finding that because the bankruptcy court disallowed the claim on procedural grounds, the creditor's lien was not void); *In re Porter*, 374 B.R. 471, 480 (Bankr. D. Conn. 2007) ("[T]he only substantive grounds for disallowance of a claim are expressly set forth in the Bankruptcy Code . . . [and] lack of the documentation required by Rule 3001(c) . . . is not a *substantive* ground for disallowing a claim."). Indeed, the procedural nature of the Court's ruling is reflected in the arguments made here by the Debtor, which focus on Shellpoint having received sufficient "bites at the apple" to demonstrate its standing. *See* Debtor's Supplemental Statement at 3, 12.

Indeed, the parties do not appear to dispute that if the Court were to find the subject lien invalid on the merits, "the scope and effect of voiding a mortgage lien should apply only to the claimant before the court . . . ." Debtor's Supplemental Statement at 11 (citing *In re Pinnock*, 594 B.R. at 618). In fact, the Debtor seems to concede that even if this Court were to void the lien as to BNYM here, BNYM would still have the opportunity to defend its right to enforce the lien in state court. *Id.* at 12; *see also* Hr'g Tr. 12:12–13:7, Nov. 4, 2020 [ECF No. 74] (Debtor's counsel cites *Pinnock* and asserts that "just because a claim is expunged and the lien is voided, the—my client still has to go back to state court . . . . [W]e certainly have plenty of opportunity when this goes back to state court to try to quiet title. They'll have a second bite at the apple there . . . ."); Hr'g Tr. 5:13–6:6, Mar. 17, 2021 [ECF No. 83] (Debtor's counsel notes that after the Court initially granted its claim objection motion on the record at the Order to Show Cause

8

hearing in January 2020, she "file[d] a motion to retain counsel to go forward in [sic] quiet title in the state court. That's the second half of what has to happen here, and the creditor certainly can appear in that action and take this up in state court."). Notably, the Court's decision today does not preclude Shellpoint, BNYM, or the Debtor from litigating their rights in a state court foreclosure proceeding or quiet title action.

### C. Shellpoint's Motion

Turning to the other matter before the Court, Shellpoint's request that the Court grant its motion for stay relief is also denied. *See* Shellpoint's Supplemental Response at 12–13; *see also* Shellpoint's Stay Relief Motion [ECF No. 46-1]. In November 2019, Shellpoint sought relief from the automatic stay to allow it to proceed with an action to foreclose on its mortgage, arguing, *inter alia*, that Shellpoint has standing based on the unendorsed Consolidated Note, and that the Debtor had accumulated significant post-petition arrears on the Mortgage.[2] *See* Shellpoint's Stay Relief Motion at 1–3. But stay relief is not appropriate here given that Shellpoint failed to file sufficient documentation to demonstrate that it was the holder or assignee of the Note at the time that the bankruptcy was commenced. *See In re Garcia*, 584 B.R. 483, 487–88 (Bankr. S.D.N.Y. 2018) (explaining that for a party to have standing to seek relief from the automatic stay, it must have standing to commence a foreclosure action under New York law); *In re Lippold*, 457 B.R. at 296–97 (same); *see also In re Daly*, 2015 WL 196509, at *5 (creditor must show that it had standing at the time the bankruptcy was commenced).

## CONCLUSION

For the reasons set forth above, the Debtor's request to void BNYM's lien is denied. Additionally, it is hereby ordered that, consistent with the Court's ruling on the record at the June

---

[2] The Court notes that Shellpoint attached the same unendorsed Consolidated Note to its stay relief motion. *See* ECF No. 46-2.

9

2, 2021 hearing and its discussion here today, Shellpoint's Proof of Claim is disallowed and expunged, and Shellpoint's Stay Relief Motion is denied.

**IT IS SO ORDERED.**

Dated: September 21, 2021
New York, New York

*/s/ Sean H. Lane*
**United States Bankruptcy Judge**
